E-FILED
Monday, 03 October, 2011  04:17:11 PM
Clerk, U.S. District Court, ILCD

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| ELLEN MISHAGA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | No. 10-3187 |
| | ) | |
| JONATHON MONKEN, Director of | ) | |
| the Illinois Department of State Police, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

### I. INTRODUCTION

On March 1, 2011, Ellen Mishaga ("Plaintiff") filed her first amended complaint (the "Complaint") seeking declaratory and injunctive relief. (Compl. ¶ 1, attached hereto as Ex. A). The Defendants are sued in their official capacities. Plaintiff, an Ohio resident, alleges that Defendants violated her rights under the Second and Fourteenth Amendments, and Article IV of the United States Constitution, by not issuing her an Illinois Firearm Owners Identification ("FOID") Card. (Compl. ¶¶ 4,6,7,43). Specifically, Plaintiff alleges that she twice applied for an Illinois FOID Card, but her application was denied because she is not a resident of Illinois. (Compl. ¶¶ 26-28). Plaintiff alleges that by not issuing her a FOID Card, Defendants have infringed on her "right to keep and bear arms" and her "right to travel." (Compl. ¶ 6).

Plaintiff further alleges that "with certain limited exceptions not relevant here, no person may acquire or possess any firearm or ammunition in the State of Illinois without having in his or her possession a FOID issued by the Department of State Police." (Compl. ¶ 18). Plaintiff alleges that she and her husband lawfully own several firearms, which they possess in their home in Ohio.

1

(Compl. ¶ 24). Plaintiff alleges that she has "concrete plans to make overnight trips to Illinois to visit friends and she has a credible fear of arrest, prosecution, incarceration, and/or fine if she were to possess a functional firearm for self-defense while an overnight guest in her friends' Illinois home." (Compl. ¶ 5). Specifically, Plaintiff alleges that she desires to lawfully possess a functional firearm for self-defense within an Illinois home, but cannot do so because she cannot obtain a FOID Card. (Compl. ¶¶ 20-31). She asks this Court to issue "permanent injunctive relief against continued enforcement and maintenance of Defendants' unconstitutional customs, policies, and practices." (Compl. ¶44).

Defendants are entitled to judgment as a matter of law because: 1) Plaintiff lacks standing to bring this suit; 2) the suit is not ripe for adjudication; 3) Defendants have not violated Plaintiff's right to bear arms or travel because Illinois law permits her to possess functional firearms within an Illinois home without a FOID Card. As such, Defendants respectfully requests this Court enter summary judgment in their favor.

## II. SUMMARY JUDGMENT STANDARD OF REVIEW

Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party may meet its burden of showing an absence of disputed material facts by demonstrating "that there is an absence of evidence to support the non-moving party's case." *Celotex*, 477 U.S. at 322. A non-moving party cannot defeat a motion for summary judgment with bare allegations. *Smith v. Potter*, 445 F.3d 1000, 1006 (7th Cir. 2006). A party opposing summary judgment must present "evidence on which the jury

2

could reasonably find for the nonmoving party." *Rozkowiak v. Vill. of Arlington Heights*, 415 F.3d 608, 612 (7th Cir. 2005). Summary judgment "'is the put up or shut up' moment in a lawsuit when a party must show what evidence it has that would convince a trier of fact to accept its versions of events." *Schacht v. Wisconsin Dept. of Corr.*, 175 F.3d 497, 503-04 (7th Cir. 1999), (*overruled on other grounds by Higgins v. Miss.*, 217 F.3d 951 (7th Cir. 2000)).

### III.  STATEMENT OF UNDISPUTED MATERIAL FACTS

1)      The FOID Act contains numerous exceptions to the requirement that an individual have a FOID Card to possess a weapon in Illinois.  430 ILCS 65/2 (West 2011).

2)      One of the many exceptions to the requirement of having a FOID Card is in section 2(b)(10) (hereinafter referred to as "Exception 10"), which provides that  "nonresidents who are currently licensed or registered to possess a firearm in their resident state" are not required to obtain a FOID Card to possess firearms in Illinois.  430 ILCS 65/2(b)(10).

3)      Plaintiff is not a resident of Illinois. (Mishaga Dep. 7:7, July 26, 2011, attached hereto as Ex. B).

