E-FILED
Monday, 03 October, 2011  04:17:11 PM
Clerk, U.S. District Court, ILCD
E-FILED
Tuesday, 01 March, 2011  04:32:27 PM
Clerk, U.S. District Court, ILCD

James M. Manley, Esq.
Mountain States Legal Foundation
2596 South Lewis Way
Lakewood, Colorado 80227
(303) 292-2021
(303) 292-1980 (facsimile)
jmanley@mountainstateslegal.com

Attorney for Plaintiff

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | | |
|---|---|---|
| ELLEN MISHAGA, | ) | |
| | ) | |
| Plaintiff, | ) | No. 10-cv-03187-MPM-CHE |
| | ) | |
| v. | ) | |
| | ) | |
| JONATHON E. MONKEN, Director of the Illinois Department of State Police; MICHAEL W. VORREYER, Master Sergeant, Illinois Department of State Police, | ) ) ) ) ) | **FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |
| Defendants. | | |

Plaintiff Ellen Mishaga, by and through her undersigned attorney, hereby files this First

Amended Complaint against Defendants and alleges as follows:

### NATURE OF THE CLAIMS

1.    Ms. Mishaga seeks declaratory and injunctive relief for Defendants' deprivation

of the right to keep and bear arms and the right to travel guaranteed by the United States

Constitution.



## JURISDICTION

2.      This Court has federal question jurisdiction over Ms. Mishaga's claims for relief

pursuant to 28 U.S.C. § 1331, because the claims arise under the United States Constitution.

Additionally, this Court has jurisdiction pursuant to 28 U.S.C. § 1343(a)(3) and 42 U.S.C. § 1983

because this action seeks to redress the deprivation, under color of the laws and regulations of

the State of Illinois, of rights, privileges, or immunities secured by the United States

Constitution.

## VENUE

3.      Venue rests properly in this Court pursuant to 28 U.S.C. § 1391(b) and

CDIL-LR 40.1, because, *inter alia*, a substantial part of the events or omissions giving rise to the

claims occurred in Sangamon County, Illinois.

## PARTIES

4.      Plaintiff Ellen Mishaga is a citizen of the United States and a resident of Ohio.

5.      Several times each year, Ms. Mishaga makes overnight trips to Illinois to visit

friends.  When she makes these trips, she stays in her friends' home.  Ms. Mishaga has concrete

plans to make overnight trips to Illinois to visit friends and she has a credible fear of arrest,

prosecution, incarceration, and/or fine if she were to possess a functional firearm for self-defense

while an overnight guest in her friends' Illinois home.

6.      Defendant Jonathon E. Monken is the Director of the Illinois Department of State

Police.  Defendant Monken is responsible for issuing Illinois Firearms Owner Identification

Cards ("FOIDs").  *See* 430 ILCS 65/5.  By enforcing the policies complained of in this action,

Defendant Monken currently is depriving Ms. Mishaga of the right to keep and bear arms and the

2

right to travel guaranteed by the United States Constitution.  Defendant Monken is sued in his official capacity.

7.        Defendant Michael W. Vorreyer, is Master Sergeant, Illinois Department of State Police.  Defendant Vorreyer has responsibility for the FOID Card Unit of the Illinois Department of State Police.  By enforcing the policies complained of in this action, Defendant Vorreyer currently is depriving Ms. Mishaga of the right to keep and bear arms and the right to travel guaranteed by the United States Constitution.  Defendant Vorreyer is sued in his official capacity.

## STATEMENT OF FACTS

8.        The Second Amendment to the United States Constitution provides:  "A well regulated Militia being necessary to the security of a free State, the right of the people to keep and bear Arms shall not be infringed."

9.        The Second Amendment guarantees individuals a fundamental right to possess functional firearms—including handguns, rifles, and shotguns—for purposes of self-defense.

10.       The Second Amendment guarantees, *inter alia*, the right to possess and use firearms in a home for personal security.

11.       An overnight guest has a legitimate expectation of personal security in her host's home and an overnight guest has the same Second Amendment right to possess and use firearms that the overnight guest has in her own home.

12.       The Fourteenth Amendment to the United States Constitution provides, in pertinent part:  "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty,

or property, without due process of law; nor deny to any person within its jurisdiction the equal
protection of the laws."

13.     The right to keep and bear arms is guaranteed by the Second Amendment and
enforceable against the states and their political subdivisions, pursuant to the Due Process Clause
of the Fourteenth Amendment.

14.     The right to keep and bear arms is a privilege and immunity of United States
citizenship, which States and their political subdivisions may not deny or abridge.

15.     Article IV of the United States Constitution provides, in pertinent part:  "The
Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several
States."

16.     The right to travel, guaranteed by the privileges and immunities clauses of Article
IV and the Fourteenth Amendment, is violated when a State discriminates against citizens of
other States where there is no substantial reason for the discrimination beyond the mere fact that
they are citizens of other States.

