**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION**

| | | |
|---|---|---|
| ELLEN MISHAGA, | ) | |
| | ) | |
| Plaintiff, | ) | No. 10-cv-03187-SEM |
| | ) | |
| v. | ) | |
| | ) | **PLAINTIFF'S RESPONSE IN OPPOSITION** |
| HIRAM GRAU, Director of the Illinois | ) | **TO DEFENDANTS' MOTION FOR** |
| Department of State Police; MICHAEL | ) | **SUMMARY JUDGMENT** |
| W. VORREYER, Master Sergeant, | ) | |
| Illinois Department of State Police, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................ 1

RESPONSE TO UNDISPUTED MATERIAL FACTS ............................................ 2

I.      UNDISPUTED MATERIAL FACTS ............................................... 2

II.     DISPUTED MATERIAL FACTS ................................................. 2

III.    DISPUTED IMMATERIAL FACTS .............................................. 2

IV.     UNDISPUTED IMMATERIAL FACTS ....................................... 3

V.      ADDITIONAL MATERIAL FACTS................................................ 4

ARGUMENT ................................................................................... 5

I.      MS. MISHAGA HAS STANDING TO CHALLENGE THE DENIAL
        OF HER FOID APPLICATION................................................ 5

        A.      The FOID Act Exception For "Licensed Or Registered"
                Nonresidents, 430 ILCS 65/2(B)(10), Does Not Apply To Ms.
                Mishaga................................................................ 6

        B.      Ms. Mishaga Has A Credible Fear Of Prosecution.......................... 8

        C.      Ms. Mishaga Had Access To Firearms In Her Friends' Illinois
                Home At The Time She Filed Suit ...................................... 10

II.     THE FOID ACT IS UNCONSTITUTIONAL AS APPLIED TO MS.
        MISHAGA UNDER ANY APPLICABLE STANDARD OF REVIEW...... 11

        A.      Given This Case's Obvious Similarity To *Heller*, It Is Not
                Necessary To Define A Standard Of Scrutiny ................................. 11

        B.      If This Court Finds That A Standard Of Scrutiny Is Necessary,
                The Appropriate Standard Is Strict Scrutiny..................................... 12

        C.      Defendants Have Not Carried Their Evidentiary Burden................. 14

III.    THERE IS NO SUBSTANTIAL REASON FOR THE FOID ACT TO
        DISCRIMINATE AGAINST NONRESIDENTS ........................................ 15

CONCLUSION................................................................................. 18

## INTRODUCTION

Defendants question Ms. Mishaga's standing on a number of bases.  Ultimately, none of Defendants' contentions is meritorious.  Defendants' standing arguments ultimately rest on a misstatement of the scope of the statutory exceptions contained in the Firearms Owner Identification Card ("FOID") Act.  Defendants conflate "licensed or registered" possession of a firearm with "lawful" possession of a firearm; however, the statutory exception applies only to the former.  This is the same misstatement upon which Defendants relied, unsuccessfully, in moving to dismiss Ms. Mishaga's claims for failure to state a claim.

Moreover, Defendants are simply wrong when they suggest that intermediate scrutiny applies to Ms. Mishaga's claims.  The Supreme Court has made clear that a prohibition on possession of firearms in the home is per se unconstitutional and no standard of scrutiny need be employed to judge such a prohibition.  To the extent a standard of scrutiny is appropriate here, the Seventh Circuit has held that the standard is strict scrutiny because the FOID Act implicates the core of the Second Amendment right—possession of a functional firearm in the home.

Finally, Defendants argue that the FOID Act does not burden any fundamental right.  But that argument is directly contrary to the Supreme Court's decision in *McDonald v. City of Chicago*.  The FOID Act denies Ms. Mishaga the fundamental right to possess a functional firearm in the home for self-defense for no reason other than she is a nonresident.  The FOID Act's discrimination against nonresidents therefore violates the right to travel, protected by the Privileges and Immunities Clause of Article IV and the Privileges or Immunities Clause of the Fourteenth Amendment.  Defendants fail to provide a substantial reason for discriminating against nonresidents like Ms. Mishaga.  For these reasons, as demonstrated below, Defendants' Motion for Summary Judgment should be denied.

1

## RESPONSE TO UNDISPUTED MATERIAL FACTS

**I.      UNDISPUTED MATERIAL FACTS.**

For purposes of Plaintiff's Response in Opposition to Defendants' Motion for Summary Judgment [docket nos. 19–20] only, Ms. Mishaga submits that the following material facts proposed by Defendants are undisputed.  The paragraph numbers below correspond to the paragraphs in Defendants' Statement of Undisputed Material Facts.

