**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION**

|  |  |  |
|---|---|---|
| ELLEN MISHAGA, | ) | |
| | ) | |
| Plaintiff, | ) | No. 10-cv-03187-SEM |
| | ) | |
| v. | ) | |
| | ) | |
| HIRAM GRAU, Director of the Illinois | ) | |
| Department of State Police; MICHAEL W. | ) | |
| VORREYER, Master Sergeant, Illinois | ) | |
| Department of State Police, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
(ORAL ARGUMENT REQUESTED)**

COMES NOW, Plaintiff, Ellen Mishaga, by and through her undersigned counsel, and moves pursuant to Fed. R. Civ. P. 56, for summary judgment because Plaintiff is entitled to judgment as a matter of law with respect to both of her claims for relief.  Support for this Motion is contained in the pleadings filed in this case and the attached Memorandum in Support of Plaintiff's Motion for Summary Judgment.

WHEREFORE, Plaintiff respectfully requests that summary judgment be entered in her favor with respect to both of her claims for relief.

DATED this 31st day of October 2014.

Respectfully submitted,

MOUNTAIN STATES LEGAL FOUNDATION

/s/ Steven J. Lechner
Steven J. Lechner, Esq.
2596 South Lewis Way

Lakewood, Colorado 80227
(303) 292-2021
(303) 292-1980 (facsimile)
lechner@mountainstateslegal.com

Attorney for Plaintiff

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF ILLINOIS**
**SPRINGFIELD DIVISION**

|  |  |  |
|---|---|---|
| ELLEN MISHAGA, | ) | |
| | ) | |
| Plaintiff, | ) | No. 10-cv-03187-SEM |
| | ) | |
| v. | ) | |
| | ) | |
| HIRAM GRAU, Director of the Illinois | ) | |
| Department of State Police; MICHAEL W. | ) | |
| VORREYER, Master Sergeant, Illinois | ) | |
| Department of State Police, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**MEMORANDUM IN SUPPORT OF**
**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ........................................................................................ iv

INTRODUCTION ................................................................................................ 1

PLAINTIFF'S STATEMENT OF UNDISPUTED MATERIAL FACTS ............... 2

ARGUMENT ....................................................................................................... 4

I.      STANDARD OF REVIEW ....................................................................... 4

II.     MS. MISHAGA WOULD FACE CRIMINAL PROSECUTION
        UNDER THE FOID ACT FOR POSSESSING A FIREARM FOR
        SELF-DEFENSE WHILE STAYING IN HER FRIENDS' ILLINOIS
        HOME.................................................................................................... 5

        A.      The FOID Act Prohibits Ms. Mishaga From Lawfully
                Possessing A Firearm For Self-Defense While Staying In Her
                Friends' Illinois Home ........................................................ 5

        B.      As A Matter Of Statutory Construction, Exception 10 Does Not
                Apply To Ms. Mishaga ....................................................... 7

III.    MS. MISHAGA IS ENTITLED TO SUMMARY JUDGMENT ON
        HER FIRST CLAIM FOR RELIEF BECAUSE THE FOID ACT
        DENIES HER THE RIGHT TO POSSESS A FIREARM FOR SELF-
        DEFENSE WHILE STAYING IN HER FRIENDS' ILLINOIS HOME...... 13

IV.     MS. MISHAGA IS ENTITLED TO SUMMARY JUDGMENT ON
        HER SECOND CLAIM FOR RELIEF BECAUSE THE FOID ACT
        DISCRIMINATES AGAINST HER SOLELY BECAUSE SHE IS A
        NONRESIDENT.................................................................................... 18

CONCLUSION .................................................................................................... 22

CERTIFICATE OF COMPLIANCE ..................................................................... 23

CERTIFICATE OF SERVICE ............................................................................. 24

EXHIBITS

        Exhibit 1 – Deposition of Ellen Mishaga (Relevant Excerpts)

        Exhibit 2 – Declaration of James Telzrow

Exhibit 3 – Exhibit 1 to the Deposition of Ellen Mishaga

Exhibit 4 – Deposition of Master Sergeant Vorreyer (Relevant Excerpts)

Exhibit 5 – Exhibit 4 to the Deposition of Master Sergeant Vorreyer

Exhibit 6 – Illinois State Police, Concealed Carry Frequently Asked Questions (Spreadsheet)

## TABLE OF AUTHORITIES

**Page**

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)..................................................................... 4

*Arnold v. Cleveland*,
616 N.E.2d 163 (Ohio 1993) ...................................................... 9

*Babbitt v. United Farm Workers Nat. Union*,
442 U.S. 289 (1979)..................................................................... 10

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)..................................................................... 4

*City Council of Los Angeles v. Taxpayers for Vincent*,
466 U.S. 789 (1984)..................................................................... 17

*Cleveland v. State*,
942 N.E.2d 370 (Ohio 2010) ...................................................... 9

*Coram v. State*,
996 N.E.2d 1057 (Ill. 2013) ........................................................ 16

*District of Columbia v. Heller*,
554 U.S. 570 (2008)..................................................... 6, 13, 15, 16

*Doe v. Bolton*,
410 U.S. 179 (1973)..................................................................... 10

*Edelman v. Jordan*,
415 U.S. 651 (1974)..................................................................... 20

*Ezell v. City of Chicago*,
651 F.3d 684 (7th Cir. 2011) ..................................................... 15, 16

*Frisby v. Schultz*,
487 U.S. 474 (1988)..................................................................... 17

*Gowder v. City of Chicago*,
923 F. Supp. 2d 1110 (N.D. Ill. 2012) ...................................... 16

*Heller v. District of Columbia*,
670 F.3d 1244 (D.C. Cir. 2011)................................................. 15

*Hicklin v. Orbeck,*
    437 U.S. 518 (1978)......................................................... 20

*Horsley v. Trame,*
    13-CV-321-NJR-SCW, 2014 WL 3720933 (S.D. Ill. 2014) ............................ 6

*Katz v. United States,*
    389 U.S. 347 (1967)......................................................... 14

*Keri v. Board of Trustees of Purdue University,*
    458 F.3d 620 (7th Cir. 2006) ............................................... 4

*King v. First Capital Financial Services Corp.,*
    828 N.E.2d 1155 (Ill. 2005) ............................................... 7

*In re Marriage of Beyer,*
    753 N.E.2d 1032 (Ill. App. 2001) ......................................... 7

*McDonald v. City of Chicago, Ill.,*
    561 U.S. 742 (2010)........................................... 13, 15, 16, 19

*McKinney v. Cadleway Properties, Inc.,*
    548 F.3d 496 (7th Cir. 2008) ............................................... 5

*Minnesota v. Olson,*
    495 U.S. 91 (1990)................................................. 13, 14, 15

*Mishaga v. Monken,*
    753 F. Supp. 2d 750 (C.D. Ill. 2010) ................................... 5–6

*Moore v. Madigan,*
    702 F.3d 933 (7th Cir. 2012) ..................................... 13, 14, 15

*Ohioans for Concealed Carry, Inc. v. Clyde,*
    896 N.E.2d 967 (Ohio 2008) ............................................... 10

