**E-FILED**
Friday, 31 October, 2014  06:16:39 PM
Clerk, U.S. District Court, ILCD

# **Exhibit 4**

1

1      IN THE UNITED STATES DISTRICT COURT

2      FOR THE CENTRAL DISTRICT OF ILLINOIS

3

4

5   ELLEN MISHAGA,                    )
                                      )
6              Plaintiff,             )
                                      )
7      vs.                            )   No. 10-3187
                                      )
8   HIRAM GRAU, Director of           )
    the Illinois Department           )
9   of the State Police and           )
    MICHAEL VORREYER,
10
               Defendants.
11

12

13           Deposition of MICHAEL VORREYER, taken

14   before Cathy J. Craggs, CSR, at the instance of the

15   Plaintiff, on July 26, 2011, at the hour of 1:00 p.m.,

16   at 3000 Montvale, Springfield, Illinois, pursuant to

17   attached stipulation.

18

19

20

21              ASSOCIATED COURT REPORTERS
                    1-800-252-9915
22                  P.O. Box 684
                Taylorville, Illinois 62568
23

24

2

1                       S T I P U L A T I O N

2                   It is stipulated between the parties

3       herein, through their attorneys, that the discovery

4       deposition of MICHAEL VORREYER may hereby be taken

5       upon oral interrogatories, on July 26, 2011, at the

6       hour of 1:00 p.m., at 3000 Montvale, Springfield,

7       Illinois, before the instance of the Plaintiff, and

8       before Cathy J. Craggs, CSR and RPR.

9                   That the oral interrogatories and the

10      answers of the witness may be taken down in shorthand

11      by the Reporter and afterwards transcribed.

12                  That the reading and signing of said

13      deposition is NOT waived.

14                  That the deposition or any portions

15      thereof may be used by any of the parties hereto,

16      without foundation proof, for any purpose for which

17      depositions are competent.

18                  That copies of the deposition may be

19      furnished to any of the parties at his or her own

20      expense.

21

22

23

24

3

```
1   APPEARANCES:    (July 26, 2011)

2


3       MOUNTAIN STATES LEGAL FOUNDATION
        By Mr. Jim Manley
4       Attorney at Law
        2596 South Lewis Way
5       Lakewood, Colorado  820227
            Appeared on behalf of the Plaintiff;
6
        ATTORNEY GENERAL'S OFFICE
7       By Ms. Bianca R. Chapman
        Attorney at Law
8       500 South Second Street
        Springfield,Illinois  62706
9           Appeared on behalf of the Defendant.

10                       ***        ***

11

12

13

14

15

16

17

18

19

20

21

22

23

24
```

4

I N D E X

| WITNESS | DIRECT | CROSS | REDIRECT | RECROSS |
|---|---|---|---|---|
| **MICHAEL VORREYER** | 5 | 51 | 55 | 61 |

E X H I B I T S

| EXHIBIT | PAGE |
|---|---|
| Exhibit 1 | 15 |
| Exhibit 2 | 29 |
| Exhibit 3 | 32 |
| Exhibit 4 | 34 |
| Exhibit 5 | 39 |
| Exhibit 6 | 47 |

***EXHIBITS ATTACHED***

7

1        Q. Are you taking anything that might affect

2  your ability to understand my questions?

3        A. No.

4        Q. Are you taking anything that might affect

5  your ability to hear my questions?

6        A. No.

7        Q. Are you taking anything that might affect

8  your memory?

9        A. No.

10       Q. Okay.  Is there any other reason why you

11  might not be able to hear or understand my questions?

12       A. No.

13       Q. If you don't hear a question, people feel

14  free to ask me to repeat it.  If you don't understand

15  a question, again please ask me to repeat it, and/or

16  ask me to rephrase it.

17           If you answer a question, I'll just

18  assume that you understood the question that I asked,

19  is that okay?

20       A. Okay.

21       Q. All right.  And if I ask a question that

22  requires you to give an estimate or approximation just

23  let me know that you're estimating, okay?

24       A. Okay.

26

1    **Q. Okay, you can answer.**

2    A. If I stopped someone from out of state, I

3    would, how I would identify if they could possess

4    firearms?

5    **Q. Sure.**

6    A. Well, first of all, as a trooper speculating

7    if I stopped someone for a traffic stop they had

8    firearms they were transporting properly, the stop

9    isn't in reference to firearms there would be no other

10   issue with the firearms.