4)      Plaintiff did not own a firearm on July 27, 2010 when she filed her initial complaint in this action or on March 1, 2011, when she filed her amended Complaint.  (Mishaga Dep. 13:21-14:16; Receipt From Firearm Purchase, attached hereto as Ex. C).

5)      Plaintiff now owns a  .380 semi-automatic handgun which Ohio law authorizes her to  legally keep at her home in Ohio.  (Mishaga Dep. 13:22; 15:1-4; 15:18; 16:8-10).

6)      The Firearms Owners Identification Card Act ("FOID") requires that applicants undergo a background check before they may be issued a FOID Card to possess a firearm. (Vorreyer Dep. 18:5-19:6, July 26, 2011, attached hereto as Ex. D; Vorreyer Aff.¶ 5, attached hereto as Ex. E).

3

7)      In August 2001, Illinois law was changed to require that FOID applicants over 18 years of age have a valid Illinois drivers license or Illinois Identification Card.  430 ILCS 65/4(3) (a-5); (June 6, 2002 ISP Memorandum, attached hereto as Ex. F).  This change was implemented to address concerns with the FOID applicant identification process and now enables the Illinois State Police ("ISP") to utilize image systems that increase the reliability of the identification process.  (Ex. F).

8)      As part of the background check, ISP runs searches in national databases such as the National Crime Information Center ("NCIC"), National Instant Criminal Background Check System ("NICS"), Interstate Identification Index ("III"), and Immigration and Customs Enforcement ("ICE"). (Vorreyer Aff. ¶ 7).

9)      NCIC and the other federal databases contain less information than state and local databases, and often omit information that would disqualify a FOID application under Illinois law. (Vorreyer Aff. ¶ 8).

10)      Illinois state databases such as the Law Enforcement Agencies Data System ("LEADS") and Illinois Department of Human Services ("DHS") more fully reflect a FOID applicant's civil and/or criminal history in Illinois, and thus the applicant's qualifications for a FOID Card, than do the national databases.  (Vorreyer Aff.  ¶ 8 ).

11)      ISP does not have direct access to local and statewide databases maintained by other states. (Vorreyer Dep. 55:9-12; Vorreyer Aff.  ¶ 9)

12)      A FOID Card may be revoked if the holder of the card becomes disqualified based on the enumerated prohibited factors in the FOID Act. 430 ILCS 65/8; (Vorreyer Dep. 19:7-20:8).

13)      Local law enforcement agencies and circuit clerks notify ISP of information that may be prohibitors.  (Vorreyer Dep. 19:11-15).

14)      ISP uses Correlation, an ISP system which flags Illinois residents and sends ISP hourly updates from Illinois circuit clerks of new information added to an individual's rap sheet.  ISP uses this information to revoke FOID Cards if the new information shows a prohibitor.  (Vorreyer Dep. 19:21- 20:4; 54:5-23).  ISP does not receive this information for incidents that occur outside of Illinois. (Vorreyer Dep. 55:3).

16)      ISP could not assemble a similar flagging system for non-residents.  (Vorreyer Aff.  ¶ 12).

## IV. ARGUMENT

**A.      Plaintiff Has Failed To Produce Evidence That Her Claim Presents A Justiciable Case Or Controversy, And The Undisputed Evidence Shows That She Lacks Standing And Her Claim is Not Ripe.**

Article III of the U.S. Constitution limits the authority of the federal courts to "cases or controversies." *Rock Energy Coop. v. Village of Rockton*, 614 F.3d 745, 748 (7th Cir. 2010).  Two of the requirements to satisfy the case or controversy threshold are the closely related doctrines of ripeness and standing.  A party invoking federal jurisdiction bears the burden of establishing both.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992); *Rock Energy,* 614 F.3d at 748-49.  Defendants are entitled to summary judgment because Plaintiff has failed to prove standing or ripeness.

      1.      Plaintiff lacks standing because there is no threat of prosecution sufficient to satisfy the "injury-in-fact"requirement where Exception 10 of the FOID Act  allows Plaintiff to possess firearms in Illinois without a FOID Card.

The irreducible constitutional minimum of standing requires that: 1) plaintiff have suffered an injury-in-fact, which is an invasion of a legally protected interest which is concrete and particularized and actual or imminent rather than conjectural or hypothetical; 2) that there be a causal connection between the injury and conduct complained of so that the injury is fairly traceable to the challenged

action of the defendant and not the result of the independent action of some third party who is not

before the court; and 3) that it be likely, as opposed to merely speculative, that the injury will be

redressed by a favorable decision. *Lujan*, 504 U.S. at 560. In response to a summary judgment motion,

plaintiff can no longer rest on mere allegations but must set forth by affidavit or other evidence the

specific facts which support standing. *Id*.