17.     Illinois law recognizes the right of Illinois residents to keep and bear arms.
Ill. Const. art. I, sec. 22; 430 ILCS 65/1 *et seq.*

18.     With certain limited exceptions not relevant here, no person may acquire or
possess any firearm or ammunition in the State of Illinois without having in his or her possession
a FOID issued by the Department of State Police.  430 ILCS 65/2.

19.     An applicant for a FOID must possess either an Illinois driver's license number or
an Illinois Identification Card number.  430 ILCS 65/4.

20.    As a resident of Ohio, Ms. Mishaga cannot possess an Illinois driver's license number or an Illinois Identification Card number and is therefore ineligible for a FOID. 430 ILCS 65/4.

21.    Illinois law prohibits Ms. Mishaga from possessing a functional firearm for self-defense when she is an overnight guest in her friends' Illinois home because she is not a resident of Illinois.  430 ILCS 65/2; 65/4; 65/14.

22.    Illinois law contains no exception to the FOID requirement for possession or use of a functional firearm for self-defense within an Illinois home.

23.    Illinois law provides that possession of a functional firearm for self-defense within an Illinois home without a FOID is a Class 3 felony.  430 ILCS 65/14.

24.    Ms. Mishaga and her husband lawfully own several firearms, which they possess in their home in Ohio.

25.    Ms. Mishaga's Illinois friends lawfully possess firearms in their Illinois home for hunting and self-defense purposes, to which Ms. Mishaga has access when she is a guest.

26.    On March 27, 2010, Ms. Mishaga submitted an application for a FOID.

27.    On or about April 30, 2010, Defendants deprived Ms. Mishaga of the right to keep and bear arms and the right to travel guaranteed by the United States Constitution by denying Ms. Mishaga's application for a FOID because, "No Illinois driver's license number or state identification number provided."

28.    On or about May 17, 2010, Ms. Mishaga submitted a second application for a FOID.

29.     On or about June 14, 2010, Defendants deprived Ms. Mishaga of the right to keep

and bear arms and the right to travel guaranteed by the United States Constitution by denying

Ms. Mishaga's application for a FOID because, "Due to Illinois state law, you must have a valid

IL driver's license or IL state ID in order to be eligible for an IL FOID card."

30.     Ms. Mishaga has twice been denied a FOID because she does not—and as a

resident of Ohio cannot—possess a valid Illinois driver's license or Illinois Identification Card.

31.     Ms. Mishaga desires to lawfully possess a functional firearm for self-defense

within an Illinois home, but is prevented from doing so by Defendants' active enforcement of

430 ILCS 65/1 *et seq.*

### FIRST CLAIM FOR RELIEF
**(Functional Firearms Ban)**
**(Right to Keep and Bear Arms)**
**(Declaratory and Injunctive Relief)**

32.     Ms. Mishaga hereby realleges and incorporates the allegations in the preceding

paragraphs as if the same were fully set forth here.

33.     The right to keep and bear functional firearms for the core lawful purpose of self-

defense is guaranteed by the Second Amendment and enforceable against the states and their

political subdivisions, pursuant to the Fourteenth Amendment.

34.     Illinois law prohibits Ms. Mishaga from possessing a functional firearm for self-

defense when she is an overnight guest in her friends' Illinois home.  430 ILCS 65/2; 65/4;

65/14.

35.     By prohibiting Ms. Mishaga from possessing a functional firearm, Defendants

currently maintain and actively enforce a set of laws, customs, practices, and policies under color

of state law that deprive Ms. Mishaga of the right to keep and bear arms, in violation of the

Second and Fourteenth Amendments to the United States Constitution.  Defendants are therefore

liable to Ms. Mishaga under 42 U.S.C. § 1983.

36.     Ms. Mishaga is entitled to declaratory and permanent injunctive relief against

continued enforcement and maintenance of Defendants' unconstitutional customs, policies, and

practices.  *See* 28 U.S.C. §§ 2201, 2202.

**SECOND CLAIM FOR RELIEF**
**(Discrimination Against Nonresidents)**
**(Right to Travel)**
**(Declaratory and Injunctive Relief)**

37.     Ms. Mishaga hereby realleges and incorporates the allegations in the preceding

paragraphs as if the same were fully set forth here.

38.     The privileges and immunities clauses of Article IV and the Fourteenth

Amendment guarantee the right to travel by, *inter alia*, prohibiting discrimination against

citizens of other States where there is no substantial reason for the discrimination beyond the

mere fact that they are citizens of other States.

39.     Illinois law recognizes the right of Illinois residents to keep and bear arms.

Ill. Const. art. I, sec. 22; 430 ILCS 65/1 *et seq.*

40.     With certain limited exceptions not relevant here, no person may acquire or

possess any firearm or ammunition in the State of Illinois without having in his or her possession

a FOID issued by the Department of State Police.  430 ILCS 65/2.