1.      Undisputed.

3.      Undisputed.

6.      Undisputed.

7.      Undisputed.

8.      Undisputed.

12.      Undisputed.

13.      Undisputed.

**II.      DISPUTED MATERIAL FACTS.**

For purposes of Plaintiff's Response in Opposition to Defendants' Motion for Summary Judgment only, Ms. Mishaga submits that the remainder of the material facts proposed by Defendants are immaterial.  To the extent this Court deems any of those facts material, they are either disputed or undisputed as set forth below.

**III.      DISPUTED IMMATERIAL FACTS.**

For purposes of Plaintiff's Opposition to Defendants' Motion for Summary Judgment only, Ms. Mishaga submits that the following fact proposed by Defendants is disputed and immaterial.  The paragraph number below corresponds to the paragraphs in Defendants' Statement of Undisputed Material Facts.

2

4.      Disputed.  Ms. Mishaga and her husband jointly own firearms and have owned firearms since at least July 27, 2010, when this action was filed.  Plaintiff's Motion for Summary Judgment, Undisputed Material Facts [docket no. 22] ("Pl.'s UMF") ¶ 13; Deposition of Ellen Mishaga at 29–30, 32.[1]  It is immaterial whether Ms. Mishaga owned a firearm on July 27, 2010, because when she is a guest in her friends' Illinois home she always has access to their firearms. Pl.'s UMF ¶¶ 14–16.

## IV.   UNDISPUTED IMMATERIAL FACTS.

For purposes of Plaintiff's Opposition to Defendants' Motion for Summary Judgment only, Ms. Mishaga submits that the following facts are undisputed and immaterial.  The paragraph numbers below correspond to the paragraphs in Defendants' Statement of Undisputed Material Facts.

2.      Undisputed.  Although this paragraph is a statement of law, it is immaterial that "nonresidents who are currently licensed or registered to possess a firearm in their resident state" are not required to obtain a FOID Card to possess firearms in Illinois because Ms. Mishaga is not licensed or registered to possess a firearm in her resident state.

5.      It is undisputed that Ms. Mishaga owns a .380 semi-automatic handgun.  It is immaterial that she owns this particular firearm.  It is also immaterial that Ohio law may authorize her to legally keep this gun in her home without registration or licensing.

9.      It is undisputed that Defendant Vorreyer stated this opinion.  It is immaterial because Defendants do not assert that the referenced databases make any relevant distinctions between Illinois residents and non-Illinois residents.

---

[1] Relevant portions of Ms. Mishaga's deposition are attached hereto as Exhibit 1.

3

10.     It is undisputed that Defendant Vorreyer stated this opinion.  It is immaterial because Defendants do not assert that the referenced databases make any relevant distinctions between Illinois residents and non-Illinois residents.

11.     It is undisputed that Defendant Vorreyer stated this opinion.  It is immaterial because Defendants do not assert that the referenced databases make any relevant distinctions between Illinois residents and non-Illinois residents.

14.     It is undisputed that Defendant Vorreyer stated this opinion.  It is immaterial because Defendants do not assert that the referenced databases make any relevant distinctions between Illinois residents and non-Illinois residents.

16.     It is undisputed that Defendant Vorreyer stated this opinion.  It is immaterial because Defendants do not assert that the referenced databases make any relevant distinctions between Illinois residents and non-Illinois residents.  (The 15th paragraph of Defendants' Statement of Undisputed Material Facts is numbered "16.")

## V.     ADDITIONAL MATERIAL FACTS.

1.     Defendants have issued FOIDs to nonresidents and do not track nonresident FOIDs.  Defendants' Memorandum of Law in Support of Motion for Summary Judgment [docket no. 20] ("Defs.' Memo."), Exh. F; Deposition of Master Sergeant Michael Vorreyer at 37–38, 55–57.[2]

---

[2] Relevant portions of Master Sergeant Vorreyer's deposition are attached hereto as Exhibit 2.

4

# ARGUMENT

## I.   MS. MISHAGA HAS STANDING TO CHALLENGE THE DENIAL OF HER FOID APPLICATION.

Defendants question Ms. Mishaga's standing on a number of bases.  Ultimately, none of Defendants' contentions is meritorious.  Defendants' standing arguments ultimately rest on a misstatement of the scope of the statutory exceptions contained in the FOID Act.  This is the same misstatement upon which Defendants relied, unsuccessfully, in moving to dismiss Ms. Mishaga's Complaint for failure to state a claim.  *Mishaga v. Monken*, 753 F. Supp. 2d 750, 753 (C.D. Ill. 2010).  Accordingly, this Court has already resolved the issues that Defendants raise in support of their Motion for Summary Judgment and Defendants should not be allowed to re-litigate issues already resolved.  *Minch v. City of Chicago*, 486 F.3d 294, 301 (7th Cir. 2007) ("a court ought not to re-visit an earlier ruling in a case absent a compelling reason, such as manifest error or a change in the law, that warrants re-examination."); *accord Sharp Electronics Corp. v. Metropolitan Life Ins. Co.*, 578 F.3d 505, 510 (7th Cir. 2009).