*People v. Holmes,*
    948 N.E.2d 617 (Ill. 2011).............................................. 10, 11

*Peruta v. County of San Diego,*
    742 F.3d 1144 (9th Cir. 2014) ............................................. 15

*Roe v. Wade,*
    410 U.S. 113 (1973).......................................................... 16

*Saenz v. Roe,*
    526 U.S. 489 (1999).................................................................... 18, 19

*Shapiro v. Thompson,*
    394 U.S. 618 (1969).................................................................... 20

*Supreme Court of New Hampshire v. Piper,*
    470 U.S. 274 (1985).................................................................... 20

*Toomer v. Witsell,*
    334 U.S. 385 (1948).................................................................... 10, 18, 20

*United States v. Jackson,*
    390 U.S. 570 (1968).................................................................... 20

*United States v. Jeffers,*
    342 U.S. 48 (1951)...................................................................... 13

*United States v. Guest,*
    383 U.S. 745 (1966).................................................................... 18

*United States v. Marzzarella,*
    614 F.3d 85 (3d Cir. 2010)......................................................... 17

*United States v. Playboy Entm't Grp., Inc.,*
    529 U.S. 803 (2000).................................................................... 16

*United States v. Williams,*
    616 F.3d 685 (7th Cir. 2010) ..................................................... 17

*Virginia v. Am. Booksellers Ass'n, Inc.,*
    484 U.S. 383 (1988).................................................................... 7

**Constitutional Provisions**

U.S. Const., Amend. II................................................................... *passim*

U.S. Const., Amend. IV .................................................................. *passim*

U.S. Const., Amend. XIV, § 1 ......................................................... 19

U.S. Const., Art. IV........................................................................ 1, 5, 19, 21

U.S. Const., Art. IV, § 2................................................................. 19

Ohio Const. Art. I, § 4................................................................... 9

## Statutes

42 U.S.C. § 1983 ................................................................................................ 21

430 ILCS 65/0.01 *et seq* .................................................................................. 6

430 ILCS 65/1 ................................................................................................ 12, 16, 21

430 ILCS 65/1.1 .............................................................................................. 5

430 ILCS § 65/2 .............................................................................................. 6, 19

430 ILCS 65/2(a) ............................................................................................ 5, 10, 12

430 ILCS 65/2(a)(1) ....................................................................................... 5

430 ILCS 65/2(a)(2) ....................................................................................... 5, 6

430 ILCS 65/2(b)(9) ....................................................................................... 7

430 ILCS 65/2(b)(10) ..................................................................................... 7, 8, 11

430 ILCS 65/2(b)(1)–(16) .............................................................................. 7

430 ILCS 65/2(c) ............................................................................................ 7

430 ILCS 65/2(d) ............................................................................................ 7

430 ILCS 65/4 ................................................................................................ 3, 19, 21

430 ILCS 65/4(a)(2) ....................................................................................... 17

430 ILCS 65/4(a)(2)(i)–(xvii) ......................................................................... 6

430 ILCS 65/4(a)(2)(xiv) ................................................................................ 6

430 ILCS 65/4(a-5) ......................................................................................... 6

430 ILCS 65/4(a-10) ....................................................................................... 7

430 ILCS 65/8 ................................................................................................ 21

430 ILCS 65/8(q) ............................................................................................ 7

430 ILCS 65/14 .............................................................................................. 19

430 ILCS 65/14(c)(3)...................................................................... 6, 10, 12

430 ILCS 66/1, *et seq*.................................................................... 9

720 ILCS 5/24-1............................................................................... 10

720 ILCS 5/24-1(a)(4)...................................................................... 10

720 ILCS 24-1.6............................................................................... 10

720 ILCS 5/24-1.6(a)(1).................................................................... 10

720 ILCS 5/24-1.6(3)(C).................................................................... 10

720 ILCS 5/24-2(b)(5)...................................................................... 10

Ohio Rev. Code § 9.68(A).................................................................. 9, 10

Ohio Rev. Code § 2923.12(C)(1)(d)..................................................... 9

Ohio Rev. Code § 2923.12(D)(3) ........................................................ 9

Ohio Rev. Code § 2923.125.............................................................. 9

## **Rules**

Fed. R. Civ. P. 56 .......................................................................... 4

ILCS S. Ct. Rule 20(a)..................................................................... 12

ILCS S. Ct. Rule 705........................................................................ 8

ILCS S. Ct. Rule 756(a).................................................................... 8

## **Other Authorities**

Black's Law Dictionary (5th ed. 1979).................................................. 8

Eugene Volokh, *Implementing the Right to Keep and Bear Arms for Self-Defense: An Analytical Framework and a Research Agenda*, 56 UCLA L. Rev. 1443 (2009) ........................................................................ 14

Illinois State Police, Concealed Carry Frequently Asked Questions, available at https://ccl4illinois.com/ccw/Public/Faq.aspx (last checked Oct. 23, 2014) .......... 9

WEBSTER'S NEW COLLEGIATE DICTIONARY (1980) ................................................... 8

# INTRODUCTION

Plaintiff, Ellen Mishaga, is a resident of the State of Ohio.  Each year, Ms. Mishaga travels to Illinois to visit with her friends.  On her visits, Ms. Mishaga stays overnight in her friends' Illinois home.  While in her friends' home, Ms. Mishaga wishes to be able to possess a firearm for self-defense, if the need were to arise.

The Firearms Owners Identification Card Act ("FOID Act") generally makes it unlawful for a person to possess firearms and ammunition in Illinois, even for self-defense, unless a person has been issued a Firearms Owner Identification card ("FOID card").  Ms. Mishaga, however, is ineligible for a FOID card because she is a resident of Ohio.  Ms. Mishaga is also not exempt from the requirements in the FOID Act, because, under Ohio law, she does not need a license or registration to possess a firearm for self-defense in her Ohio home.  Therefore, the FOID Act prohibits her from lawfully possessing a firearm for self-defense while she is a guest in her friends' Illinois home.

This prohibition is unconstitutional because it deprives Ms. Mishaga of the fundamental right to possess a firearm for self-defense that is guaranteed by the Second Amendment and applicable against the States through the Due Process Clause of the Fourteenth Amendment.  Ms. Mishaga's Illinois friends have given her permission to possess a firearm for self-defense while staying in their home.  As an overnight guest in her friends' Illinois home, Ms. Mishaga has a Second Amendment right to possess a firearm for self-defense.  Because the FOID Act prohibits Ms. Mishaga from lawfully possessing a firearm for self-defense in her friends' Illinois home, Ms. Mishaga is entitled to summary judgment on her First Claim for Relief.

Additionally, both the Privileges and Immunities Clause of Article IV and the Privileges or Immunities Clause of the Fourteenth Amendment prohibit one state from discriminating

against residents of other States.  The FOID Act discriminates against Ms. Mishaga on the basis of residency because nonresidents are generally ineligible for a FOID card and no exception applies to Ms. Mishaga, even though she is a law-abiding, responsible citizen.  To make matters worse, there is absolutely no reason for this discrimination because Ms. Mishaga does not constitute the peculiar source of evil at which the FOID Act is aimed, i.e., the identification of those not qualified to possess a firearm.  Therefore, Ms. Mishaga is entitled to summary judgment on her Second Claim for Relief.