11   **Q. So if during a traffic stop someone is not**

12   **transporting the firearms properly, well, let's back**

13   **up.**

14   **How does a non Illinois resident have**

15   **to transport firearms in Illinois?**

16   A. Non Illinois residents must transport it

17   unloaded, in a case, and not easily accessible.

18   **Q. And how must an Illinois resident transport**

19   **a firearm?**

20   A. Unloaded, in a case.

21   **Q. But it can be easily accessible if it's a**

22   **resident?**

23   A. Yes.

24   **Q. So how would a trooper deal with a**

27

1  **nonresident who has a firearm that is unloaded in a**

2  **case but is accessible?**

3       A.  You're going to have to work with the States

4  Attorney to see if they have an offense.

5       **Q.  Okay.  Do you know how many arrests there**

6  **are yearly for FOID Act violations?**

7       A.  No, I do not.

8       **Q.  Is, is enforcement information related to,**

9  **is enforcement communication, is enforcement**

10  **information communicated to you as it relates to the**

11  **FOID Act?**

12       A.  No, no one reports their firearms arrests to

13  the State Police.

14       **Q.  Okay.  Are firearms arrests prohibitors**

15  **under the FOID Act?**

16       A.  You have to specify, I mean if, if there is

17  a firearms prohibitor, they would make an arrest.

18       **Q.  So let me rephrase the question.**

19            **Are you notified about arrests?**

20       A.  We administer the FOID program.  We

21  determine individual's eligibility and issue the FOID

22  cards.  There is no relation to the arrest that

23  officers make on the road.

24       **Q.  Okay.  Are you, are convictions for firearms**

28

1　crimes reported to your office?

2　　　A. No.

3　　　Q. Are there any firearms crimes that are

4　prohibitors?

5　　　A. If there was an arrest, there would be a

6　prohibitor, so that's why there would be an arrest

7　because there was a firearms prohibitor but those

8　aren't reported to our office.  Once again we are just

9　the eligibility, determining whether they're eligible

10　to have the FOID card.

11　　　Q. If for instance a FOID cardholder has a gun

12　in his car, for instance, that's loaded, and he's

13　arrested and convicted, would that conviction be

14　communicated to your office?

15　　　A. No.

16　　　Q. Let's use your copy of the FOID Act so, just

17　so.

18　　　　　　　　MS. CHAPMAN:  Sure.  Any

19　specific section you were looking for?

20　　　　　　　　MR. MANLEY:  Do you have the

21　whole thing?

22　　　　　　　　MS. CHAPMAN:  I don't have it,

23　no.

24　　　　　　　　MR. MANLEY:  I have the whole

29

1    thing here.  You guys wants to take a look at it?

2                        MR. CARTER:  I can.

3                        MR. MANLEY:  Okay.

4                        (Exhibit 2 marked for identification

5                        by the Court Reporter.)

6         **Q.  So you got a document there labeled**

7    **Exhibit 2 can you identify for us for us what it is?**

8         A.  It looks like the FOID Act.

9         **Q.  So you mentioned before that there are some**

10   **exceptions to the requirement that individuals possess**

11   **a FOID card in order to possess firearms and**

12   **ammunition, can you just tell me what those exceptions**

13   **are?**

14        A.  It's listed under Firearms Owners

15   Identification Card Required Exemptions.  Do you want

16   me to read these?

17        **Q.  Well, if you could just tell me, is there an**

18   **exemption for self defense?**

19        A.  The FOID Act, the purpose of the FOID Act is

20   to determine a person's eligibility.

21                        MS. CHAPMAN:  Objection, calls

22   for a legal conclusion.

23        **Q.  Okay.  Well, is there an exception that's,**

24   **is there an exception to the FOID Act for self**

31

1  those other reasons for denial would be?

2      A. Person under 21 years of age who does not

3  have written consent from his parent or guardian.

4          Person addicted to narcotics.

5          Person whose mental condition is such

6  an age where is poses a clear and present danger.

7          A person who's mentally retarded.

8          And an alien who's unlawfully present

9  in the United States.

10          I believe that covered them.

11      Q. Thank you.

12          And then looking at Exhibit 1 again

13  reasons for revocation, there is an other category,

14  would those same factors that you just listed apply to

15  the other category?

16      A. Yes.

17      Q. Okay. So are you familiar with Ms.

18  Mishaga's application?

19      A. Yes.

20      Q. How are you familiar with it?

21      A. Through this process.

22      Q. When did you become familiar with it?

23      A. Over the course of the last couple of

24  months.