Plaintiff has no standing because she has suffered no injury-in-fact. Although a plaintiff need

not break the law and suffer the consequences in order to meet the burden of standing, the plaintiff must

at least demonstrate that she has an "actual and well-founded fear that the law will be enforced against

her." *Wisconsin Right to Life, Inc. v. Paradise*, 138 F.3d 1183, 1185 (7th Cir. 1998). In her Complaint,

Plaintiff claims that she has a credible fear of arrest, prosecution, incarceration, and/or fine if she

possesses a functional firearm for self-defense while an overnight guest in her friends' Illinois home."

(Compl. ¶ 5). However, she has presented no evidence to support a determination that her fear is

"credible" or "well founded." A plaintiff's genuine, but objectively not "well founded," fear will not

suffice. *Wisconsin Right to Life,* 138 F.3d at 1185 (finding no injury-in-fact in First Amendment case

where no one had been prosecuted under the challenged law; previously issued Attorney General

opinion instructed interpretation of law in a way that was actually consistent with what plaintiff was

seeking; officials had promulgated a rule instructing enforcement in way that also would not call for

prosecution of groups who did what plaintiff was doing. ); *see also Montana Shooting Sports Assoc.*

*v. Holder*, No. CV 09-147-DWM-JCL, 2010 WL 3926029 at *9,(D. Mont. Aug. 31, 2010) (holding that

where "plaintiffs seek declaratory and injunctive relief only, there is a further requirement that they

show a ***very significant*** possibility of future harm...the mere existence of a statute that may not ever be

applied to plaintiffs is not sufficient") (emphasis added). There can be no injury-in-fact where, as here,

the statute in question "clearly fails to cover" Plaintiff's conduct because that conduct is "clearly outside of the statute's scope." *Lawson v. Hill*, 368 F.3d 955,957 (7th Cir. 2004).

Plaintiff's fears of arrest, prosecution, etc., cannot be well-founded because Illinois law allows her to possess her firearm in the home of an Illinois friend when she is an overnight guest. The FOID Act sets forth that "[n]o person may acquire or possess any firearm . . . within this State without having in his or her possession a Firearm Owner's Identification Card previously issued in his or her name by the Department of State Police under the provisions of this Act." 430 ILCS 65/2(b)(1). However, as acknowledged by Plaintiff in her Complaint, there are exceptions stated within the FOID Act. *See* (Compl. ¶ 18); *see also* 430 ILCS 65/2. While Plaintiff, without any supporting facts or explanation, alleges that none of these exceptions apply to her (Compl.¶ 18), a plain reading of the FOID Act and evidence in this case show otherwise.

Various exceptions permit nonresidents to possess firearms in Illinois without a FOID Card. Exception 10 allows "nonresidents who are currently licensed or registered to possess a firearm in their resident state" to possess firearms without obtaining a FOID Card. *See* 430 ILCS 65/2(b)(10). Exception 10 applies to Plaintiff because: 1) Plaintiff is a nonresident as required by Exception 10 (See Mishaga Dep. 7:7); and 2) Plaintiff is allowed to, and does legally possess, firearms in her resident state of Ohio, under Ohio law. (Mishaga Dep. 15:3, 15:18, 16:8-10 ). Although Plaintiff does not possess a physical license or permit in Ohio, this is not a requirement of Exception 10. As Defendant Vorreyer testified, "if they are legally eligible to possess firearms in their home state, they're legally eligible to do so here in Illinois." (Vorreyer Dep. 23:1-3). Indeed, in a recent decision, the Illinois Supreme Court ruled that a nonresident need not physically have his out-of-state license or permit with him to legally bring his firearm with him to Illinois. *People v. Holmes*, 948 N.E.2d 617, 624-25 (Ill.