41.     As a resident of Ohio, Ms. Mishaga cannot possess an Illinois driver's license

number or an Illinois Identification Card number and is therefore ineligible for a FOID.  430

ILCS 65/4.

42.     Illinois law prohibits Ms. Mishaga from possessing a functional firearm for self-defense when she is an overnight guest in her friends' Illinois home because she is not a resident of Illinois.  430 ILCS 65/2; 65/4; 65/14.

43.     By prohibiting Ms. Mishaga from possessing a functional firearm, Defendants currently maintain and actively enforce a set of laws, customs, practices, and policies under color of state law that discriminate against citizens of other States, including Ms. Mishaga, and thereby deprives Ms. Mishaga of the right to travel, in violation of the privileges and immunities clauses of Article IV and the Fourteenth Amendment.  Defendants are therefore liable to Ms. Mishaga under 42 U.S.C. § 1983.

44.     Ms. Mishaga is entitled to declaratory and permanent injunctive relief against continued enforcement and maintenance of Defendants' unconstitutional customs, policies, and practices.  *See* 28 U.S.C. §§ 2201, 2202.

**PRAYER FOR RELIEF**

WHEREFORE, Ms. Mishaga respectfully requests that this Court:

A.     Declare that 430 ILCS 65/1 *et seq* deprives Ms. Mishaga of the right to keep and bear arms for self-defense guaranteed by the Second and Fourteenth Amendments, by prohibiting her possession of functional firearms for self-defense in Illinois;

B.     Declare that 430 ILCS 65/1 *et seq* deprives Ms. Mishaga of the right to travel by prohibiting citizens of another State to possess functional firearms for self-defense in Illinois homes, in violation of the privileges and immunities clauses of Article IV and the Fourteenth Amendment;

8

C.      Permanently enjoin Defendants, their officers, agents, servants, employees, and

all persons in active concert or participation with them, from enforcing 430 ILCS 65/1 *et seq*,

which prohibits nonresidents from possessing functional firearms for self-defense in Illinois

homes; or, in the alterative, direct Defendants to issue Ms. Mishaga a FOID consistent with her

most recent application;

D.      Award Ms. Mishaga her costs, attorneys' fees, and other expenses in accordance

with law, including 42 U.S.C. § 1988;

E.      Award Ms. Mishaga any further relief this Court deems just and equitable.

Respectfully submitted this 1st day of March 2011.


                              By: /s/ James M. Manley
                              James M. Manley, Esq.
                              Mountain States Legal Foundation
                              2596 South Lewis Way
                              Lakewood, Colorado 80227
                              (303) 292-2021
                              (303) 292-1980 (facsimile)
                              jmanley@mountainstateslegal.com

                              Attorney for Plaintiff

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 1st day of March 2011, I filed the foregoing document using the CM/ECF system, which caused the following to be served by electronic means:

Joanna Belle Gunderson
Assistant Attorney General
Office of the Attorney General
500 South Second Street
Springfield, IL  62706
Telephone:  (217) 782-1841
Facsimile:  (217) 524-5091
jgunderson@atg.state.il.us


/s/ James M. Manley
James M. Manley

**E-FILED**
Tuesday, 01 March, 2011 04:32:27 PM
Clerk, U.S. District Court, ILCD

AO 440 (Rev. 12/09) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Central District of Illinois

| | |
|---|---|
| ELLEN MISHAGA | ) |
| _____ | ) |
| *Plaintiff* | ) |
| v. | ) Civil Action No. |
| JONATHON E. MONKEN, Director of the | ) |
| Illinois Department of State Police | ) |
| _____ | ) |
| *Defendant* | ) |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*  Master Sergeant Michael Vorreyer
Illinois State Police
Firearms Services Bureau
801 South Seventh Street, Suite 1000-S
P.O. Box 19461
Springfield, Illinois  62794-9461

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

James M. Manley, Esq.
Mountain States Legal Foundation
2596 S. Lewis Way
Lakewood, CO  80227

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____      _____

*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 12/09) Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____.

❒ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❒ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❒ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❒ I returned the summons unexecuted because _____ ; or

❒ Other *(specify):*



My fees are $ _____ for travel and $ _____ for services, for a total of $ _____0.00_____ .

I declare under penalty of perjury that this information is true.


Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

1

1    IN THE UNITED STATES DISTRICT COURT

2    FOR THE CENTRAL DISTRICT OF ILLINOIS

3

4    ELLEN MISHAGA,                    )
                                       )
5              Plaintiffs,             )
                                       )
6       vs.                            )    No. 10-3187
                                       )
7    HIRAM GRAU, Director of           )
     the Illinois Department           )
8    of the State Police and           )
     MICHAEL VORREYER,
9
               Defendants.
10

11

12              Deposition of ELLEN MISHAGA, taken before

13   Cathy J. Craggs, CSR, at the instance of the

14   Defendants, on July 26, 2011, at the hour of 9:00

15   a.m., at 3000 Montvale, Springfield, Illinois,

16   pursuant to attached stipulation.