Nevertheless, Ms. Mishaga has standing.  As the Supreme Court has explained, a plaintiff is presumed to have constitutional standing to seek injunctive relief when she is the direct object of regulatory action challenged as unlawful:

> When the suit is one challenging the legality of government action or inaction, the nature and extent of facts that must be averred (at the summary judgment stage) or proved (at the trial stage) in order to establish standing depends considerably upon whether the plaintiff is himself an object of the action (or forgone action) at issue. If he is, there is ordinarily little question that the action or inaction has caused him injury, and that a judgment preventing or requiring the action will redress it.

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561–62 (1992); *see also Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 733–34 (D.C. Cir. 2003) (a party's standing to seek judicial review of administrative action is typically "self-evident" when the party is the object of the action); *cf.*

Su*mmers v. Earth Island Inst.*, 555 U.S. 488, ___, 129 S.Ct. 1142, 1149 (2009) (where a challenged regulation neither requires nor forbids any action on the part of the plaintiffs, "standing is not precluded, but is ordinarily 'substantially more difficult' to establish") (quoting *Lujan*, 504 U.S. at 562).  Ms. Mishaga has standing because Defendants denied her FOID application and the FOID Act forbids constitutionally protected activity on her part.

This case is therefore readily distinguishable from those that Defendants rely on, because Ms. Mishaga has already been injured by Defendants' denial of her FOID application. Defendants cite *Montana Shooting Sports Ass'n v. Holder*, 2010 WL 3926029, *11 (D. Mont. 2010), but in that case standing was lacking because the plaintiffs had not yet engaged in the conduct they alleged was prohibited by the challenged statute.  Likewise, in *City of Los Angeles v. Lyons*, standing depended upon the plaintiff being subjected to a chokehold in the future, but it was purely speculative whether that would happen.  461 U.S. 95, 108 (1983) ("We cannot agree that the "odds," that Lyons would not only again be stopped for a traffic violation but would also be subjected to a chokehold without any provocation whatsoever are sufficient to make out a federal case for equitable relief.") (citation omitted).

Here, Ms. Mishaga has already suffered an injury and she faces the threat of prosecution if she engages in constitutionally protected conduct.  As demonstrated below, Ms. Mishaga has standing to challenge the denial of her FOID application.

**A.    The FOID Act Exception For "Licensed Or Registered" Nonresidents, 430 ILCS 65/2(B)(10), Does Not Apply To Ms. Mishaga.**

Defendants argue that Ms. Mishaga has not suffered an injury-in-fact and that her claims are not ripe because 430 ILCS 65/2(b)(10) purportedly makes the FOID Act inapplicable to Ms. Mishaga.  Defs.' Memo. at 7, 9.  Defendants' argument that the FOID Act does not apply to Ms.

Mishaga depends on their misstatement of the scope of the statutory exception contained in 430

ILCS 65/2(b)(10).

It is undisputed that the FOID Act prohibits nonresidents from possessing firearms in

Illinois, unless one of the statutory exceptions applies.  Defs.' Memo. at 7; Pl.'s UMF ¶ 11.

Subsection (b)(10) makes the FOID Act inapplicable to nonresidents "licensed or registered to

possess a firearm in their resident state."  430 ILCS 65/2(b)(10).  Although Ms. Mishaga

lawfully owns firearms in her resident State of Ohio, Pl.'s UMF ¶ 13, Ms. Mishaga is neither

"licensed" nor "registered" to possess a firearm, because in Ohio no scheme exists to license or

register possession of firearms in the home.  In fact, Ohio law forbids such licensing or

registration.  *See* Ohio Rev. Code § 9.68(A) ("[A] person, without further license, permission,

restriction, delay, or process, may own, possess, purchase, sell, transfer, transport, store, or keep

any firearm, part of a firearm, its components, and its ammunition."); *Cleveland v. State*, 942

N.E.2d 370, 374 (Ohio 2010); *Ohioans for Concealed Carry, Inc. v. Clyde*, 896 N.E.2d 967, 974

(Ohio 2008).[3]

Defendants attempt to rewrite 430 ILCS 65/2(b)(10) by misstating the scope of the

statutory exception.  Subsection (b)(10) makes the FOID Act inapplicable to nonresidents

"licensed or registered to possess a firearm in their resident state."  430 ILCS 65/2(b)(10).