## PLAINTIFF'S STATEMENT OF UNDISPUTED MATERIAL FACTS

For purposes of Ms. Mishaga's Motion for Summary Judgment only, the following material facts are undisputed.

1.      Ms. Mishaga is a citizen of the United States, a resident of the State of Ohio, and is over 18 years of age.  Deposition of Ellen Mishaga at 7, 8, 13.[1]

2.      Ms. Mishaga is a law-abiding, responsible citizen.  Mishaga Dep. at 12–13.

3.      Several times each year, Ms. Mishaga and her husband travel to Illinois to visit their friends, James and Nancy Telzrow.  Mishaga Dep. at 19–21; Declaration of James Telzrow ¶ 6.[2]  When Ms. Mishaga and her husband make these trips, they stay in the Telzrows' home overnight.  Mishaga Dep. at 19–21; Telzrow Decl. ¶ 6.  While staying in the Telzrows' home, Ms. Mishaga is occasionally alone and feels a need for protection.  Mishaga Dep. at 30.

4.      Defendant, Hiram Grau, is the Director of the Illinois Department of State Police.  Defendant Grau is responsible for issuing FOID cards.  First Amended Complaint ("FAC") ¶ 6 (Doc. 13); Grau Answer ¶ 6 (Doc. 17).

---

[1] Relevant portions of the Deposition of Ellen Mishaga ("Mishaga Dep.") are attached hereto as Exhibit 1.

[2] The Declaration of James Telzrow ("Telzrow Decl.") is attached hereto as Exhibit 2.

5.      Defendant, Michael W. Vorreyer, is Master Sergeant, Illinois Department of State Police.  Defendant Vorreyer has responsibilities related to the FOID Card Unit of the Illinois Department of State Police.  FAC ¶ 7; Vorreyer Answer ¶ 7 (Doc. 16).

6.      On March 27, 2010, Ms. Mishaga submitted an application for a FOID card.  FAC ¶ 26; Grau Answer ¶ 26; Vorreyer Answer ¶ 26; Mishaga Dep. at 9–11.

7.      On or about April 30, 2010, Defendants denied Ms. Mishaga's FOID card application because, "No Illinois driver's license number or state identification number provided."  FAC ¶ 27; Grau Answer ¶ 27; Vorreyer Answer ¶ 27; Mishaga Dep. at 9–11, 28–29; Mishaga Dep. Exhibit 1;[3] Deposition of Master Sergeant Michael Vorreyer at 31–36.[4]

8.      On or about May 17, 2010, Ms. Mishaga submitted a second application for a FOID card.  FAC ¶ 28; Grau Answer ¶ 28; Vorreyer Answer ¶ 28; Mishaga Dep. at 9–11, 28–29.

9.      On or about June 14, 2010, Defendants denied Ms. Mishaga's second FOID card application because, "Due to Illinois state law, you must have a valid IL driver's license or IL state ID in order to be eligible for an IL FOID card."  FAC ¶ 29; Grau Answer ¶ 29; Vorreyer Answer ¶ 29; *see* Mishaga Dep. at 9–11, 28–29; Vorreyer Dep. at 31–36; Vorreyer Dep. Exhibit 4.[5]

10.     Ms. Mishaga meets all of the qualifications for a FOID Card, except that she is not a resident of the State of Illinois and does not possess an Illinois driver's license or Illinois Identification Card.  *Compare* 430 ILCS 65/4 *with* Mishaga Dep. at 12–13.

11.     Ms. Mishaga and her husband lawfully own firearms in their resident state of Ohio.  Mishaga Dep. at 13–14, 29–30, 34.

---

[3] This Exhibit is attached hereto as Exhibit 3.

[4] Relevant portions of the Deposition of Master Sergeant Vorreyer ("Vorreyer Dep.") are attached hereto as Exhibit 4.

[5] This Exhibit is attached hereto as Exhibit 5.

12.     Ms. Mishaga does not possess a concealed carry permit, nor is she licensed or registered to possess a firearm in her resident state of Ohio because Ohio does not require licensing or registration to possess a firearm in Ohio.  Mishaga Dep. at 14–18.

13.     Mr. Telzrow possesses a valid FOID card.  Telzrow Declaration ¶ 3.

14.     Mr. Telzrow lawfully possesses firearms in his Illinois home for hunting and self-defense purposes.  Telzrow Declaration ¶¶ 4, 7.

15.     Mr. Telzrow wants Ms. Mishaga to be able to lawfully possess a firearm for self-defense when she is a guest in his home.  Telzrow Declaration ¶ 7; Mishaga Dep. at 30–31.

16.     Mr. Telzrow has given Ms. Mishaga permission to access his firearms for self-defense when she is a guest in his home.  Telzrow Declaration ¶ 7.

## ARGUMENT

## I.      STANDARD OF REVIEW.

Summary judgment is appropriate under Fed. R. Civ. P. 56 if the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, show there is no genuine issue as to any material facts and that the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A material fact is one identified by the substantive law as affecting the outcome of the suit.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  When reviewing a motion for summary judgment, courts review the pleadings and the documentary evidence in the light most favorable to the nonmoving party and draw all legitimate inferences and resolve all doubts in favor of that party.  *Keri v. Board of Trustees of Purdue University*, 458 F.3d 620, 628 (7th Cir. 2006).  A genuine issue exists, and summary judgment is inappropriate, only when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson,* 477 U.S. at 248.  Cross-motions for summary

judgment are treated separately under the standards applicable to each.  *See McKinney v. Cadleway Properties, Inc.*, 548 F.3d 496, 504 n.4 (7th Cir. 2008).

There are no genuine issues of material fact regarding whether the FOID Act prohibits Ms. Mishaga from possessing a firearm for self-defense when she is an overnight guest in her friends' Illinois home.  This prohibition violates the Second Amendment, which is "fully applicable" against the States through the Due Process Clause of the Fourteenth Amendment. This prohibition also violates the Privileges and Immunities Clause of Article IV and the Privileges or Immunities Clause of the Fourteenth Amendment because it discriminates against Ms. Mishaga merely because she is a resident of Ohio.  Therefore, as demonstrated below, Ms. Mishaga is entitled to entry of summary judgment as a matter of law with respect to both of her claims for relief.

## II.  MS. MISHAGA WOULD FACE CRIMINAL PROSECUTION UNDER THE FOID ACT FOR POSSESSING A FIREARM FOR SELF-DEFENSE WHILE STAYING IN HER FRIENDS' ILLINOIS HOME.

### A.  The FOID Act Prohibits Ms. Mishaga From Lawfully Possessing A Firearm For Self-Defense While Staying In Her Friends' Illinois Home.

The FOID Act provides:

> No person may acquire or possess any firearm . . . within this State without having in his or her possession a Firearm Owner's Identification Card previously issued in his or her name by the Department of State Police under the provisions of this Act.