32

1     Q. Okay.  Were you familiar with the
2  application before the lawsuit was filed?
3     A. No.
4     Q. Okay.  Were Ms. Mishaga's applications
5  denied?
6     A. No.
7     Q. What was the disposition of her
8  applications?
9     A. Incomplete.
10     Q. How so?
11     A. A missing drivers license information.
12     Q. Do you know what, in particular what
13  information was missing?
14     A. I do not have the application, I have a copy
15  of the informational sheet that was sent back to her.
16     Q. Okay.  Let me mark this.
17                        (Exhibit 3 marked for identification
18                         by the Court Reporter.)
19     Q. So what I've just handed you is a document
20  marked Exhibit 3, can you identify it?
21     A. It looks like a copy of a FOID application
22  for Ellen Mishaga.
23     Q. And looking at the application can you tell
24  me if you were getting this application in the mail

33

1    like a normal FOID application, can you walk me

2    through your analysis of it?

3                    MS. CHAPMAN:  Objection,

4    foundation and calls for speculation.  I don't think

5    he's testified that he gets those applications.

6         Q.  Okay.

7         A.  If this came across my desk, it would be

8    sent back with an informational sheet for missing

9    drivers license number.  I would have to look at other

10   checks on the sheet, if there was a check for out of

11   state resident.

12        Q.  Are there any other problems that you see

13   with the application?

14        A.  The out of the state residents and no

15   Illinois drivers license or Illinois State ID number.

16        Q.  Okay.  Great, thank you.

17                  Do you know was Ms. Mishaga issued a

18   FOID card?

19        A.  She was not.

20        Q.  And why not?

21        A.  It was sent back to her as incomplete.

22        Q.  And why was it incomplete?

23        A.  Do you have the checklist?

24

34

1          (Exhibit 4 marked for identification

2          by the Court Reporter.)

3               MS. CHAPMAN:  Can we clarify

4    with regard to which application are you referring

5    because it looks like you've given him, there are two

6    separate checklists that were returned to her, which

7    is this regarding?

8          **Q.  Sure.**

9               **Well, okay.  We've just handed you a**

10   **document labeled Exhibit 4, can you identify the**

11   **document?**

12         A.  It looks like a checklist for a returned

13   FOID card, for returned FOID application.

14         **Q.  And do you recognize the checklist, do you**

15   **know?**

16         A.  Yes.

17         **Q.  Do you know what application it is in**

18   **response to?**

19         A.  No.

20         **Q.  Okay.  That's the response to Ms. Mishaga's**

21   **second application, it's been previously disclosed.**

22              **So I believe the question that we were**

23   **on was what, what, why was Ms. Mishaga not issued a**

24   **FOID card?**

35

1      A.  This was other reason due to Illinois State

2  law you must have a valid Illinois drivers license or

3  Illinois State ID in order to be eligible for an

4  Illinois FOID card.

5      **Q.  Okay.  Is that an accurate statement of the,**

6  **of the Illinois State Police policy?**

7      A.  Yes.

8      **Q.  Okay.  Now you may have already answered**

9  **this question but just so we are on the same page.**

10          **Based on these applications is Ms.**

11  **Mishaga or this application is she eligible for a FOID**

12  **card?**

13          MS. CHAPMAN:  Objection,

14  foundation.

15      A.  Based on this application I can't determine

16  her eligibility.

17      **Q.  What information would you need in order to**

18  **determine her eligibility?**

19      A.  When I refer to eligibility, I mean her

20  eligibility to possess firearms, her criminal history

21  based on her being an out of state resident if she did

22  not provide any other information showing she's an

23  Illinois resident, it's just an incomplete

24  application.

36

1    Q. What information would Ms. Mishaga need to

2    provide in order for her application to be processed?

3        A. Illinois address and Illinois drivers

4    license or ID card.

5        Q. So I want to direct your attention to, I

6    guess, the fifth paragraph on Exhibit 4, could you

7    just read that paragraph for us?  It's the one that

8    begins no Illinois drivers license.

9        A. No Illinois drivers license or state

10   identification number provided.  If you're employed in

11   the protective security or public safety fields in

12   Illinois, and the employment requires you to have a

13   FOID card, or you're in the United States armed

14   services or permanent duty assigned in Illinois, you

15   may be eligible for relief for this requirement.

16   Please call the Firearms and Information Services

17   Resources Bureau at 217-782-7980 if you would like

18   information on the relief process.

19       Q. Can you describe for us the relief process,

20   what does that mean?

21       A. The relief process in reference to the FOID

22   card would be as read in there.  If you are employed

23   in Illinois, and it requires you to be armed, we can

24   grant relief to issue a FOID card for that individual