2011).  Essentially, a nonresidents' permission from her resident state substitutes for the FOID Card requirement so as to preclude prosecution for unlawful use of a weapon.  Moreover, Section 24-1(4) of the Criminal Code of 1961 makes clear that a person does not commit the offense of unlawful use of weapons when she possesses a firearm "on the land or in the legal dwelling of another person as an invitee with the person's permission." 720 ILCS 5/24-1 (West 2011). Thus, under Illinois law, Plaintiff is allowed not only to possess firearms in Illinois without a FOID Card, she is also allowed to do so as an invitee in her friend's home  – exactly what she claims she would like to do.

Because the FOID Act does not prohibit the activity in which Plaintiff wishes to engage, there is "no reason to suppose [that prosecution] is even remotely likely to ever materialize" and thus, no Article III jurisdiction exists. *Lawson*, 368  F.3d at 957.  As the court in *Lawson* noted, a person might have the misfortune of being prosecuted under a statute, the text of which clearly fails to cover her conduct. *Id.* at 958.  However, such a risk would not justify an injunction without some indication of a "non-trivial" probability of prosecution. *Id.*  Moreover, as the court in *Wisconsin Right to Life* reasoned, "how can a suit present a case or controversy when all the litigants are on the same side?" *Id.* at 1185.  That same reasoning applies here.  Plaintiff claims that she would like to possess her firearm in her friends'  Illinois home when she is an overnight guest. The evidence shows, and the Defendants agree, that under Illinois law, Plaintiff may do exactly that, as long as she has the homeowners' permission. Thus, there is no disagreement here; all litigants appear to be on the same side on this issue.  Therefore, there is no case or controversy.

2.      Plaintiff lacks standing because she has no concrete plan to bring a weapon into Illinois.

The evidence also shows that, although Illinois law allows Plaintiff to bring firearms into Illinois,  Plaintiff  has no actual concrete plan to do so.  Thus she lacks standing for that additional

8

reason. *See Montana Shooting Sports Assoc.*, 2010 WL 3926029 at *10 (holding that when evaluating the credibility of a threat of prosecution, the court must consider whether the Plaintiff has a concrete plan to violate the law in question). In order to show a concrete plan, a plaintiff must point to "something more than a hypothetical intent to violate the law." *Id.* Plaintiff's unsupported claims that she desires to bring her firearm to Illinois do not rise to the level of a concrete plan because Plaintiff could not have had an actual or concrete plan where she did not even own a firearm at the time she filed this Complaint. (Mishaga Dep 14:7-16); *see Perry v. Village of Arlington Heights*, 186 F.3d 826, 830 (7th Cir. 1999) (holding that Plaintiff lacked standing to challenge statute regulating disposal of abandoned vehicles where Plaintiff did not own a car at the time he filed his complaint). At depositions taken in this case, Plaintiff testified that except for a gun she owned for a couple of years when she was in her twenties, she has never owned a gun before her husband purchased a .380 semi-automatic as a gift for her in March of 2011. **(**Mishaga Dep 14:7-16). As illustrated in the receipt for that gun purchase, the final balance was not paid, and the gun was not "picked up" until May 17, 2011 – over two months after she filed this amended Complaint, and nearly ten months after she filed her initial complaint. (Ex. C). Existence of federal jurisdiction depends upon facts as they existed when the complaint is filed. *Lujan*, 504 U.S. at 571 n.4; *Perry*, 186 F.3d at 830 (holding that Plaintiff's purchase of a car after he filed his complaint did not confer standing because standing "must exist at the commencement of the suit."). Thus, Plaintiff's later ownership of a firearm does not cure her deficiency and she lacks standing. *Lujan*, 504 U.S. at 571 n.4; *Perry*, 186 F.3d at 830.

        **3.**    <u>Plaintiff's claim is not ripe because she has suffered no substantial threat of immediate or actual prosecution.</u>

For the same reasons that Plaintiff lacks standing, her claims are also not ripe for adjudication.

As discussed above, the FOID Act does not prohibit the activity in which Plaintiff wishes to engage. As such, Plaintiff's unsupported allegations regarding fears of arrest or prosecution are not based in sufficient reality or immediacy to satisfy the ripeness requirements. *See Golden v. Zwickler*, 394 U.S. 103, 108 (1969) (holding that a case is ripe for pre-enforcement review only if the probability of the future event occurring is substantial and of "sufficient immediacy and reality to warrant the issuance of a declaratory judgment"); *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983); *Koch Refining v. Farmers Union Cent. Exch., Inc.*, 831 F.2d 1339, 1341 (7th Cir. 1987).