17

18

19

20              ASSOCIATED COURT REPORTERS
                     1-800-252-9915
21                    P.O. Box 684
                Taylorville, Illinois 62568
22

23

24

DEFENDANT'S
EXHIBIT
B

7

1  time, just let me know and we can take a break as many

2  as necessary that you need.

3      A. Okay.

4      Q. Great.

5          Okay.  A little background here.

6          Can you tell me where you live?

7      A. Mentor, Ohio.

8      Q. Okay.  And how long have you been in Mentor?

9      A. 13 years.

10     Q. And before that where did you live?

11     A. University Heights, Ohio.

12     Q. Have you ever lived outside Ohio?

13     A. Yes.

14     Q. Where else have you lived?

15     A. Pennsylvania.

16     Q. And when was that?

17     A. From the time I was born until I was 17.

18     Q. And what's your address in Mentor, Ohio?

19     A. 9104 Gregory Court.

20     Q. And who do you live with?

21     A. My husband.

22     Q. And what's his name?

23     A. Garrick, G-A-R-R-I-C-K, Mishaga.

24     Q. And are you employed?

13

1          Q. With mental retardation?

2          A. No.

3          Q. Are you alien to the United States or were

4     you born in the United States?

5          A. No.

6          Q. You were born in the United States?

7          A. Yes.

8          Q. Okay.   Thank you.

9               Are you subject to an existing order of

10    protection?

11         A. No.

12         Q. And have you been convicted in the past five

13    years of battery, assault, aggravated assault or

14    violation of an order of protection?

15         A. No.

16         Q. And have you been convicted of domestic

17    violence?

18         A. No.

19         Q. Okay.   Now do you own guns currently?

20         A. Yes.

21         Q. Can you tell me what types of guns you own?

22         A. I have a 380 semi automatic pistol.

23         Q. Is that your only gun?

24         A. That's the only one that I have used.

14

1    Q. Okay. So do you own any other firearms?

2    A. My husband does.

3    Q. Okay. What about hunting rifles?

4    A. My husband does.

5    Q. And what date did you purchase your 380 semi

6    automatic?

7    A. It was in March of this year.

8    Q. Before March of this year have you ever

9    owned a gun?

10   A. I had one when I was in my 20's that my dad

11   gave me.

12   Q. And do you remember what kind of gun that

13   was?

14   A. It was a pistol, I don't know.

15   Q. And how long did you keep it?

16   A. A couple of years.

17   Q. Okay. And are you licensed or permitted to

18   carry or possess guns in your permanent resident state

19   of Ohio?

20   A. The concealed carry --

21          MR. MANLEY: Hold on, objection

22   can you cut that down to two questions, or it's kind

23   of a compound question.

24   Q. Are you, you can answer.

**ASSOCIATED COURT REPORTERS**
*1-800-252-9915*

15

1          Are you licensed or permitted to carry

2   or possess guns in your permanent resident state?

3          A.  I'm permitted to carry guns, we don't need a

4   license.

5          Q.  Okay.  And so when you say you're permitted

6   to carry guns, did you have a permit that allows you

7   to do that?

8          A.  No.

9          Q.  Do you have a license to do that?

10         A.  No.

11         Q.  Do you have to register to do that?

12         A.  No.

13         Q.  So tell me what's the process in Ohio that

14  allows you to, to carry guns?

15         A.  I don't know that I understand that.  We are

16  allowed to have guns in our home.  I don't have a

17  license to go out and carry a gun like in public, I

18  don't have that, but I'm allowed to own a gun.

19         Q.  Okay.  So you don't have a, a license or

20  permit --

21         A.  No.

22         Q.  -- to carry a gun outside your home?

23         A.  No.

24         Q.  Okay.  So then you don't have a concealed

16

1　carry license?

2　　　A. No.

3　　　Q. Have you applied for one?

4　　　A. No.

5　　　Q. And why haven't you applied for one?

6　　　A. I didn't feel I needed one.

7　　　Q. And why do you feel you don't need one?

8　　　A. Because I'm allowed to use a gun in my home

9　for protection, so I don't need, that's the only place

10　I would want to, to have a gun for protection.

11　　　Q. Okay. So the only place that you feel like

12　you need a gun for protection is inside of your home?

13　　　A. Correct.

14　　　Q. So when you leave out of your home you don't

15　feel like you need a gun?

16　　　A. Well, my husband has his.

17　　　Q. Okay. And when you leave the home, are you

18　always with your husband?

19　　　A. No.

20　　　Q. So you feel safe to leave your home and

21　travel about in Ohio without carrying a gun with you,

22　having a gun with you for protection?