---

[3] Although Ohio issues licenses to carry concealed firearms *outside* the home, Ohio Rev. Code §
2923.12(C)(2), there is no such license available for possession of firearms *within* the home.  *See*
Ohio Rev. Code § 2923.12(C)(1)(d).  Ms. Mishaga has never been issued a concealed carry
permit.  Pl.'s UMF ¶ 12.  Defendants cite *People v. Holmes*, 948 N.E.2d 617, 624–25 (Ill. 2011),
for the proposition that "a nonresident need not physically have his out-of-state license or permit
with him to legally bring his firearm with him to Illinois."  Defs.' Memo. at 7.  This decision is
irrelevant because Ms. Mishaga has never been issued a license or permit by her resident State.
Pl.'s UMF ¶ 12.  Unlike Ms. Mishaga, the defendant in *Holmes* had been issued a license by the
State of Indiana; he simply did not have the license in his possession when he was arrested for
possessing a firearm in Illinois without a FOID.  *Holmes*, 948 N.E.2d at 624.  Indeed, if *Holmes*
has any bearing on this litigation it is to illustrate the fact that nonresidents have been prosecuted
in Illinois for possessing firearms without a FOID.  *Id.*

7

Defendants conflate "licensed or registered" possession of a firearm with "lawful" possession of a firearm; however, the statutory exception applies only to the former. *See* Defs.' Memo. at 7–8. Under Defendants' revision of the statute, Ms. Mishaga arguably could exercise her constitutional right to possess a firearm in Illinois. Unfortunately, neither Defendants nor this Court have the power to rewrite Illinois law. *Virginia v. American Booksellers Ass'n*, 484 U.S. 383, 397 (1988) ("we will not rewrite a state law to conform it to constitutional requirements."); *United States v. Wilburn*, 473 F.3d 742, 746 (7th Cir. 2007) ("[I]t is not our role to rewrite the law.").

Accordingly, 430 ILCS 65/2(b)(10) does not apply to Ms. Mishaga and cannot cure Defendants' unconstitutional deprivation of Ms. Mishaga's right to possess a functional firearm for self-defense within an Illinois home and her right to travel. Therefore, Ms. Mishaga suffered a judicially cognizable injury when her application for a FOID was denied. Defendants' argument that Ms. Mishaga lacks standing is therefore without merit.

**B.     Ms. Mishaga Has A Credible Fear Of Prosecution.**

Defendants also argue that Ms. Mishaga does not have a credible fear of prosecution because a separate statutory provision outside the FOID Act, 720 ILCS 5/24-1(a)(4), contains an exception to the offense of "unlawful use of weapons" for firearms possessed "'on the land or in the legal dwelling of another person as an invitee with that person's permission.'" Defs.' Memo. at 8 (quoting 720 ILCS 5/24-1(a)(4)). What Defendants fail to acknowledge, however, is that the FOID Act defines a separate offense of possessing firearms without a FOID. 430 ILCS 65/2(a)(1) ("No person may acquire or possess any firearm . . . within this State without having in his or her possession a [FOID] . . . ."); 430 ILCS 65/14(b) ("A violation of paragraph (1) of subsection (a) of Section 2 is a Class 3 felony when: . . . the person does not possess a currently

valid [FOID], and the person is not otherwise eligible under this Act.”); Pl.’s UMF ¶ 11.  Thus,

while Ms. Mishaga could arguably possess firearms in her friends’ Illinois home without fear of

prosecution under 720 ILCS 5/24-1(a)(4), she would still be subject to prosecution under the

FOID Act.  Indeed, nonresidents have been prosecuted in Illinois for possessing firearms without

a FOID.  *Holmes*, 948 N.E.2d at 624.  Ms. Mishaga therefore has a credible fear of prosecution.

*See Babbitt v. United Farm Workers Nat’l Union*, 442 U.S. 289, 298 (1979) (a plaintiff “should

not be required to await and undergo a criminal prosecution as the sole means of seeking relief.”)

(quoting *Doe v. Bolton*, 410 U.S. 179, 188 (1973)).

Defendants could argue that the exceptions contained in 720 ILCS 5/24-1(a)(4) should

apply to the offense defined by 430 ILCS 65/2(a)(1).  A similar invitation to read additional

exceptions into the District of Columbia’s functional firearms ban was rejected by the Supreme

Court in *District of Columbia v. Heller*,

> The District argues that we should interpret this element of the statute to contain
> an exception for self-defense.  But we think that is precluded by the unequivocal
> text, and by the presence of certain other enumerated exceptions . . . .