430 ILCS 65/2(a)(1).  Thus, the FOID Act generally prohibits the possession of a firearm for self-defense in Illinois, unless that person has been issued a FOID card by the Illinois State Police ("ISP").[6]  430 ILCS 65/2(a); *Mishaga v. Monken*, 753 F. Supp. 2d 750, 753 (C.D. Ill.

_____

[6] The FOID Act also generally prohibits the possession of firearm ammunition without a FOID card.  430 ILCS 65/2(a)(2); *see* 430 ILCS 65/1.1 (defining "firearm ammunition").  The

2010) ("The [FOID] Act generally prohibits a person from possessing a weapon in Illinois unless the person has a FOID Card."); *Horsley v. Trame*, 13-CV-321-NJR-SCW, 2014 WL 3720933, *1 (S.D. Ill. 2014) ("In Illinois, most persons are required to possess a Firearm Owners Identification Card to lawfully acquire or possess a firearm. 430 ILCS § 65/2.").  Possessing a firearm without a FOID card when that person is ineligible for a FOID card is a Class 3 felony. 430 ILCS 65/14(c)(3).  The FOID Act contains no self-defense exceptions.  *See* 430 ILCS 65/0.01 *et seq.*; *see also District of Columbia v. Heller*, 554 U.S. 570, 630 (2008) ("*Heller I*") (refusing to find an implied self-defense exception, especially when other exceptions were expressly listed).

In order to be eligible for a FOID card a person must meet numerous requirements.  430 ILCS 65/4(2)(i)–(xvii).  Ms. Mishaga meets all applicable requirements, except two that are tied to her residency.  First, Ms. Mishaga is not a resident of Illinois.  430 ILCS 65/4(a)(2)(xiv) (requiring each applicant for a FOID Card to submit evidence that she is "a resident of the State of Illinois").  Second, as an Ohio resident, Ms. Mishaga does not possess an Illinois driver's license number or Illinois Identification Card number.  430 ILCS 65/4(a-5) (requiring each applicant for a FOID Card over the age of 18 to furnish an Illinois driver's license number or Illinois Identification Card number).  Thus, under the plain and ordinary language of the FOID Act, Ms. Mishaga is ineligible for a FOID card based solely on the fact that she is an Ohio resident.  *See* Plaintiff's Statement of Undisputed Material Facts ("PSOF") ¶¶ 6–9 (Ms. Mishaga's applications for a FOID card were denied because she is not an Illinois resident); *see*

---

possession of a firearm for self-defense necessarily means that the firearm is operational and loaded with firearm ammunition.  Thus, 430 ILCS 65/2(a)(2) is also implicated by the claims asserted by Ms. Mishaga.

*also* 430 ILCS 65/8(q) (The ISP has the authority to deny or revoke a FOID card to "[a] person who is not a resident of the State of Illinois, except as provided in [430 ILCS 65/4(a-10).].").

## B.    As A Matter Of Statutory Construction, Exception 10 Does Not Apply To Ms. Mishaga.

The FOID Act does provide some exceptions to its FOID card requirements.  430 ILCS 65/2(b)(1)–(16), (c), and (d).  The only exception that may arguably apply to Ms. Mishaga is "Exception 10," which exempts "[n]onresidents who are currently licensed or registered to possess a firearm in their resident state[.]"  430 ILCS 65/2(b)(10); *see* September 30, 2104 Order at 3–5 (Doc. 37).[7]  An examination of Exception 10, however, reveals that it does not apply to Ms. Mishaga.

The fundamental rule of statutory construction is to ascertain and give effect to the intent of the legislature.  *King v. First Capital Financial Services Corp.*, 828 N.E.2d 1155, 1169 (Ill. 2005).  The best indicator of the legislature's intent is the language of the statute, which must be accorded its plain and ordinary meaning.  *Id*.  More importantly, under no circumstances, may a court "'supply omissions, remedy defects, annex new provisions, substitute different provisions, add exceptions, limitations, or conditions, or otherwise change the law so as to depart from the plain meaning of language employed in the statute.'"  *Id*. at 1169–70 (quoting *In re Marriage of Beyer*, 753 N.E.2d 1032, 1036 (Ill. App. 2001)); *Virginia v. Am. Booksellers Ass'n, Inc*., 484 U.S. 383, 397 (1988) (a court shall not rewrite a state law so that it will pass constitutional muster).

---

[7] "Exception 9," exempts "nonresidents whose firearms are unloaded and enclosed in a case." 430 ILCS 65/2(b)(9).  This exception is meaningless with respect to Ms. Mishaga's claims to possess a firearm for self-defense in her friends' Illinois home.  In fact, this exception suffers from the same constitutional infirmity as the law struck down by the Supreme Court in *Heller I,* 554 U.S. at 628–630 ("[T]hat firearms in the home be rendered and kept inoperable at all times . . . makes it impossible for citizens to use them for the core lawful purpose of self-defense and is hence unconstitutional.").

The phrase "currently licensed or registered" in Exception 10 is not defined.  The plain and ordinary meaning of the term "licensed" means a person has applied for and received permission (generally in the form of a document) from an issuing authority.  *See* BLACK'S LAW DICTIONARY 829 (5th ed. 1979) (defining "license" as "[t]he permission by a competent authority to do an act which, without permission, would be illegal . . . ."); *id.* (defining "license" as a "certificate or the document itself which gives permission"); WEBSTER'S NEW COLLEGIATE DICTIONARY 656 (1980) (defining "license" as "a permission granted by a competent authority to engage in . . . an activity otherwise unlawful.").  Similarly, the plain and ordinary meaning of the term "registered" means a person has applied for and received enrollment.  *See* BLACK'S LAW DICTIONARY 1153 (5th ed. 1979) (defining "register" as "to enroll; to enter precisely in a list or the like"); *id.* at 1154 (defining "registered" as being "[e]ntered or recorded in some official register or list"); WEBSTER'S NEW COLLEGIATE DICTIONARY 966 (defining "registered" as "having the owner's name entered in a register" and as "qualified formally or officially").  Thus, the plain and ordinary meaning of the terms "licensed" and "registered" in Exception 10 indicates that, in order for a nonresident to be exempt from the FOID card requirement, that nonresident must have affirmatively applied for and received permission or enrollment to possess a firearm in her resident state.  430 ILCS 65/2(b)(10); *cf.* ILCS S. Ct. Rule 705 ("Any person who, as determined by the Board of Admissions to the Bar, *has been licensed* to practice in the highest court of law in any United States state, territory, or the District of Columbia for no fewer than five years may be eligible for admission on motion . . . .") (emphasis added); ILCS S. Ct. Rule 756(a) ("[E]very attorney admitted to practice law in this state shall *register* and pay an annual registration fee to the Commission on or before the first day of January." (emphasis added)).