4.  Assuming, *arguendo*, that Plaintiff has standing and the FOID Act burdens activities that fall within the scope of the Second Amendment, summary judgement is still proper because the FOID Act meets the requirements for intermediate scrutiny.

Even if this Court were to determine that Plaintiff meets the standing and ripeness requirements and that the FOID Act regulates activity falling within the scope of the Second Amendment, summary judgement is nonetheless proper because the Act's minimal regulations pass intermediate scrutiny. The rigor of judicial review in Second Amendment cases depends on how close the challenged law comes to the core of the Second Amendment right and the severity of the law's burden on the right. *Ezell,* 2011 WL 2623511 at * 17. As such, "laws restricting activity lying closer to the margins of the Second Amendment right, laws that merely regulate rather than restrict, and modest burdens on the right may be more easily justified" than laws that place "a severe burden" on the core Second Amendment right. *Id.* Intermediate scrutiny applies here because the FOID Act merely regulates firearm possession as opposed to restricting or banning it, and any resulting burden is trivial because the Act merely requires qualified nonresidents to meet one of the numerous exceptions, including Exception 10 which merely requires that a nonresident be allowed to possess firearms in her resident state in order to bring her firearms to Illinois.

Under intermediate scrutiny, the State need show only that: 1) there is an important or significant governmental interest,  and 2) that the fit between the challenged regulation and the proffered objective be reasonable, not perfect.  *See United States v. Skoien* , 614 F.3d 638, 641-42 (7th Cir. 2010); *Ezell*, 2011 WL 2623511 at * 16; *United States v. Marzella*, 614 F.3d 85, 98 (3rd Cir. 2010).   Illinois's requirements under the FOID Act are aimed at addressing the significant and important state goal of "promot[ing] and protect[ing] the health, safety and welfare of the public." 430 ILCS 65/1.  It is long recognized that Government exists, in large part, to ensure the safety of its citizenry.  *See*, *e.g.*, *United States v. Salerno*, 481 U.S. 739,  755 (1987) (stating that "a primary concern of every government [is] the safety and indeed lives of its citizens").   Reasonable regulation of firearms has long been acknowledged as an essential component of public safety. The FOID Act promotes this goal by providing a "practical and workable system through which law enforcement authorities can identify individuals who are prohibited by Section 24-3.1 of the Criminal Code of 1961, from acquiring or possessing firearms and firearm ammunition and who are prohibited by the FOID Act from acquiring stun guns and tasers." 430 ILCS 65/1.   The requirement that applicants be residents of Illinois with a valid license or identification card further promotes this goal by ensuring that ISP has adequate and reliable information upon which to determine applicant eligibility.  *See* (Vorreyer  Dep. 17:16-22:4, 54:5-55:12; Vorreyer Aff.¶ 17; Ex. F).  As illustrated in the Vorreyer Affidavit and Vorreyer Deposition testimony, there is a significant disparity between the amount and credibility of information available to ISP regarding Illinois residents as compared to nonresidents.  Thus, in order to promote public safety, the FOID Act creates as scheme whereby Illinois performs the necessary background checks to ensure that Illinois residents who wish to possess firearms are eligible to do so, and Illinois defers to nonresidents' home states to determine their eligibility to possess firearms.  Indeed, this scheme ensures

that the state with the best access to information and ability to access eligibility is tasked with doing so for its citizens.   Before issuing a FOID Card, ISP performs various background checks, including checking national databases including  NICS, NCIC, III, and ICE. (Vorreyer Aff. ¶ 7).  The information contained in these databases is important, but it is limited and can be inaccurate.  (*See* Vorreyer Aff.  ¶ 8). Thus, although passing through NICS and the other federal databases is a necessary condition of qualifying for a FOID Card under Illinois law, it is not alone sufficient.  (*See* Vorreyer Aff.  ¶ 8-18). Despite the shortcomings of national databases, they often represent the only information that is readily available with respect to a nonresident's criminal history. (*See* Vorreyer Aff.  ¶ 14-17).