23　　　A. Yes.

24　　　Q. Now did you have a license to carry or

**GANDER MOUNTAIN.**

GM#304 - Mentor FFL# 4-34-01162
9620 Diamond Centre Drive
Mentor, OH 44060
(440) 639-8545

| Inventory Number | Manufacturer/Importer | Model | Type | Caliber/Gauge | Serial Number |
|---|---|---|---|---|---|
| 725327606970 | Taurus | PT38 | Pistol | .380 ACP | ▮ |

**Sold To:** GARRICK NNN MISHAGA
9104 GREGORY CT
MENTOR, OH 44060

Assoc. ID: 515197, Bob

"Safely storing and securing firearms away from children will help prevent the unlawful possession of handguns by juveniles, stop accidents, and save lives."

All new firearms purchased at Gander Mountain follow the manufacturer's warranty for a new firearm purchase. See your owner's manual for this information and remember that Gander Mountain is a warranty repair station for most firearm manufacturers. All used firearms purchased from Gander Mountain are guaranteed against defects in materials and workmanship for a period of 30 days from the date of purchase. Please save this receipt as your proof of purchase should warranty work become necessary. Accidental damage, abuse, and barrel ruptures are not covered by this guarantee.

Consistent with industry standards, ALL FIREARM SALES ARE FINAL. No refunds or exchanges can be honored. Each firearm manufacturer requires that you read their owner's manual before using.

I understand the safe method of operation, handling and care of the above firearm(s) and acknowledge receipt of above in satisfactory condition.

Signed: _____   Date: 02/17/2011

---

GANDER MOUNTAIN #304
(440)639-8545
Mon-Thurs 9am-9pm
Fri & Sat. 9am-9pm
Sundays 10am-6pm

**LAYAWAY SALE**
LAYAWAY NUMBER 10005139
CUSTOMER NAME: GARRICK MISHAGA
PHONE:

ADDRESS: 9104 GREGORY COURT
CITY: MENTOR
STATE: OH
ZIP: 44060
73B TCP          725327606970

REGULAR PRICE          * ▮ T
SERIAL NUMBER            ▮ N
SUBTOTAL
SALES TAX 6.25%
LAYAWAY SALE TOTAL

LAYAWAY DEPOSIT

**TOTAL**
**DISCOVER**
XXXXXXXXXXX1874
EXPIRY: XX/XX
AUTH# 01674B

LAYAWAY SALE 90 DAY PAYMENT DUE DATES:
MAR 18/11
APR 17/11
MAY 17/11 PICKED UP

**BALANCE DUE**

All items on Layaway will be
held for 90 days. If the items
are not picked up within
90 days, the items will be
returned to stock.
A $25.00 restocking fee
will be charged for all
cancelled layaways.

**CUSTOMER COPY**

ITEMS 1                      Wayne T.
02-16-2011  10:08:32   0304 26 515226 4968

3 Ways to Shop
In store, Online, and Catalog!

DEFENDANT'S EXHIBIT C

1

1    IN THE UNITED STATES DISTRICT COURT

2    FOR THE CENTRAL DISTRICT OF ILLINOIS

3

4

5    ELLEN MISHAGA,                  )
                                     )
6            Plaintiff,              )
                                     )
7      vs.                           )    No. 10-3187
                                     )
8    HIRAM GRAU, Director of         )
     the Illinois Department         )
9    of the State Police and         )
     MICHAEL VORREYER,
10
             Defendants.
11

12

13           Deposition of MICHAEL VORREYER, taken

14   before Cathy J. Craggs, CSR, at the instance of the

15   Plaintiff, on July 26, 2011, at the hour of 1:00 p.m.,

16   at 3000 Montvale, Springfield, Illinois, pursuant to

17   attached stipulation.

18

19

20

21              ASSOCIATED COURT REPORTERS
                     1-800-252-9915
22                    P.O. Box 684
                Taylorville, Illinois 62568
23

24

DEFENDANT'S
EXHIBIT
D

**ASSOCIATED COURT REPORTERS**
*1-800-252-9915*

18

1    entered into the system, the FOID system and then at

2    that point it begins the eligibility process.

3        **Q. Okay.  Can you walk me through that**

4    **eligibility process?**

5        A.  The eligibility process once it's entered

6    into the system, it goes in two directions.

7                One, the system will automatically run

8    a criminal history check, if it's a clear individual,

9    it's sent down the line as cleared, to make the card.

10               If it's not, it's kicked out for an

11   operator to review the criminal history and identify

12   any prohibitors.

13       **Q. And is that the whole process?**

14       A.  For eligibility.  Then it moves into ID

15   verification when the card is made.

16       **Q. Okay.  And then what's the next step after**

17   **that?**

18       A.  If it, if, if it clears the system, as I

19   first spoke of, and goes into the ID verification,

20   then an operator in the application section will look

21   at all that information from the application and make

22   a determination that all the information is correct

23   comparable to an Illinois drivers license or ID card

24   at that time if the signatures match, the pictures

19

1  look the same, the information from the drivers

2  license and the application are the same, then they

3  will make a determination that that card can be

4  cleared and the card is made at that point and sent to

5  the vendor electronically.  The vendor makes a card,

6  sends it to the address on the application.