554 U.S. 570, 630 (2008) (citations omitted).

Defendants’ argument would also fail logically.  If the FOID Act had no force or effect

“on [a person’s] land or in his own abode, legal dwelling, or fixed place of business,” 720 ILCS

5/24-1(a)(4), an Illinois resident would be free to possess firearms in his home or business

without obtaining or maintaining a valid FOID.  Such a result would be beneficial for Illinois

gun owners, but it hardly seems consistent with the intent of the FOID Act.  *See* 430 ILCS

65/2(a)(1); *see Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 575 (1982) (noting that

statutes should be interpreted to effect the legislative purpose); *United States v. American*

*Trucking Ass'ns*, 310 U.S. 534, 543 (1940) (same).  Defendants' argument that Ms. Mishaga

lacks a credible fear of prosecution is therefore without merit.

### C.      Ms. Mishaga Had Access To Firearms In Her Friends' Illinois Home At The Time She Filed Suit.

Defendants misstate Ms. Mishaga's claim for relief, and thus posit immaterial and

inaccurate facts in support of their motion.  Defendants argue that Ms. Mishaga has not alleged a

"concrete plan" to possess firearms in Illinois because "she did not even own a firearm at the

time she filed this Complaint."  Defs.' Memo. at 9.  Defendants' argument is flawed for at least

two reasons.

First, Ms. Mishaga's injury does not depend upon her bringing firearms into Illinois.  She

always has access to her friends' firearms when she is an overnight guest in their home.  Pl.'s

UMF ¶¶ 14–16.  The relevant inquiry is simply whether Ms. Mishaga has access to firearms in

her friends' Illinois home, and is unable to lawfully possess those firearms for self-defense due to

Defendants' actions.  Ms. Mishaga's friends want her to be able to exercise her Second

Amendment rights when she is a guest in their Illinois home, and to that end they have given her

permission to access their firearms for purposes of self-defense.  *Id*.  The FOID Act prohibits

Ms. Mishaga from lawfully possessing those firearms.[4]

Second, Defendants' assertion that Ms. Mishaga did not own firearms in Ohio at the time

her complaint was filed is incorrect.  Defs.' Memo. at 9.  Ms. Mishaga and her husband jointly

own firearms and have owned firearms since at least July 27, 2010, when this action was

---

[4] If Ms. Mishaga were to bring a firearm from her home in Ohio to her friends' home in Illinois, she would simply have an *additional* means of exercising her Second Amendment rights that would be impaired by the FOID Act.  Accordingly, even if Defendants were correct in asserting that Ms. Mishaga did not possess firearms in Ohio, that fact would have no bearing on her claim that the FOID Act prohibits her from possessing firearms in Illinois.

originally filed.  Pl.'s UMF ¶ 13.  Defendants dwell on the fact that Ms. Mishaga received a

handgun as a gift from her husband in May 2011.  Defs.' Memo. at 9.  But Defendants willfully

ignore the fact that this handgun is one of several firearms the Mishagas own.  Pl.'s UMF ¶ 13.

In any event, as demonstrated above, it is immaterial to Ms. Mishaga's claims whether or not she

owns firearms in Ohio.  Ms. Mishaga has amply demonstrated that she has access to firearms in

her friends' Illinois home, but that the FOID Act prohibits her from lawfully possessing those

firearms.  Thus, Defendants' argument that Ms. Mishaga lacks standing is devoid of any merit.

**II.    THE FOID ACT IS UNCONSTITUTIONAL AS APPLIED TO MS. MISHAGA UNDER ANY APPLICABLE STANDARD OF REVIEW.**

**A.    Given This Case's Obvious Similarity To *Heller*, It Is Not Necessary To Define A Standard Of Scrutiny.**

It is undisputed that the FOID Act prohibits nonresidents from possessing firearms in

Illinois, unless one of the statutory exceptions applies.  Defs.' Memo. at 7; Pl.'s UMF ¶ 11.

Notwithstanding Defendants' conveniently creative reading of the FOID Act's exception for

nonresidents "licensed or registered to possess a firearm in their resident state," by its plain terms

the FOID Act prohibits Ms. Mishaga from possessing a functional firearm in Illinois.  430 ILCS

65/2(a)(1) ("No person may acquire or possess any firearm . . . within this State without having

in his or her possession a [FOID] . . . ."); 430 ILCS 65/14(b) ("A violation of paragraph (1) of

subsection (a) of Section 2 is a Class 3 felony . . . ."); Pl.'s UMF ¶ 11.  Therefore, Illinois law

prohibits Ms. Mishaga from lawfully possessing a functional firearm for self-defense when she is

a guest in her friends' Illinois home.