It is undisputed that Ms. Mishaga does not possess a concealed carry permit,[8] nor is she licensed or registered to possess a firearm in her resident state.  PSOF ¶ 12.  In fact, Ohio law forbids the licensing or the registration of the right to possess a firearm in a home for self-defense.  Ohio Rev. Code § 9.68(A) ("Except as specifically provided by the United States Constitution, Ohio Constitution, state law, or federal law, a person, *without further license*, permission, restriction, delay, or process, may own, possess, purchase, sell, transfer, transport, store, or keep any firearm, part of a firearm, its components, and its ammunition.") (emphasis added); *see* Ohio Const. Art. I, § 4 ("The people have the right to bear arms for their defense and security . . . ."); *Arnold v. Cleveland*, 616 N.E.2d 163, 169–70 (Ohio 1993) ("The right of defense of self, property and family is a fundamental part of our concept of ordered liberty.  To deprive our citizens of the right to possess any firearm would thwart the right that was so thoughtfully granted by our forefathers and the drafters of our Constitution.  For many, the mere possession of a firearm in the home offers a source of security."); *see also Cleveland v. State*, 942 N.E.2d 370, 372 (Ohio 2010) ("In 2006, the General Assembly enacted R.C. 9.68 as a component of Sub.H.B. No. 347, effective March 14, 2007, recognizing that the right to keep and bear arms is a 'fundamental individual right' that is a 'constitutionally protected right in every part of Ohio' but that there was a 'need to provide uniform laws throughout the state' regulating

---

[8] Ohio issues licenses for persons to carry concealed firearms outside the home.  Ohio Rev. Code § 2923.125.  Ohio does not, however, require residents to have a concealed carry license to possess a firearm for self-defense in one's own home.  *See* Ohio Rev. Code § 2923.12(C)(1)(d); *id*. § 2923.12(D)(3).  The recently enacted Illinois Firearm Concealed Carry Act brings Illinois into rough equivalence with many other states by legalizing the right to carry outside the home.  *See* 430 ILCS 66/1, *et seq*.  However, only residents from Hawaii, New Mexico, South Carolina, and Virginia, may currently apply for concealed carry in Illinois.  Illinois State Police, Concealed Carry Frequently Asked Questions, available at https://ccl4illinois.com/ccw/Public/Faq.aspx (last checked Oct. 23, 2014) (A spreadsheet from that site indicating why Ohio residents are not eligible for concealed carry in Illinois is attached hereto as Exhibit 6).  Thus, the Firearm Concealed Carry Act does nothing to alleviate the deprivation of Ms. Mishaga's constitutional rights caused by the FOID Act.

ownership and possession of firearms. R.C. 9.68(A), 151 Ohio Laws, Part IV, 8138, 8139."); *id*.

at 378 (holding Ohio Rev. Code § 9.68(A) preempts local regulation of firearms because

otherwise gun owners would face a "confusing patchwork of licensing requirements"); *Ohioans*

*for Concealed Carry, Inc. v. Clyde*, 896 N.E.2d 967, 974 (Ohio 2008) ("The General Assembly

reiterated the need for uniformity in R.C. 9.68(A), which represents an attempt by that body to

nullify all municipal laws impeding uniform application of the state statute."). Thus, Ms.

Mishaga cannot affirmatively apply for and receive permission or enrollment to possess a

firearm for self-defense in her Ohio home. In other words, as a matter of statutory construction,

Ohio law does not "license" Ms. Mishaga to possess a firearm in her Ohio home. Therefore,

Exception 10 does not apply and Ms. Mishaga must possess a FOID card in order to possess a

firearm for self-defense while staying is her friends' Illinois home or risk prosecution under the

FOID Act.[9]  430 ILCS 65/2(a), 65/14(c)(3).

This conclusion is supported by *People v. Holmes*, 948 N.E.2d 617, 624–25 (Ill. 2011),

wherein the defendant, an Indiana resident, was convicted of violating the AUUW statute,

specifically 720 ILCS 5/24–1.6(a)(1), (3)(C), by carrying a firearm in his vehicle without

---

[9] Ms. Mishaga may not risk criminal prosecution under either the Unlawful Use of Weapons ("UUW") statute, 720 ILCS 5/24-1 or the Aggravated Unlawful Use of Weapons ("AUUW") statute, 720 ILCS 24-1.6, because those statutes seemingly provide exceptions for a person who: (1) is an invitee in the dwelling of another; and (2) has that person's permission to possess a firearm. 720 ILCS 5/24-1(a)(4), 720 ILCS 5/24-1.6(a)(1); *see also* 720 ILCS 5/24-2(b)(5). That Ms. Mishaga may not risk criminal prosecution under the UUW and AUUW statutes does not diminish her standing to challenge the FOID Act because possessing a firearm when one is ineligible for a FOID card is a violation of the FOID Act alone. 430 ILCS 65/14(c)(3); *see Babbitt v. United Farm Workers Nat. Union*, 442 U.S. 289, 298 (1979) ("When the plaintiff has alleged an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder, he 'should not be required to await and undergo a criminal prosecution as the sole means of seeking relief.'" (quoting *Doe v. Bolton*, 410 U.S. 179, 188 (1973)); *see Toomer v. Witsell,* 334 U.S. 385, 391–92 (1948) (the risk of criminal prosecution constituted "irreparably injury" for purposes of injunctive relief).

possessing a FOID card.  On appeal, the defendant argued that his conviction should be set aside

because, as an Indiana resident with a valid permit to possess the gun, Exception 10 exempted

him from the FOID card requirement.  *Id*. at 624.  In response, the State argued, *inter alia*, that

Exception 10 did not apply because the defendant did not possess the Indiana gun permit when

he was arrested.  *Id*. at 624–25.

In setting aside the conviction, the Illinois Supreme Court made three important rulings.

First, Exception 10 is incorporated into the AUUW statute.  *Holmes*, 948 N.E.2d at 624 ("[W]e

hold that the exception contained in [430 ILCS 65/2(b)(10)] must be incorporated in the unlawful

use of weapons act."); *see id*. at 628 (Garman, J., concurring) ("I agree with the majority's

conclusion that the statutes must be read together and that the exception contained in the FOID

Card Act for nonresidents licensed to carry a gun in their home state must be read into the

AUUW statute.").  Second, neither the AUUW statute nor the FOID Act requires a person to

actually have possession of a FOID card or a permit from her resident state, as long as the person

had been "issued" a valid FOID card or permit from her resident state at the time of arrest.  *Id*. at

625 ("The language of the unlawful use of weapons statute only contemplates that a FOID card

has been issued to that individual.  There is no requirement in the unlawful use of weapons

statute that an individual have his or her FOID card or *other similar permit* in his or her

possession." (emphasis added)).  Finally, the Court ruled it was prejudicial error for the trial

court not to allow the defendants to introduce his Indiana permit during trial.  *Id*.

Based upon these rulings, *Holmes* proves that Exception 10 applies to only those

nonresidents that have been "issued" a document evidencing that person's ability to possess a

firearm in his resident state.  In other words, Exception 10 does not apply if the person is merely

11

allowed to possess a firearm in his resident state.  This is in keeping with the General

Assembly's purpose in passing the FOID Card Act:

> [I]n order to promote and protect the health, safety and welfare of the public, it is
> necessary and in the public interest to provide a system of identifying persons
> who are *not qualified* to acquire or possess firearms . . . within the State of Illinois
> by the establishment of a system of Firearm Owner's Identification Cards . . . .