Illinois State and local databases, on the other hand, are far more comprehensive.  (Vorreyer Aff. ¶¶ 8, 10,11).  They contain a wealth of information that is highly relevant to whether an applicant would be eligible to possess a firearm in Illinois.  Thus, in addition to its search in national databases, ISP also searches LEADS and other Illinois state and local databases.  (Vorreyer Aff.  ¶ 8-13).  Information in other state's local and state databases are not available to ISP.   (Vorreyer Aff. ¶ 9).   It would simply overburden ISP resources if it were required to do the same background check for residents of all of the other 49 states who simply wish to apply for a FOID Card. (Vorreyer Aff. ¶ 16-18). Even more problematic is the fact that it would be virtually impossible for ISP to monitor the ongoing qualifications of nonresident FOID holders.   In Illinois, ISP receives hourly updates through its Correlation database notifying it when orders of protection, convictions, or other prohibitors are added to an individual's rap sheet in Illinois. (Vorreyer Dep. 19:21-24)**.**  However, no such system exists for interstate reporting. Thus, if the residency requirement were lifted, ISP would have no way of monitoring the ongoing qualifications of nonresident FOID Card holders.  This would compromise the safety of Illinois citizens by undermining the reliability of the extensive background check and ongoing monitoring efforts that

is part of ISP's process.   Therefore, there is a substantial and important reason for the FOID Act's residency requirement– protecting the safety of Illinois citizens.  The residency requirement is closely related to the state's public safety  goal because it ensures that the ISP is able to receive sufficient and reliable information needed to monitor FOID Card holder's eligibility.  Because ISP lacks access to the information necessary to perform a thorough and reliable background check for nonresidents, Illinois' current statutory scheme defers to the nonresident's home state by allowing nonresidents to possess firearms as long as they are legally allowed to do so in their resident state.  Their home state is in a better position than Illinois to perform the necessary checks to ensure that it's citizens are qualified to possess firearms.

**C.    This Court Should Grant Summary Judgment Because Plaintiff Cannot Demonstrate That The FOID Act Implicates A Fundamental Right That Is So Sufficiently Basic To The Livelihood Of The Nation That It Falls Within The Scope of the Privileges And Immunities Clause.**

Plaintiff alleges that Defendants have violated her  right to travel, guaranteed by the Privileges and Immunities Clause, because they refused to issue her a FOID Card on the basis that she is not an Illinois resident.   The right to travel protects: 1) the right of a citizen from one state to enter and leave another state; 2) the right to be treated as a welcome visitor rather than an unfriendly alien when temporarily present in the second state; and 3) for those travelers who elect to become permanent residents, the right to be treated like other citizens of that state.  *Saenz v. Roe*, 526 U.S. 489, 501 (1999); *Chavez v. Illinois State Police*, 251 F.3d 612, 640 (7th Cir. 2001).  The right to travel is not separately enumerated by the Constitution.  Rather, depending on the specific practice being challenged, it has been derived from several different sources.  *Attorney General of N.Y. v. Soto-Lopez*, 476 U.S. 898, 903 (1986).  Plaintiff has not alleged that she has been prevented from entering or leaving Illinois.  Nor has

13

she alleged that she seeks to become a permanent resident and has been denied rights in that regard. Instead, Plaintiff's allegations implicate only the second area of protection – the right to be treated as a welcome visitor rather than an unfriendly alien.   Thus, as the Supreme Court held in *Saenz*, that  right is derived from the Privileges and Immunities Clause of Article IV, section two of the United States Constitution. *Saenz*, 526 U.S. at 501.  Specifically, the right is such that  "by virtue of a person's state citizenship, a citizen of one State who travels in other States, intending to return home at the end of his journey, is entitled to enjoy the 'Privileges and Immunities of Citizens in the several States that he visits." *Saenz*, 526 U.S. at 489; *see also Chavez*, 251 F.3d at 649.

The Privileges and Immunities Clause protects only those limited activities or rights  that  are so "sufficiently basic to the livelihood of the Nation" that they "bear[] upon the vitality of the Nation as a single entity." *Supreme Court v. Friedman*, 487 U.S. 59, 64-65 (1988); *see also Baldwin v. Montana Fish & Game Comm'n*, 436 U.S. 371, 383, 88 (1978).  As such, Plaintiff must demonstrate that the asserted right is a fundamental right falling within the scope of the Privileges and Immunities Clause. *Baldwin*, 436 U.S. at 388.  Plaintiff's only allegation here is that her right to travel has been violated because she is not allowed to bring her firearms to Illinois.  Defendants here are entitled to summary judgment because the FOID Act allows her to possess firearms in Illinois without a FOID Card.  Thus, Plaintiff has articulated no burden on any fundamental right, privilege, or immunity.  As fully discussed above, nonresidents who, like Plaintiff, are allowed to possess firearms in their resident state, are allowed to do so in Illinois without a FOID Card.   Thus, her right to possess firearms is no more restricted than Illinois residents'.  The only difference between the two is that residents are required to possess a FOID card to possess firearms in Illinois and nonresidents may do so if their resident state has deemed them eligible to do so.