7      Q.  Okay.  And when a card is revoked, can you

8  walk me through that process, how does that begin?

9      A.  Okay.  We are notified several different

10  ways of how a card can be revoked.

11            One, I talked about being the

12  enforcement section and being liaisons for law

13  enforcement agencies.  If we are notified by law

14  enforcement agencies that certain individuals may be

15  prohibited, we can look into their criminal history,

16  see if they are still eligible and if not, we would

17  revoke them, or also notified through a computer

18  system of all active warrants and orders of

19  protections that come in and we can make eligibility

20  decisions on those to revoke the card.

21            And in addition we have an hourly, we

22  call it a correlation, anything that comes through

23  correlation or anything new added to an individual's

24  rap sheet we look at that and if it's a new prohibitor

20

1   the card is revoked.  When the card is revoked, it's

2   sent to typing for a specific letter and the applicant

3   is notified or the FOID cardholder is notified that

4   card is revoked and they must return it.

5       Q.  Okay.  And then when you send the letter,

6   the FOID card becomes void at that point?

7       A.  It's entered into the system as revoked and

8   they're given notice through a letter.

9       Q.  Do any of the, of the applications come

10  across your desk do you ever review the applications?

11      A.  Yes.

12      Q.  All of the applications?

13      A.  No, like I said there is a process where

14  they go to the bank, the bank reviews them for missing

15  information or documents before they are sent to, to

16  data entry.  If we get some inhouse, if there is

17  questions, they may come to me, I may take them from

18  individuals and process them for them.  So that's how

19  I would see them either problems or special assistance

20  with FOID applications.

21      Q.  What's one sort of problem that would

22  require your attention?

23      A.  Missing pictures, out of state addresses, no

24  drivers license, no place of birth, things like that.

54

1      A. Unloaded and in a case.

2      Q. And that's the same for nonresidents as well

3    as residents?

4      A. Correct.

5      Q. Now earlier Mr. Manley asked you about

6    instances where a FOID card may be revoked, and you

7    testified regarding when a new incident happens it's

8    added to correlation, can you tell me what is

9    correlation?

10      A. Correlation is any new criminal history

11    records that are sent by the Circuit Clerks in

12    Illinois to the State Police Bureau of Identification.

13    And we run an hourly correlation to any new records

14    that are posted to anyone's criminal history.

15      Q. And if a FOID cardholder gets a hit, I

16    guess, in correlation that shows that there is, are

17    some sort of, of some incident has happened that would

18    make them now ineligible for a FOID card, what do you

19    do with that information?

20      A. We would review the, the correlation hit and

21    determine if that new posting or arrest is a firearms

22    prohibitor and if it is at that time we would make a

23    revocation.

24      Q. Now do you get hits in correlation with

55

1  regard to arrests and convictions that happen out of

2  state?

3      A. No, we do not.

4      Q. So if an out of state resident were

5  convicted or had something occur that would make them,

6  a prohibitor had occurred, you wouldn't be able to get

7  information about that from correlation?

8      A. Correct.

9      Q. Is that information otherwise somehow sent

10 to you automatically like it is for in state residents

11 with correlation?

12     A. No, it is not sent to us.

13             MS. CHAPMAN:  That's all I

14 have.

15             MR. MANLEY:  I have a couple

16 follow-up if that's all right?

17             MS. CHAPMAN:  Sure.

18         REDIRECT EXAMINATION

19         CONDUCTED BY MR. MANLEY:

20     Q. I just handed you Exhibit 5, that's the out

21 of state drivers license ID checklist, is that right?

22     A. Correct.

23     Q. Okay.  The individuals that would be

24 eligible for relief under those two categories on that

**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION**

ELLEN MISHAGA, )
)
          Plaintiff, )
)
    -vs- )    No. 10-3187
)
JONATHON MONKEN, Director of )
the Illinois Department of State Police; )
MICHAEL VORREYER, Master Sergeant, )
Illinois Department of State Police, )
)
          Defendants. )

### AFFIDAVIT OF MASTER SERGEANT MICHAEL VORREYER

I, Michael Vorreyer, being duly sworn, state as follows:

1.     I am over the age of eighteen.

2.     I have personal knowledge of the matters set forth herein.

3.     I am employed as manager of the Enforcement and Firearms Transferring Inquiry

    program in the Firearms Service Bureau of the Illinois State Police ("ISP").

4.     In my capacity as manager of the Enforcement and Firearms Transferring Inquiry

    program, I am responsible for managing a team of employees that process applications for

    identification cards under the Firearms Owners Identification Act ("FOID Act").

5.     In processing FOID applications, the Firearms Services Bureau (the "Bureau") runs an

    extensive background check on each applicant, as required by the FOID Act.