This prohibition violates the central holding of *Heller*:  "whatever else [the Second

Amendment] leaves to future evaluation, it surely elevates above all other interests the right of

law-abiding, responsible citizens to use arms in defense of hearth and home."  *Heller*, 554 U.S.

at 635.  Like the law at issue in *Heller*, the FOID Act makes it unlawful for Ms. Mishaga to possess a functional firearm in "the home, where the need for defense of self, family, and property is most acute."  *Id*. at 628.

The Supreme Court concluded that it was not necessary to define a standard of scrutiny for analyzing such a prohibition, because:

> Under any of the standards of scrutiny that we have applied to enumerated constitutional rights, banning from the home the most preferred firearm in the nation to keep and use for protection of one's home and family would fail constitutional muster.

*Id*. at 628–29 (quotation omitted).  Instead of defining a standard of review, the Court concluded that a law prohibiting the possession of firearms in the home for self-defense is categorically unconstitutional.  *See id.*

Accordingly, contrary to the Supreme Court's holding in *Heller*, Defendants currently maintain and actively enforce a set of laws, customs, practices, and policies under color of state law that prohibit Ms. Mishaga from possessing a functional firearm in the home, in violation of the Second and Fourteenth Amendments.  As in *Heller*, no standard of scrutiny need be employed to determine that the FOID Act is unconstitutional as applied to Ms. Mishaga.

**B.      If This Court Finds That A Standard Of Scrutiny Is Necessary, The Appropriate Standard Is Strict Scrutiny.**

Defendants cite *United States v. Skoien*, 614 F.3d 638 (7th Cir. 2010)—a case dealing with domestic violence misdemeanants' Second Amendment rights—for the proposition that intermediate scrutiny should apply to Ms. Mishaga's claims because the FOID Act "merely regulates firearm possession as opposed to restricting or banning it . . . ."  Defs.' Memo. at 10. As demonstrated above, the FOID Act does much more than "merely regulate" Ms. Mishaga's Second Amendment rights; it prohibits her from possessing a functional firearm in the home.

12

Accordingly, Defendants' reliance on *Skoien* is misplaced and their proposed level of scrutiny is contrary to the relevant precedent of the Seventh Circuit.

To the extent that a standard of scrutiny is appropriate here, the standard is strict scrutiny. *Ezell v. City of Chicago*, 651 F.3d 684, 708 (7th Cir. 2011). In *Ezell*, the Seventh Circuit reversed the district court's denial of a preliminary injunction enjoining enforcement of the City of Chicago's firing range ban. *Id*. at 690. In so doing, the Seventh Circuit ruled that "a severe burden on the core Second Amendment right of armed self-defense will require an extremely strong public-interest justification and a close fit between the government's means and its end." *Id*. at 708. In support of that ruling, the Seventh Circuit reasoned:

> Here, in contrast [to *Skoien*], the plaintiffs *are* the "law-abiding, responsible citizens" whose Second Amendment rights are entitled to full solicitude under *Heller*, and their claim comes much closer to implicating the core of the Second Amendment right. . . . All this suggests that a more rigorous showing than that applied in *Skoien* should be required, if not quite "strict scrutiny."

*Id*. at 708 (emphasis in original). The court concluded that the City had,

> not come close to satisfying this standard. In the district court, the City presented no data or expert opinion to support the range ban, so we have no way to evaluate the seriousness of its claimed public-safety concerns. Indeed, on this record those concerns are entirely speculative and, in any event, can be addressed through sensible zoning and other appropriately tailored regulations. . . . In the First Amendment context, the government must supply actual, reliable evidence to justify restricting protected expression based on secondary public-safety effects. By analogy here, the City produced no empirical evidence whatsoever and rested its entire defense of the range ban on speculation about accidents and theft.

*Id*. at 709 (citations omitted). Because application of the FOID Act to Ms. Mishaga implicates "the core of the Second Amendment right"—to possess a functional firearm in the home—a per se invalidity test like that applied in *Heller* is the appropriate standard of review; however to the extent that a standard of scrutiny is required here, the Seventh Circuit's decision in *Ezell* requires that the standard be strict scrutiny.

13

### C.     Defendants Have Not Carried Their Evidentiary Burden.

Like the City of Chicago in *Ezell*, here Defendants have "not come close to satisfying" their burden.  Under strict scrutiny, Defendants must show that the FOID Act's ban on nonresident possession of firearms is "narrowly tailored to serve a compelling governmental interest." *Abrams v. Johnson*, 521 U.S. 74, 91 (1997).[5]  Under any level of scrutiny, a "complete ban [on constitutionally protected activity] can be narrowly tailored, but only if each activity within the proscription's scope is an appropriately targeted evil." *Frisby v. Schultz*, 487 U.S. 474, 485–86 (1988) (citing *City Council of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 808–810 (1984)).  Therefore, Defendants must prove that prohibiting nonresidents from possessing firearms in the home is the least restrictive means available to achieve the public safety goals set out in the FOID Act.  430 ILCS 65/1 ("to provide a system of identifying persons who are not qualified to acquire or possess firearms").