430 ILCS 65/1 (emphasis added).  Indeed, if Exception 10 was meant to apply to all nonresidents

who were simply allowed to possess a firearm in their resident state, as opposed to those who

were licensed or registered by their resident state, it would make the FOID Act unmanageable

vis-à-vis nonresidents because the ISP would never know which nonresidents were "not

qualified" to possess a firearm in Illinois.

As the foregoing demonstrates, the FOID Act requires that Ms. Mishaga have a FOID

card before possessing a firearm for self-defense while staying is her friends' Illinois home.  430

ILCS 65/2(a).  Ms. Mishaga, however, is ineligible for a FOID card because she is a non-resident

and Exception 10 does not apply to her.  Thus, Ms. Mishaga would risk criminal prosecution

under the FOID Act if she were to possess a firearm for self-defense while staying in her friends'

Illinois home.[10]  430 ILCS 65/2(a), 65/14(c)(3).

---

[10] As the foregoing addresses this Court's questions and is based upon the construction of the
relevant Illinois and Ohio statutes, Ms. Mishaga submits that this Court's questions should not be
certified to the Illinois Supreme Court.  *See* September 30, 2104 Order at 5 (Doc. 37); *see also*,
ILCS S. Ct. Rule 20(a) ("When it shall appear to the Supreme Court of the United States, or to
the United States Court of Appeals for the Seventh Circuit, that there are involved in any
proceeding before it questions as to the law of this State, which may be determinative of the said
cause, and there are no controlling precedents in the decisions of this court, such court may
certify such questions of the laws of this State to this court for instructions concerning such
questions of State law, which certificate this court, by written opinion, may answer.").

**III.     MS. MISHAGA IS ENTITLED TO SUMMARY JUDGMENT ON HER FIRST
            CLAIM FOR RELIEF BECAUSE THE FOID ACT DENIES HER THE RIGHT
            TO POSSESS A FIREARM FOR SELF-DEFENSE WHILE STAYING IN HER
            FRIENDS' ILLINOIS HOME.**

The Second Amendment guarantees individuals a fundamental right to possess a firearm

for self-defense.  *Heller I*, 554 U.S.at 628–630.  This guarantee is unassailable when the person

is in a home.  *Id*. at 628 (Banning the possession of a firearm for self-defense in the home would

fail constitutional muster "[u]nder any of the standards of scrutiny that we have applied to

enumerated constitutional rights . . . .").  Moreover, the Due Process Clause of the Fourteenth

Amendment makes this guarantee "fully applicable" against the States.  *McDonald v. City of

Chicago, Ill.*, 561 U.S. 742, 791 (2010); *Moore v. Madigan*, 702 F.3d 933, 934 (7th Cir. 2012).

As an overnight guest in her friends' Illinois home, Ms. Mishaga has the right to defend

herself and, thus, she has the same Second Amendment right to possess a firearm in that home

for self-defense, as the owners of the home.  *Heller I*, 554 U.S. at 628 ("the inherent right of self-

defense has been central to the Second Amendment right"); *Cf. Minnesota v. Olson*, 495 U.S. 91,

95–100 (1990) (recognizing Fourth Amendment rights of an overnight guest in a private home);

*United States v. Jeffers*, 342 U.S. 48, 51–52 (1951) (recognizing Fourth Amendment rights of a

hotel guest).  Ms. Mishaga's Illinois host, Mr. Telzrow, has authorized her to access the firearms

in his home for self-defense.  PSOF ¶ 15–16.  Thus, Ms. Mishaga's Second Amendment rights

while staying in her friends' Illinois home are indistinguishable from those of her hosts and are

the same as she has in her own home.

Constitutional rights, like the right to keep and bear arms guaranteed by the Second

Amendment and the right to be free from unreasonable searches and seizures guaranteed by the

Fourth Amendment, are personal rights.  *McDonald*, 561 U.S. at 780 ("[T]he Second

Amendment protects a *personal right* to keep and bear arms for lawful purposes, most notably

for self-defense within the home.") (emphasis added); *Katz v. United States*, 389 U.S. 347, 351 (1967) ("[T]he Fourth Amendment protects people, not places."); *see* U.S. Const. Amend. II ("[T]he right of the people to keep and bear Arms, shall not be infringed."); U.S. Const. Amend. IV ("The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ."). Thus, these rights do not lose their force and effect outside a person's permanent residence.

For example, in *Olson*, the Supreme Court ruled that an overnight guest's expectation of privacy allowed the guest to claim the Fourth Amendment's protection against warrantless arrest in her host's home. 495 U.S. at 99–100. The Court's inquiry in *Olson* focused on why a guest seeks the home of another in which to spend nights:

> From the overnight guest's perspective, he seeks shelter in another's home precisely because it provides him with privacy, a place where he and his possessions will not be disturbed by anyone but his host and those his host allows inside. We are at our most vulnerable when we are asleep because we cannot monitor our own safety or the security of our belongings. It is for this reason that, although we may spend all day in public places, when we cannot sleep in our own home we seek out another private place to sleep, whether it be a hotel room, or the home of a friend.

*Id*. at 99.

That Ms. Mishaga may stay in her friends' Illinois home because of the added safety provided does not diminish her inalienable right to defend herself there. *See* Eugene Volokh, *Implementing the Right to Keep and Bear Arms for Self-Defense: An Analytical Framework and a Research Agenda*, 56 UCLA L. Rev. 1443, 1515 (2009) ("Self-defense has to take place wherever [a] person happens to be."); *Moore*, 702 F.3d at 942. Thus, Ms. Mishaga's personal safety interests are largely indistinguishable from those of her hosts. Moreover, because Mr. Telzrow has authorized Ms. Mishaga to possess the firearms in his home for her self-defense, she has a Second Amendment right to possess a firearm for self-defense in her friends' Illinois home.

*See Olson*, 495 U.S. at 95–100 (ruling that a guest has basically the same Fourth Amendment rights as his host); *Heller I*, 554 U.S. at 628 (noting that the need to possess a firearm for self-defense is most "acute" in the home).