The FOID Card itself is not tied to Plaintiff's ability to exercise any Second Amendment right and Plaintiff has no fundamental right to any specific form of identification.   Thus, Illinois need not issue FOID Cards to nonresidents simply because it issues them to qualified Illinois residents.   As the court in *Baldwin* held, a state need not "always apply all its laws or services equally to anyone, resident or nonresident who may request it do so.  Some distinctions between residents and nonresidents merely reflect the fact that this Nation is composed of individual States." *Baldwin*, 436 U.S. at 388 (citations omitted).  As fully discussed above, Illinois' distinction between residents and nonresidents reflects not only the fact that this is a Nation composed of individual States, but also reflects the disproportionate availability and credibility of information available to ISP with regard to residents and nonresidents. Therefore, summary judgement is proper here because the FOID Act's distinction between residents and nonresidents do not burden any fundamental right.

Moreover, Illinois has a rational reason, *i.e.* public safety,  behind its  policy decision to process FOID Applications and determine the eligibility of its own citizens and to defer to nonresidents' resident states to verify their eligibility to possess firearms.  Illinois is not able to access sufficient and reliable information regarding nonresidents in order to ensure that they are qualified to possess handguns and to continually monitor their eligibility.  Thus, Illinois protects public safety by issuing FOID cards only to Illinois residents, for whom ISP has access to the  necessary information to perform sufficient background checks and monitoring.  Thus, the FOID Act's statutory scheme is not arbitrary or without reason. *See Baldwin*, 436 U.S. 371, 388-91 (upholding constitutionality of a Montana regulatory licensing scheme where case involved no fundamental right falling in the purview of the Privileges and Immunities Clause and Montana's actions in treating residents and nonresidents differently were not irrational or arbitrary).

15

## V. CONCLUSION

No declaratory or injunctive relief is warranted.  Defendants are entitled to summary judgement because Plaintiff has no standing to challenge Illinois' Firearm Owner's Identification Card Act, nor is there a case or controversy that confers jurisdiction on this court because Plaintiff did not own a gun at the time she filed her Complaint and there is no reasonable threat of prosecution or injury under Illinois law for Plaintiff bringing a firearm into Illinois.  Thus, this court need not rule on the constitutionality of Illinois' FOID Act under the present facts because its provisions do not apply to Plaintiff nor affect her ability to bring her firearm into Illinois.

Respectfully Submitted,

JONATHON MONKEN and MICHAEL VORREYER,
   Defendants,

LISA MADIGAN, Attorney General,
State of Illinois
   Attorney for Defendants,

Deborah Barnes, #6187804
Bianca R. Chapman, #6292541
Assistant Attorney General
500 South Second Street
Springfield, Illinois  62706     By:  /s/ Bianca R. Chapman
(217) 782-5819                  Bianca R. Chapman
                             Assistant Attorney General

Of Counsel.

16

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF ILLINOIS**
**SPRINGFIELD DIVISION**

| | | |
|---|---|---|
| ELLEN MISHAGA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | No. 10-3187 |
| | ) | |
| JONATHON MONKEN, | ) | |
| | ) | |
| Defendants. | ) | |

**CERTIFICATE OF SERVICE**

I, Bianca R. Chapman, Assistant Attorney General, hereby certify that on October 3, 2011, I electronically filed the foregoing Memorandum in Support of Summary Judgment with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following counsel of record for Plaintiff:

James M. Manley
jmanley@mountainstateslegal.com

and I hereby certify that on October 3, 2011, I mailed by United States Postal Service, the document to the following non-registered participant:

NONE

Respectfully submitted,
 /s/ Bianca R. Chapman
Bianca R. Chapman, #6292541
Assistant Attorney General
Attorney for Defendants
Office of the Attorney General
500 South Second Street
Springfield, IL 62706
Telephone: (217) 782-5819
Facsimile: (217) 524-5091
bchapman@atg.state.il.us