6.     This process begins with hand-reviewing each application to ensure that there are no



DEFENDANT'S
EXHIBIT
E

errors or missing information.

7.     If there are no errors, the application is passed on to the eligibility process where a

criminal history check is performed by running searches in 1) national databases such as

NCIC, NICS, III, and ICE; 2) state databases such as LEADS which contains arrest

information for all arrests occurring in Illinois, and DHS which contains information

regarding admission to mental health facilities in Illinois.

8.     In my extensive experience as a law enforcement officer and as a manager in the Firearms

Service Bureau, I have found that  NCIC and other federal databases contain less

information than LEADS and DHS, and the federal databases often omit information that

would disqualify a FOID application under Illinois law.  I have also found that Illinois

state and local databases such as LEADS and DHS  more fully reflect a FOID applicant's

civil and/or criminal history, and thus the applicant's qualifications for a FOID Card.

9.     ISP does not have direct access to local and statewide databases maintained by other

states.

10.    Local law enforcement agencies in Illinois enter information in LEADS when incidents

have occurred that may serve as bases for ISP to revoke a FOID Cards including active

warrants and orders of protections.

11.    Under Illinois law, Illinois circuit court clerks are required to notify ISP of all final

dispositions of cases.  This includes cases where an individual has been adjudicated

mentally defective or where other factors are present that may prohibit the individual

from possessing a FOID Card.  The circuit clerks report this information directly to ISP's

Bureau of Identification and ISP in turn uses an ISP database called Correlation which

flags Illinois residents and sends ISP hourly updates of all new arrests and dispositions.

12.    Circuit court clerks in other states are not mandated by law to provide such information to

ISP, and ISP is not capable of putting together a similar system that would provide it with

updates and information regarding nonresidents as provided in Correlation for Illinois

residents.

13.    Access to the type of information in the Illinois databases allows ISP to screen for various

issues that may be bases to deny or revoke a FOID Card.  ISP's lack of access to this type

of information held by other states would make it virtually impossible to effectively

conduct this type of screening for nonresident FOID Card applicants.

14.    ISP's ability to check into the background of applicants who have lived in other states is

variable, but in virtually every case is less than ideal.  I do not have access to local

databases that are maintained in other states, so unless local agencies are cooperative, or

the information has been reported to nationwide sources such as NCIC, it is unavailable

to me.

15.    Even in instances when I have found information in one of the national databases such as

NCIC, it has been difficult to obtain needed follow-up information from out-of-state

agencies to verify whether the issue at hand is a prohibitor under that state's laws or to

verify other needed information.

16.    ISP would not have the time or resources to track down the necessary information for

nonresidents if it were required to process applications from all nonresidents who applied

for FOID Cards.

17.    In my opinion, the statutory requirement that FOID applicants be Illinois residents is

critical to ensuring that ISP issues FOID Cards only to individuals for whom it can

reasonably verify (through its background check) that they are qualified under Illinois law

and who will not be a danger to themselves or Illinois' citizens.  If ISP were required to

process FOID applications from nonresidents, I do not believe that we could consistently

ensure their eligibility to possess firearms under Illinois law.

18.    The FOID Act requires that ISP either approve or deny all applications within 30 days

from the date they are received.  In my experience, it would be impossible to search for,

track down, gather, and verify the necessary information from out-of-state agencies to

process nonresident applications in that time frame.

FURTHER AFFIANT SAYETH NOT.

s/Michael Vorreyer
Affiant
_____
Michael Vorreyer, Master Sergeant,
Illinois Department of State Police

SUBSCRIBED and SWORN TO
before me this 3ʳᵈ day of October, 2011.

s/Vickie Brennan
Notary Public

OFFICIAL SEAL
VICKIE BRENNAN
Notary Public - State of Illinois
My Commission Expires Mar 16, 2012



## ILLINOIS STATE POLICE
*Information & Technology Command*

George H. Ryan
*Governor*

### MEMORANDUM

Sam W. Nolen
*Director*

---

**TO:**       Director Sam W. Nolen

**FROM:**    Deputy Director Alex Ferguson

**DATE:**     June 6, 2002

**SUBJECT:**  Proposed Procedures —
              Director's Relief from FOID Illinois Driver's License/ID Requirement

**RECEIVED**
JUN 0 6 2002
ILLINOIS STATE POLICE
OFFICE OF DIRECTOR

Public Act 92-0442, signed into law by Governor Ryan in August 2001, required fundamental changes to the processes involved in the application and issuance of Firearm Owner's Identification Cards. One of the changes to the FOID Act made as part of P.A. 92-0442 added a requirement that FOID applicants over 18 must submit their driver's license or Illinois identification card number with their FOID application. The legislative intent behind this change was to address concerns with the FOID applicant identification process, which has been of concern for years.