Under any level of scrutiny, Defendants have not offered evidence that supports their draconian ban.  Defendants have done nothing to show how nonresident possession of firearms is "an appropriately targeted evil."  Defendants offer no evidence to prove that nonresidents are more likely to misuse firearms, or that denying FOIDs to nonresidents will address misuse of firearms.  Thus Defendants have failed to prove that the FOID Act meets either intermediate or strict scrutiny.

Even assuming that Defendants could prove that the FOID Act is the least restrictive means "to provide a system of identifying persons who are not qualified to acquire or possess firearms," Defendants cannot prove that denying FOIDs to nonresidents is narrowly tailored to

---

[5] Under intermediate scrutiny, Defendants must meet a similar burden, but the means chosen "need not be the least restrictive or least intrusive means" of accomplishing the government's interest. *Ward v. Rock Against Racism*, 491 U.S. 781, 798 (1989).

achieve that goal.  A panoply of measures that are less restrictive than a total ban is available, including issuing FOIDs to nonresidents, which Defendants already do with respect to some nonresidents, but refuse to do for Ms. Mishaga.  Defs.' Memo., Exh. F.  Accordingly, Defendants have failed to prove that denying FOIDs to nonresidents is narrowly tailored to achieve the goals of the FOID Act.

## III.   THERE IS NO SUBSTANTIAL REASON FOR THE FOID ACT TO DISCRIMINATE AGAINST NONRESIDENTS.

Defendants argue that "summary judgment is proper here because the FOID Act's distinction between residents and nonresidents do [sic] not burden any fundamental right." Defs.' Memo. at 15.  This statement is directly contrary to the Supreme Court's ruling in *McDonald v. City of Chicago*:  "the right to keep and bear arms is fundamental to *our* scheme of ordered liberty . . . ."  130 S.Ct. 3020, 3036 (2010) (emphasis in original).

The FOID Act denies Ms. Mishaga the fundamental right to possess a functional firearm in the home for self-defense, for no other reason than the fact that she is a nonresident.  The right of a nonresident to be treated as a "welcome visitor rather than an unfriendly alien" is "expressly protected by the text of the Constitution."  *Saenz v. Roe*, 526 U.S. 489, 501 (1999).  The FOID Act's discrimination against nonresidents therefore violates the right to travel, protected by the Privileges and Immunities Clause of Article IV and the Privileges or Immunities Clause of the Fourteenth Amendment, which prohibit "'discrimination against citizens of other States where there is no substantial reason for the discrimination beyond the mere fact that they are citizens of other States.'"  *Id.* at 502–04 (quoting *Toomer v. Witsell*, 334 U.S. 385, 396 (1948)).

Defendants fail to provide a "substantial reason" for discriminating against nonresidents. Defendants claim that a "rational reason" for denying FOIDs to nonresidents is to ensure the Defendants have "adequate and reliable information upon which to determine applicant

eligibility." Defs.' Memo. at 11, 15. But Defendants' own evidence contradicts this rationale for denying nonresidents like Ms. Mishaga a FOID.

First, Defendants confuse the distinction between incidents occurring in Illinois and incidents involving residents. Defendant Vorreyer asserts that he has access to more information about crimes and mental health issues occurring in Illinois. Affidavit of Master Sergeant Michael Vorreyer, Defs.' Memo., Exh. E ("Vorreyer Aff.") ¶ 17 ("state databases such as LEADS which contains arrest information for all arrests occurring in Illinois, and DHS which contains information regarding admission to mental health facilities in Illinois"). Defendants suggest that this proves "there is a significant disparity between the amount and credibility of information available to ISP regarding Illinois residents as compared to nonresidents." Defs' Memo. at 11. Defendants offer no further explanation or make any attempt to quantify this disparity. *Id.* (citing Vorreyer Dep. 17–22, 54–55; Vorreyer Aff. ¶ 17); *cf. Ezell*, 651 F.3d at 709. Yet, Defendant Vorreyer's self-serving affidavit does not support the claim for which it is offered. At best, the Vorreyer affidavit supports the claim that Defendants have more information about crimes and mental health issues occurring in Illinois, *involving both residents and nonresidents*.