The FOID Act, however, makes it unlawful for Ms. Mishaga to possess a firearm for self-defense while she is staying in her friends' Illinois home.  This prohibition violates the central holding of *Heller*:  "whatever else [the Second Amendment] leaves to future evaluation, it surely elevates above all other interests the right of law-abiding, responsible citizens to use arms in defense of hearth and home."  *Heller I*, 554 U.S. at 635; *McDonald*, 561 U.S. at 780 (The "central holding" in *Heller I* is "that the Second Amendment protects a personal right to keep and bear arms for lawful purposes, most notably for self-defense within the home.").  Moreover, given this case's stark similarity to *Heller I*, it is not necessary to identify a standard of scrutiny to apply to this prohibition because it is per se unconstitutional.  *Heller I*, 554 U.S. at 628–29 (Banning the use of a functional firearm in the home for self-defense "would fail constitutional muster" "[u]nder any of the standards of scrutiny that we have applied to enumerated constitutional rights . . . ."); *Ezell v. City of Chicago*, 651 F.3d 684, 703 (7th Cir. 2011) ("Both [*Heller I*] and *McDonald* suggest that broadly prohibitory laws restricting the core Second Amendment right—like the handgun bans at issue in those cases, which prohibited handgun possession even in the home—are categorically unconstitutional."); *Moore*, 702 F.3d at 939–41 (Illinois' complete ban on carrying firearms outside the home was per se unconstitutional, obviating the need to apply a level of scrutiny); *Peruta v. County of San Diego*, 742 F.3d 1144, 1168 (9th Cir. 2014) (When the challenged law does not merely burden the Second Amendment right, but destroys it, the law is unconstitutional "under any light."); *see also, Heller v. District of Columbia*, 670 F.3d 1244, 1271 (D.C. Cir. 2011) ("*Heller II*") (Kavanaugh, J., dissenting)

(Based upon [*Heller I*] and *McDonald*, there is "little doubt that courts are to assess gun bans and regulations based on text, history, and tradition, not by a balancing test such as strict or intermediate scrutiny."); *Gowder v. City of Chicago*, 923 F. Supp. 2d 1110, 1120–22 (N.D. Ill. 2012) (applying the "text, history, and tradition" analysis utilized by the Court in *Heller I* and, in the alternative, strict and intermediate scrutiny).

If a standard of scrutiny is required, that standard should be strict scrutiny. Ms. Mishaga is a law-abiding, responsible citizen (PSOF ¶ 2) "whose Second Amendment rights are entitled to full solicitude" under *Heller I. Ezell*, 651 F.3d at 708. The FOID Act, however, eliminates "the core of the Second Amendment right[,]" i.e., the ability to possess a firearm for self-defense in the home. *See id*. at 708. Because of this infringement on a fundamental right, strict scrutiny should be applied. *Id*. ("All this suggests that a more rigorous showing . . . should be required, if not quite 'strict scrutiny.'"); *Roe v. Wade*, 410 U.S. 113, 155 (1973) (regulations that limit the exercise of fundamental rights are subject to strict scrutiny).

Under strict scrutiny, the means employed by the legislature must be necessary to achieve a compelling state interest, and the statute must be narrowly tailored to accomplish this goal, i.e., the legislature must prove that it has employed the least restrictive means consistent with the attainment of the intended goal. *United States v. Playboy Entm't Grp., Inc*., 529 U.S. 803, 813 (2000). The purpose of the FOID Act is "to provide a system of identifying persons who are not qualified to acquire or possess firearms . . . within the State of Illinois by the establishment of a system of Firearm Owner's Identification Cards . . . ." 430 ILCS 65/1; *see Coram v. State*, 996 N.E.2d 1057, 1088 (Ill. 2013) (Theis, J., dissenting) ("[T]he express legislative purpose of the Act is to identify those individuals that are *not qualified* to possess firearms in order to protect the public interest." (emphasis added)). Assuming, without conceding, that this interest is

compelling, Defendants still must show that denying Ms. Mishaga the right to possess a firearm for self-defense in her friends' Illinois home is narrowly tailored to accomplish that goal. Defendants cannot satisfy this evidentiary burden.

As a law-abiding, responsible citizen, Ms. Mishaga is qualified to possess a firearm in Illinois, but for her status as a nonresident. *See* 430 ILCS 65/4(a)(2). Therefore, the FOID Act is not narrowly tailored because denying law-abiding, responsible citizens, like Ms. Mishaga, the ability to possess a firearm for self-defense is not an "appropriately targeted evil." *Frisby v. Schultz*, 487 U.S. 474, 485 (1988) ("A statute is narrowly tailored if it targets and eliminates no more than the exact source of the 'evil' it seeks to remedy." (quoting *City Council of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 808–10 (1984)). Nor have Defendants employed the least restrictive means to accomplish their goal. Defendants can accomplish their goal of "provid[ing] a system of identifying persons who are not qualified to acquire or possess firearms . . . within the State of Illinois" by simply issuing FOID cards to law-abiding, responsible citizens, like Ms. Mishaga, who satisfy all the requirements for the issuance of a FOID card, but for their nonresident status.

Even if intermediate scrutiny were applied, Defendants could not meet their burden of proof. "To pass constitutional muster under intermediate scrutiny, the government has the burden of demonstrating that its objective is an important one and that its objective is advanced by means substantially related to that objective." *United States v. Williams*, 616 F.3d 685, 692 (7th Cir. 2010); *United States v. Marzzarella*, 614 F.3d 85, 98 (3d Cir. 2010) (Intermediate scrutiny requires "the asserted governmental end to be more than just legitimate, either 'significant,' 'substantial,' or 'important.'). Here, the FOID Act's prohibition, as applied to nonresidents, such as Ms. Mishaga, is not substantially related to the State's interest in providing

a system of identifying persons who are not qualified to possess firearms.  As a law-abiding, responsible citizen, Ms. Mishaga has a right to possess a firearm for self-defense and is otherwise qualified to do so under Illinois law, but for the fact that she is a nonresident.  Denying her that right simply because she is a nonresident is not substantially related to identifying persons who are not qualified to possess firearms.

As the foregoing demonstrates, Defendants currently maintain and actively enforce a set of laws, customs, practices, and policies under color of state law that deprive Ms. Mishaga of the right to possess a firearm for self-defense in her friends' Illinois home, in violation of the Second and Fourteenth Amendments.  Accordingly, Defendants are liable to Ms. Mishaga under 42 U.S.C. § 1983, and this Court should grant summary judgment in her favor, declare the the FOID Act is unconstitutional as applied to her, and permanently enjoin Defendants from enforcing the FOID Act against her.

## IV.   MS. MISHAGA IS ENTITLED TO SUMMARY JUDGMENT ON HER SECOND CLAIM FOR RELIEF BECAUSE THE FOID ACT DISCRIMINATES AGAINST HER SOLELY BECAUSE SHE IS A NONRESIDENT.

"The constitutional right to travel from one State to another . . . occupies a position fundamental to the concept of our Federal Union.  It is a right that has been firmly established and repeatedly recognized."  *United States v. Guest*, 383 U.S. 745, 757 (1966).  One component of the right to travel is the right of a nonresident of a state "to be treated as a welcome visitor rather than an unfriendly alien when temporarily present" in that state.  *Saenz v. Roe*, 526 U.S. 489, 500 (1999); *id*. at 512–13 (Rehnquist, C.J., dissenting) ("Nonresident visitors of other States should not be subject to discrimination solely because they live out of State."); *Toomer*, 334 U.S. at 395 ("[A] citizen of State A who ventures into State B [is entitled to] the same privileges which the citizens of State B enjoy.").  This component of the right to travel is protected by both

the Privileges and Immunities Clause of Article IV[11] and the Privileges or Immunities Clause of the Fourteenth Amendment.[12]  *See Saenz*, 526 U.S. at 501 (1999) ("[A] citizen of one State who travels in other States, intending to return home at the end of his journey, is entitled to enjoy the 'Privileges and Immunities of Citizens in the several States' that he visits."); *id*. at 502 n.15 (explaining that the Privileges or Immunities Clause of the Fourteenth Amendment was "modeled" on the Privileges and Immunities Clause of Article IV); *see McDonald*, 561 U.S. at 719 (Thomas, J., concurring) (The text of the Privileges and Immunities Clause "resembles the Privileges or Immunities Clause, and it can be assumed that the public's understanding of the latter was informed by its understanding of the former.").