This change is enabling ISP to work with the Illinois Secretary of State's Office (SOS) to develop systems and procedures to conduct cross comparisons of images and information collected by SOS when a person gets a driver's license or identification card. The benefit to this process is increased credibility regarding the information submitted on the FOID application. In addition, ISP will use the digital images, obtained by SOS, on FOID cards when these images are available. It is clear this is a significant improvement to the identification process which impacts individuals who would possess firearms.

Individuals who live out-of-state often, if not usually, possess identification from their home state. Some out-of-state individuals work in Illinois as armed security guards or police officers. Illinois statutes require individuals to have a FOID card before the individual can receive a Firearm Authorization Card, issued by the Department of Professional Regulations, which enables the individual to carry firearms as part of employment. These out-of-state individuals are unable to meet the new FOID driver's license/identification card requirement, due to their inability to get an Illinois driver's license or identification card unless they prove Illinois residency and relinquish their out-of-state driver's license.

In addition, members of the armed forces who are currently assigned on a permanent duty assignment to Illinois are also often unable to meet the new requirement of FOID, because these individuals are allowed to maintain permanent residency in their home states.

RECEIVED
JUN 1 0 2002
...SO & TECH COMMAND

125 East Monroe • Room 301
P.O. Box 19461 • Springfield, IL 62794-9461
(217) 557-6630

DEFENDANT'S EXHIBIT

ISP : 00002

Director Sam W. Nolen                                                                        Page 2
June 6, 2002

Legislative language has been developed and presented as a potential solution to this issue. However, it is unclear at this point whether a legislative remedy is imminent.

Research by the ISP Legal Office has determined the Director may grant relief to these individuals, and issue a FOID card if appropriate. The Firearms Services Bureau (FSB) has developed proposed policies and procedures which would allow these individuals to apply for relief from the Illinois DL/ID requirement. While the impact on FOID operations is not known with regard to the military, it is known that approximately 800 out-of-state individuals (mostly security guards and police officers) currently possess a FOID card, and would, within 5 years, need to apply for relief.

It is recommended the following procedures be implemented by FSB.

- FOID applications received without an Illinois driver's license number or Illinois identification card number will be returned to the applicant. FSB will utilize the attached form titled "FOID APPLICANT NOTIFICATION." This form includes information instructing the applicant of his/her options if they are unable to meet the DL/ID requirement.

- Consumer Service representatives at FSB will be trained regarding appropriate responses to individuals calling and requesting information regarding FOID relief procedures. A letter detailing the requirements will be forwarded to the applicant. Submission of the required documents will enable ISP to more reliably confirm the identity of the applicant, thus providing increased credibility to background checks.

- Confirmations with the Illinois military facility and/or Illinois employer will be made as appropriate. Relief will be granted adhering to the same guidelines as used in current relief circumstances. It is recommended the relief decision continue to be delegated to FSB's bureau chief or his designate.

I believe the above described procedure is appropriate, and follows legislative intent to confirm the identity of the FOID applicant. This process will enable individuals from out-of-state who are employed in Illinois to continue their employment. These individuals, due to federal law, would NOT be able to purchase a handgun from a federally licensed firearms dealer in Illinois. This process will provide military personnel, permanently assigned to Illinois, the ability to hunt and possess and acquire firearms and ammunition.

Please advise if additional information is needed. With your approval, these procedures will be immediately implemented at the Firearms Services Bureau.

Attachments
cc: Chief James Redlich

Firearms Services Bureau

| Applicant Name | Date of Birth |

## No Illinois Driver's License/Identification Card - Relief Checklist

❑   **Military Relief Documentation**        All documents are **mandatory.**

*Date Received*

❑   Copy of driver's license or state identification card (out-of-state)    _____
❑   Copy of military identification card    _____
❑   Copy of military duty orders    _____
    **OR**
❑   Letter confirming permanent duty assignment:    _____
    ❑     Assignment is permanent duty
    ❑     Assignment is within Illinois
    ❑     Letter is on official letterhead
❑   Document was from personnel staff/administrative staff.*

Sent in by _____

❑   **Illinois Employment Documentation**        All documents are **mandatory.**

*Date Received*

❑   Copy of driver's license or state identification card (out-of-state)    _____
❑   Letter from employer:    _____
    ❑     Sent by employer
    ❑     Letter is on company letterhead
    ❑     Work is in protection, safety or security field
    ❑     Work is in Illinois (employer/company can be based out-of-state)
    ❑     FOID card is employment requirement
❑   Completed Fingerprint Inquiry Card    _____
    ❑     Results from Bureau of Identification acceptable
❑   Document was sent by employer. *        Sent in by _____

❑   **Amish Relief Documentation**        All documents are **mandatory.**

*Date Received*

❑   Notarized letter from the Amish Bishop    _____
❑   Copy of Applicant's Birth Certificate    _____

---

❑     Documentation requirement met. _____
                              Signature

---

*If documentation is sent in by applicant, confirm with employer/officer by telephone and document in case notes.

Revision: 1/08/03                                      For internal bureau use