Defendants seem to be making the outrageous argument that Illinois residents never commit crimes or seek mental health treatment outside of Illinois, and therefore Illinois databases contain a complete history of residents' "rap sheets." Defs.' Memo. at 12. Defendants also presume the converse, that nonresidents do not commit crimes or seek mental health treatment in Illinois. On the contrary, Defendants have the same "wealth of information" about residents and nonresidents who commit crimes or seek mental health treatment in Illinois. *Id.* Moreover, the FOID Act specifically contemplates an interstate check of medical records as part

16

of the FOID application process and the National Instant Criminal Background Check System

compiles criminal records from every State in a central database.  430 ILCS 65/4(a)(3); Brady

Handgun Violence Prevention Act, Pub. L. No. 103-159, § 103, 107 Stat. 1536, 1541–43 (1993).

Ms. Mishaga is no different from a law-abiding Illinois resident who works in a

neighboring State (or the District of Columbia).  *See Maksym v. Board of Election Com'rs of*

*City of Chicago*, 950 N.E.2d 1051, 1066 (Ill. 2011) (Candidate for city mayor was a resident of

Illinois even though candidate had spent the previous year in Washington, D.C., acting as Chief

of Staff for the President of the United States).  Both Ms. Mishaga and such an Illinois resident

would spend less time in the State than a fulltime resident, but Defendants would still have a

"wealth of information" about crimes or mental health treatment occurring in Illinois for either

applicant.  Thus, Defendants fail to provide a "substantial reason" for discriminating against

nonresidents such as Ms. Mishaga.

Defendants' argument that issuing FOIDs to nonresidents would harm public safety is

further undermined by the fact that "Illinois defers to nonresidents' home states to determine

their eligibility to possess firearms."  Defs.' Memo. at 11.  The FOID Act defines no standards

for the out-of-state licenses that substitute for a FOID pursuant to 430 ILCS 65/2(b)(10), nor do

Defendants articulate any standards.  Defs.' Memo. at 15.  Literally any license or registration

issued by a State, no matter the requirements for obtaining it, suffices to exempt nonresidents

from the FOID Act.  Indeed, under Defendants' misstatement of 430 ILCS 65/2(b)(10), a

nonresident need not even obtain an out-of-state license in order to possess firearms in Illinois.

Defs.' Memo. at 7–8.  Thus, at the same time that Defendants argue that they could not possibly

assure public safety if they issued FOIDs to nonresidents, Defendants also argue that a firearm

purchased at a gun show in Ohio, with no background check, can be transported to and possessed

in Illinois with impunity, but only by a nonresident.  Defendants' position is plainly arbitrary and they lack "substantial reason" for discriminating against nonresidents.

Moreover, Defendants acknowledge that they have issued FOIDs to nonresidents, severely undercutting their argument that denying FOIDs to nonresidents is essential to achieving the FOID Act's goals.  Plaintiff's Additional Material Fact ("Pl.'s AMF") ¶ 1. Defendants' argument is a non sequitur.  They argue that the FOID Act would be rendered meaningless if nonresidents were issued FOIDs, but they have a protocol in place to issue FOIDs to select nonresidents.[6]  Defs.' Memo., Exh. F.  Defendants make no attempt to distinguish Ms. Mishaga from the numerous other nonresidents to whom they have seen fit to issue FOIDs.  Nor do Defendants seem to have any mechanism for tracking the nonresident FOIDs they have issued.  Pl.'s AMF ¶ 1.  Thus, Defendants fail to provide a "substantial reason" for discriminating against nonresidents.  *Saenz*, 526 U.S. at 502.

## CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment should be denied. The FOID Act, 430 ILCS 65/1 *et seq*, is unconstitutional as applied to Ms. Mishaga.  It deprives her of the right to keep and bear arms for self-defense guaranteed by the Second and Fourteenth Amendments, and the right to travel guaranteed by Article IV and the Fourteenth Amendment. Therefore, this Court should grant summary judgment in favor of Ms. Mishaga as to both of her claims for relief and permanently enjoin Defendants from enforcing the FOID Act's prohibition against nonresidents possessing functional firearms for self-defense in Illinois homes.

---

[6] Paradoxically, Defendants also argue that nonresidents do not need FOIDs, but this begs the question why Defendants have issued FOIDs to certain nonresidents.  Defs.' Memo. at 7–8.

DATED this 27th day of October 2011.

Respectfully Submitted:

/s/ James M. Manley
James M. Manley, Esq.
Mountain States Legal Foundation
2596 South Lewis Way
Lakewood, Colorado 80227
(303) 292-2021
(303) 292-1980 (facsimile)
jmanley@mountainstateslegal.com

Attorney for Plaintiff

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 27th day of October 2011, I filed the foregoing document using the CM/ECF system and caused counsel of record to be served electronically through the CM/ECF system:

Bianca Chapman
Assistant Attorney General
Office of Illinois Attorney General Lisa Madigan
500 S. Second Street
Springfield, Illinois 62706
bchapman@atg.state.il.us

/s/ James M. Manley
James M. Manley