In addition, the right to possess a firearm for self-defense in the home is a fundamental right protected by the Privileges and Immunities and the Privileges or Immunities Clauses.  *See McDonald*, 561 U.S. at 778 ("[I]t is clear that the Framers and ratifiers of the Fourteenth Amendment counted the right to keep and bear arms among those fundamental rights necessary to our system of ordered liberty."); *see id*. at 806 (Thomas, J., concurring) ("[T]he right to keep and bear arms is a privilege of American citizenship that applies to the States through the Fourteenth Amendment's Privileges or Immunities Clause.").  It is beyond dispute that law-abiding, responsible Illinois residents may apply for and receive a FOID card, entitling them to exercise this fundamental right without risking criminal prosecution under the FOID Act.  430 ILCS 65/2, 65/4, 65/14.  Ms. Mishaga, a law-abiding, responsible citizen, however, is denied this

---

[11] "The Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States."  U.S. Const., Art. IV, § 2.

[12] "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States[.]"  U.S. Const., Amend. XIV, § 1.

same fundamental right and privilege solely because she is a resident of Ohio.[13]  Therefore, at a

minimum, Defendants must prove there is a substantial reason for discriminating against Ms.

Mishaga and that this discrimination bears a substantial relationship to the State's objective.[14]

*Toomer,* 334 U.S. at 396 (The Privileges and Immunities Clause "bar[s] discrimination against

citizens of other States where there is no substantial reason for the discrimination beyond the

mere fact that they are citizens of other States."); *Supreme Court of New Hampshire v. Piper*,

470 U.S. 274, 284 (1985) ("*Piper*") ("The Clause does not preclude discrimination against

nonresidents where (i) there is a substantial reason for the difference in treatment; and (ii) the

discrimination practiced against nonresidents bears a substantial relationship to the State's

objective.").  Defendants cannot meet their heavy burden of proof.

First, there is no a substantial reason for Defendants to issue FOID cards to law-abiding,

responsible Illinois residents and to deny them to law-abiding, responsible Ohio residents, such

as Ms. Mishaga.  A "'substantial reason" for "'discrimination"' exists only when "'there is

something to indicate that non-citizens constitute a peculiar source of the evil at which the

[discriminatory] statute is aimed.'"  *Hicklin v. Orbeck,* 437 U.S. 518, 525–526 (1978) (quoting

*Toomer*, 334 U.S. at 398) (brackets in original).  Law-abiding, responsible Ohio residents who

---

[13] That Ms. Mishaga must relinquish her fundamental right to possess a firearm for self-defense in her friends' Illinois home in order to exercise her fundamental right to travel demonstrates the FOID Act is unconstitutional as applied to her.  *Shapiro v. Thompson*, 394 U.S. 618, 631 (1969) *overruled on other grounds by Edelman v. Jordan*, 415 U.S. 651 (1974) ("If a law has 'no other purpose . . . than to chill the assertion of constitutional rights by penalizing those who choose to exercise them, then it (is) patently unconstitutional.'" (quoting *United States v. Jackson*, 390 U.S. 570, 581 (1968)).

[14] Because two fundamental rights are implicated, the right to travel and the right to possess a firearm for self-defense in the home, strict scrutiny should apply.  *See Shapiro*, 394 U.S. at 634 ("[A]ny classification which serves to penalize the exercise of [the fundamental right to travel], unless shown to be necessary to promote a compelling governmental interest, is unconstitutional.").  Yet, because the discrimination practiced by Defendants does not survive intermediate scrutiny, it is not necessary for this Court to apply strict scrutiny.

are otherwise qualified to possess a FOID card do not "constitute a peculiar source of the evil." Thus, there is no reason for Defendants to discriminate against Ms. Mishaga.

Second, the discrimination practiced against law-abiding, responsible Ohio residents is not related to the "evil at which the statute is aimed." The "evil at which [the FOID Act] is aimed" are those persons who are not qualified to possess firearms. 430 ILCS 65/1. Law-abiding, responsible Ohio residents do not fall into that category. *See* 430 ILCS 65/4, 65/8 (indicating that law-abiding, responsible Illinois residents are generally entitled to receive a FOID card). Because there is no relationship between the discrimination and the State's objective, the FOID Act is unconstitutional as applied to Ms. Mishaga.[15]

As the foregoing demonstrates, Defendants currently maintain and actively enforce a set of laws, customs, practices, and policies under color of state law that deprive Ms. Mishaga of the right to travel and the right to possess a firearm for self-defense in her friends' Illinois home in violation of Privileges and Immunities Clause of Article IV and the Privileges or Immunities Clause of the Fourteenth Amendment. Accordingly, Defendants are liable to Ms. Mishaga under 42 U.S.C. § 1983, and this Court should grant summary judgment in her favor, declare that the FOID Act is unconstitutional as applied to her, and permanently enjoin Defendants from enforcing the FOID Act against her.

---

[15] In analyzing whether there is a substantial relationship between the discrimination and the State's objective, the availability of less restrictive means must be considered. *Piper*, 470 U.S. at 284. Assuming there is some relationship between the discrimination the State's objective, a less restrictive means would be to amend the FOID Act to eliminate the Illinois residency requirement for a FOID card. *See* 430 ILCS 65/4(a)(2)(xiv), 65/4(3)(a-5). If this amendment were made, the ISP could still identify those nonresidents who were not qualified to possess a firearm through the application process. 430 ILCS 65/4(a)(2) (factors that would disqualify an applicant).

## **CONCLUSION**

For the foregoing reasons, this Court should grant summary judgment in favor of Ms.

Mishaga on both of her claims for relief, hold that the FOID Act is unconstitutional as applied to

Ms. Mishaga, and permanently enjoin Defendants from enforcing the FOID Act against her.

DATED this 31st day of October 2014.

Respectfully submitted,

MOUNTAIN STATES LEGAL FOUNDATION

/s/ Steven J. Lechner
Steven J. Lechner
2596 South Lewis Way
Lakewood, Colorado 80227
(303) 292-2021
(303) 292-1980 (facsimile)
lechner@mountainstateslegal.com

Attorney for Plaintiff

## **CERTIFICATE OF COMPLIANCE**

Pursuant to CDIL-LR 7.1(B)(4) and 7.1(D)(5), I hereby certify that the Argument section

of the foregoing Memorandum is proportionately spaced and contains 6,291 words.


/s/ Steven J. Lechner
Steven J. Lechner

## CERTIFICATE OF SERVICE

I hereby certify that on October 31, 2014, I electronically filed the foregoing using this Court's CM/ECF system.

I certify that all participants in this case are registered CM/ECF users and service will be accomplished by this Court's CM/ECF system.

/s/ Steven J. Lechner
Steven J. Lechner