**E-FILED**
Friday, 28 November, 2014  11:48:39 AM
Clerk, U.S. District Court, ILCD

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

|  |  |  |
|---|---|---|
| ELLEN MISHAGA, | ) | |
| | ) | |
| Plaintiff, | ) | No. 10-cv-03187-SEM |
| | ) | |
| v. | ) | |
| | ) | |
| HIRAM GRAU, Director of the Illinois | ) | |
| Department of State Police; MICHAEL W. | ) | |
| VORREYER, Master Sergeant, Illinois | ) | |
| Department of State Police, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

### PLAINTIFFS' MOTION TO STRIKE AND RESPONSE TO DEFENDANTS' SUPPLEMENTAL BRIEF (DOC. 38)

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ......................................................................... iii

INTRODUCTION ..................................................................................... 1

ARGUMENT ............................................................................................ 2

I.  DEFENDANTS' OCTOBER 31, 2014 DOCUMENT (DOC. 38)
    SHOULD BE STRICKEN BECAUSE IT VIOLATES THIS
    COURT'S ORDER AND THE LOCAL RULES ......................................... 2

II. DEFENDANTS' NOVEMBER 14, 2014 DOCUMENT (DOC. 40)
    SHOULD BE STRICKEN BECAUSE IT VIOLATES THIS
    COURT'S ORDER AND THE LOCAL RULES ......................................... 2

III. THIS COURT SHOULD GRANT MS. MISHAGA'S MOTION FOR
     SUMMARY JUDGMENT BECAUSE DEFENDANTS HAVE
     FAILED TO PROPERLY RESPOND ............................................. 5

IV. RESPONSE TO DEFENDANTS' SUPPLEMENTAL BRIEF
    (DOC. 38) ..................................................................... 6

    A.  Contrary To Defendants' Characterization, This Case Is Not
        About Carrying A Firearm Into Illinois ................................ 6

    B.  The FOID Act Prohibits Ms. Mishaga From Lawfully
        Possessing A Firearm For Self-Defense While Staying In Her
        Friends' Illinois Home ...................................................... 8

CONCLUSION ......................................................................... 16

CERTIFICATE OF COMPLIANCE ........................................... 17

CERTIFICATE OF SERVICE ................................................. 18

## **TABLE OF AUTHORITIES**

**Page**

**Cases**

*62 Cases, More or Less, Each Containing Six Jars of Jam v. United States*,
    340 U.S. 593 (1951)................................................................. 13

*Barnhart v. Sigmon Coal Co.*,
    534 U.S. 438 (2002)................................................................. 14

*Buckhannon Bd. and Care Home, Inc. v. W. Va. Dept. of Health and Human Res.*,
    532 U.S. 598 (2001)................................................................. 10

*Chapman v. United States*,
    500 U.S. 453 (1991)................................................................. 15

*Cleveland v. Porca Co.*,
    38 F.3d 289 (7th Cir. 1994) ................................................... 2

*Curtin v. Benson*,
    222 U.S. 78 (1911)................................................................. 11

*District of Columbia v. Heller*,
    554 U.S. 570 (2008)................................................................. 8, 11

*Huddleston v. United States*,
    415 U.S. 814 (1974)................................................................. 15

*Jama v. Immigration and Customs Enforcement*,
    543 U.S. 335 (2005)................................................................. 14

*King v. First Capital Financial Services Corp.*,
    828 N.E.2d 1155 (Ill. 2005) ................................................... 13

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986)................................................................. 5

*McDonald v. City of Chicago, Ill.*,
    561 U.S. 742 (2010)................................................................. 11

*Mishaga v. Monken*,
    753 F. Supp. 2d 750 (C.D. Ill. 2010) ................................... 8

*Moore Ice Cream Co. v. Rose*,
    289 U.S. 373 (1933)................................................................. 13

*Morissette v. United States,*
   342 U.S. 246 (1952)..................................................................... 9

*Nat'l Fed'n of Indep. Bus. v. Sebelius,*
   132 S. Ct. 2566 (2012)................................................................. 14

*Relf v. Shatayeva,*
   998 N.E.2d 18 (Ill. 2013)............................................................. 14

*Waldridge v. American Hoechst Corp.,*
   24 F.3d 918 (7th Cir. 1994) ....................................................... 3, 4, 6

*United States v. Albertini,*
   472 U.S. 675 (1985)..................................................................... 12

*United States v. Bass,*
   404 U.S. 336 (1971)..................................................................... 15

*United States v. Fisher,*
   2 Cranch 358 (1805) .................................................................... 15

*United States v. Hopson,*
   18 F.3d 465 (7th Cir. 1994) ......................................................... 15

*United States v. Locke,*
   471 U.S. 84 (1985)....................................................................... 12–13

**Constitutional Provisions**

Ohio Const. Art. I, § 4.................................................................... 11

**Statutes**

430 ILCS 65/0.01 *et seq*............................................................... 7, 8

430 ILCS 65/1 ................................................................................ 12

430 ILCS 65/2................................................................................. 7

430 ILCS 65/2(a) ........................................................................... 8, 10

430 ILCS 65/2(a)(1)........................................................................ 8

430 ILCS 65/2(b)(1)–(16)............................................................... 8

430 ILCS 65/2(b)(10) ..................................................................... 9, 12, 14

430 ILCS 65/2(b)(13) ................................................................ 13

430 ILCS 65/2(c) ....................................................................... 8

430 ILCS 65/2(d) ...................................................................... 8

430 ILCS 65/4 ........................................................................... 7

430 ILCS 65/4(a)(2)(xiv) .......................................................... 9

430 ILCS 65/4(a-5) .................................................................... 9

430 ILCS 65/4(a-10) .................................................................. 9

430 ILCS 65/8(q) ....................................................................... 9

430 ILCS 65/14 ......................................................................... 7

430 ILCS 65/14(c)(3) ................................................... 9, 10, 15

430 ILCS 66/40(e) ..................................................................... 7

720 ILCS 5/24-1 ...................................................................... 15

720 ILCS 24-1.6 ....................................................................... 15

Ohio Rev. Code § 9.68(A) ................................................. 10, 11

Ohio Rev. Code § 2923.125 ..................................................... 10

**Rules**

CDIL-LR 7.1(B)(4) .................................................................. 17

CDIL-LR 7.1(D) .............................................................. 1, 2, 3

CDIL-LR 7.1(D)(1)(b) .......................................................... 2, 4

CDIL-LR 7.1(D)(2).............................................................. 3, 5, 6

CDIL-LR 7.1(D)(2)(b) ............................................................. 2

CDIL-LR 7.1(D)(2)(c) ............................................................. 5

CDIL-LR 7.1(D)(2)(b)(6) ......................................................... 5

CDIL-LR 7.1(D)(5)..................................................................................................  6, 17

**<u>Other Authorities</u>**

Black's Law Dictionary 829 (5th ed. 1979)...............................................................  12

## <u>INTRODUCTION</u>

On September 30, 2014, this Court issued an Order denying both Plaintiff's Motion for Summary Judgment and Defendants' Motion for Summary Judgment "with leave to refile, with refiled briefs to address" four additional questions and "[a]ny other issues the parties believe to be reasonably related to these questions."  Doc. 37 at 5–6.[1]  This Court's Order further provides "[t]he parties['] renewed *motions for summary judgment* are due on or before October 31, 2014.  Responses are due on or before November 28, 2014."  *Id*. at 6 (emphasis added).

On October 31, 2014, Plaintiff, Ellen Mishaga, in accordance with this Court's Order and CDIL-LR 7.1(D), filed a new motion for summary judgment, with a supporting memoranda and supporting evidence.  Docs. 39 through 39-5.  That same day, Defendants, in direct contravention of this Court's Order, filed a document entitled "Defendants' Supplemental Brief Pursuant to Order Dated September 30, 2014."  Doc 38.  Compounding their error, on November 14, 2014, Defendants filed a document entitled "Defendants' Renewed Motion for Summary Judgment and Response to Plaintiff's Motion for Summary Judgment Filed October 31, 2014."  Doc. 40.

As demonstrated below, this Court should strike both of Defendants' recent filings (Docs. 38 and 40) for failing to comply with this Court's Order and CDIL-LR 7.1(D).  Whether those documents are stricken or not, this Court should grant Ms. Mishaga's motion for summary judgment (Doc. 39).

---

[1] The page numbers of ECF documents cited herein refer to those numbers assigned to the document by the ECF system.

**ARGUMENT**[2]

I.   **DEFENDANTS' OCTOBER 31, 2014 DOCUMENT (DOC. 38) SHOULD BE STRICKEN BECAUSE IT VIOLATES THIS COURT'S ORDER AND THE LOCAL RULES.**

On September 30, 2014, this Court denied the parties' pending motions for summary judgment and granted the parties "leave to refile, with refiled briefs to address" four additional questions and "[a]ny other issues the parties believe to be reasonably related to these questions." Doc. 37 at 5–6.  Thus, this Court intended for the parties to file new competing motions for summary judgment that specifically addressed the additional questions so this Court could rule on Ms. Mishaga's claims for relief.  *See* Doc. 37 at 2–6.

On October 31, 2014, Defendants filed a document entitled "Defendants' Supplemental Brief Pursuant to Order Dated September 30, 2014."  Doc 38.  This document it is not a motion for summary judgment.  *Compare* Doc. 38 *with* CDIL-LR 7.1(D).  Therefore, because this document does not comply with this Court's Order or CDIL-LR 7.1(D), it should be stricken. *Cleveland v. Porca Co*., 38 F.3d 289, 297 (7th Cir. 1994) ("[I]t is within the district court's discretion to strike an unauthorized filing.").

II.   **DEFENDANTS' NOVEMBER 14, 2014 DOCUMENT (DOC. 40) SHOULD BE STRICKEN BECAUSE IT VIOLATES THIS COURT'S ORDER AND THE LOCAL RULES.**

On November 14, 2014, Defendants filed a document entitled "Defendants' Renewed Motion for Summary Judgment and Response to Plaintiff's Motion for Summary Judgment Filed October 31, 2014."  Doc. 40.  To the extent that document may be considered a new motion for

---

[2] Pursuant to the Local Rules, the section following "Introduction" should be entitled ""Response to Undisputed Material Facts."  CDIL-LR 7.1(D)(2)(b).  However, Defendants have failed to comply with CDIL-LR 7.1(D)(1)(b), making it impossible for Ms. Mishaga to comply with CDIL-LR 7.1(D)(2)(b).

summary judgment, it is out of time and should be stricken.  *See* Doc. 37 at 6 ("[t]he parties['] renewed *motions for summary judgment* are due on or before October 31, 2014.").  This is especially true considering Defendants' so-called renewed motion for summary judgment is not a motion for summary judgment at all.  Instead, Defendants simply adopted their previously filed motion for summary judgment and supporting memoranda.  Doc. 40 at 1–2 ("Defendants, by this Response, re-adopt and re-file their previous motion for summary judgment and supporting memorandum (Doc. #19 & #20), their response to Plaintiff's Motion for Summary Judgment (Doc. #23), and their reply to Plaintiff's Response to Defendant's Motion for Summary Judgment (Doc. #25).").  If this Court wanted the parties to adopt their previously filed motions for summary judgment and supporting memoranda it would have said so, and would not have granted the parties leave to file new motions for summary judgment.  *Compare* Doc. 37 at 5–6 *with* March 28, 2014 Text Order (requesting supplemental briefs on several issues).  Moreover, although the adoption of their previous motion and memoranda was convenient for Defendants, it violates this Court's Order and CDIL-LR 7.1(D), and makes it impossible for Ms. Mishaga to effectively respond.[3]  *See* CDIL-LR 7.1(D)(2).  Therefore, to the extent that Defendants' document may be considered a renewed motion for summary judgment, it should be stricken.  Indeed:

> All motions for summary judgment and responses and replies thereto must comply with the requirements of this rule.  Any filings not in compliance may be stricken by the court.  The consequences for failing to comply are discussed thoroughly in *Waldridge v. American Hoechst Corp.*, 24 F.3d 918 (7th Cir. 1994).

CDIL-LR 7.1(D).

---

[3] This is especially true considering that Defendants filed their so-called renewed motion for summary judgment two weeks late.  *See* Doc. 37 at 6.

Even if Defendants' document were considered a response to Ms. Mishaga's motion for summary judgment, it should be stricken.  Again, Defendants did not respond to Ms. Mishaga's motion for summary judgment and supporting memorandum, or to her CDIL-LR 7.1(D)(1)(b) statement of undisputed facts.  *Compare* Doc. 40 *with* Docs. 39 through 39-6.  Instead, Defendants simply adopted their previously filed motion for summary judgment and supporting memoranda.  Yet, this Court expressly denied Defendants' previous motion for summary judgment.  Doc. 37 at 5 ("Defendants' Motion for Summary Judgment (d/e 19) and Plaintiff Ellen Mishaga's Motion for Summary Judgment (d/e 22) are both DENIED with leave to refile . . . .").  By "thumbing their nose" at this Court's Order, Defendants have unreasonably burdened this Court and Ms. Mishaga with the task of sifting through Defendants' earlier filings to find any purported arguments that may be responsive to the legal arguments set forth in Ms. Mishaga's October 31, 2014 motion for summary judgment and supporting memorandum.

To make matters worse, Defendants have also unreasonably burdened this Court and Ms. Mishaga with the chore of searching through Defendants' earlier filings to find any purported evidence that may be contrary to Ms. Mishaga's CDIL-LR 7.1(D)(1)(b) statement of undisputed facts.  As explained by the Seventh Circuit, this is Defendants' burden that they cannot shift to either this Court or Ms. Mishaga:

> [At the summary judgment stage,] [t]he court has one task and one task only:  to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial.  The parties, in turn, bear a concomitant burden *to identify the evidence that will facilitate this assessment*.

*Waldridge*, 24 F.3d at 920 (citations omitted) (emphasis added); *id.* at 921 ("a party contesting summary judgment [must] highlight which factual averments are in conflict" because [courts are not obliged in our adversary system to scour the record looking for factual disputes . . . .").

4

In sum, Defendants' flippant and lackadaisical attitude should not be condoned.

Therefore, this Court should strike Defendants' November 14, 2014 document (Doc. 40).[4]

## III.   THIS COURT SHOULD GRANT MS. MISHAGA'S MOTION FOR SUMMARY JUDGMENT BECAUSE DEFENDANTS HAVE FAILED TO PROPERLY RESPOND.

Even if Defendants' November 14, 2014 document (Doc. 40) is not stricken, this Court

should grant Ms. Mishaga's motion for summary judgment.  First, Defendants have not

responded to Ms. Mishaga's statement of undisputed material facts.  *See* Doc. 39 at 13–15.

Therefore, all of Ms. Mishaga' facts are deemed admitted.  CDIL-LR 7.1(D)(2)(b)(6) ("A failure

to respond to [a material fact] will be deemed an admission of the fact."); *see Matsushita Elec.*

*Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (To survive a motion for summary

judgment the non-moving party "must do more than simply show that there is some metaphysical

doubt as to the material facts.").

Second, Defendants have not responded to Ms. Mishaga's legal arguments.  *Compare*

Doc. 40 *with* Doc. 39 at 16–32.  The drafters of the rules did not envision that a party opposing a

properly filed motion for summary judgment would respond by simply referring to earlier

documents that have been effectively rejected.  Instead, the drafters intended that a party

opposing a motion for summary judgment would set forth its arguments as to why the motion

---

[4] If this Court decides not to strike Defendants' November 14, 2014 document and decides to treat it as a renewed motion for summary judgment, Ms. Mishaga normally would be entitled to 21 days to respond.  CDIL-LR 7.1(D)(2).  Ms. Mishaga, however, is hesitant to ask for that time because doing so would further delay resolution of this case.  Thus, Ms. Mishaga suggests that this Court rule on Ms. Mishaga's new and properly filed motion for summary judgment.  *See* Docs. 39 through 39-6.  If this Court determines that Ms. Mishaga is not entitled to summary judgment, then this Court should order Defendants to file a new motion for summary judgment that complies with the Local Rules so Ms. Mishaga may respond accordingly.  In the alternative and if this Court decides to treat Defendants' November 14, 2014 document as a renewed motion for summary judgment, Ms. Mishaga respectfully requests that this Court accept her previous filings as her response.  Docs. 22, 24, 26, 28, 29, 34, 39 through 39-6.

should not be granted in a single, concise response.  *See* CDIL-LR 7.1(D)(2)(c) (Parties opposing

a motion for summary judgment shall "*respond directly* to the argument in the motion for

summary judgment . . . .") (emphasis added); CDIL-LR 7.1(D)(5) (setting forth page and type

limitations for a response).  Because Defendants have violated both the letter and spirit of the

rules, their November 14, 2014 document should be deemed non-responsive to Ms. Mishaga's

motion for summary judgment.  Therefore, this Court should grant Ms. Mishaga's motion for

summary judgment.  CDIL-LR 7.1(D)(2) ("A failure to respond will be deemed an admission of

the motion."); *see Waldridge*, 24 F.3d at 920–24 (affirming the granting of a motion for

summary judgment based upon the failure of the party opposing the motion to comply with the

local rules governing motions for summary judgment).

## IV.     RESPONSE TO DEFENDANTS' SUPPLEMENTAL BRIEF (DOC. 38).

As demonstrated above, Defendants' October 31, 2014 supplemental brief (Doc. 38)

should be stricken.  In an abundance of caution, however, Ms. Mishaga will respond to that

document.  As demonstrated below, Defendants' supplemental brief largely confuses the issues

in this case and presents an unsupportable interpretation of the Firearms Owners Identification

Card Act ("FOID Act").

### A.     Contrary To Defendants' Characterization, This Case Is Not About Carrying A Firearm Into Illinois.

Ms. Mishaga filed this case because the FOID Act makes it unlawful for her to possess a

firearm for self-defense while she is staying in her friends' Illinois home.  This is clear from her

First Amended Complaint ("FAC") (Doc. 13):

> Several times each year, Ms. Mishaga makes overnight trips to Illinois to visit
> friends.  When she makes these trips, she stays in her friends' home.  Ms.
> Mishaga has concrete plans to make overnight trips to Illinois to visit friends and
> she has a credible fear of arrest, prosecution, incarceration, and/or fine if she were

to possess a functional firearm for self-defense while an overnight guest in her friends' Illinois home.

FAC ¶ 5; *id*. ¶ 34 ("Illinois law prohibits Ms. Mishaga from possessing a functional firearm for self-defense when she is an overnight guest in her friends' Illinois home. 430 ILCS 65/2; 65/4; 65/14."); *id*. ¶ 42 ("Illinois law prohibits Ms. Mishaga from possessing a functional firearm for self-defense when she is an overnight guest in her friends' Illinois home because she is not a resident of Illinois. 430 ILCS 65/2; 65/4; 65/14."); *id*, Prayer for Relief ¶ C ("Permanently enjoin Defendants, their officers, agents, servants, employees, and all persons in active concert or participation with them, from enforcing 430 ILCS [65/0.01, *et seq.*,] which prohibits nonresidents from possessing functional firearms for self-defense in Illinois homes; or, in the alterative, direct Defendants to issue Ms. Mishaga a FOID [card] consistent with her most recent application . . . .").[5]

Despite the clarity of Ms. Mishaga's claims, Defendants repeatedly suggest that Ms. Mishaga is seeking the right to carry her gun into Illinois. Doc. 38 at 3 ("The plaintiff states that *the scope of her concern is carrying her weapon to Illinois* and possessing it while an overnight guest in her Illinois friend's home. (Par. 5, 21, 25, 34 of Amended Complaint.)" (emphasis added)); *id*. at 4 ("Furthermore, under section 40(e) of that Act, a nonresident allowed to carry in public in her home state, like plaintiff, *is allowed to carry an operable weapon in a vehicle in Illinois*, without a concealed carry permit. 430 ILCS 66/40(e)." (emphasis added)); *id*. at 6 ("Defendant further believes that it is clear that a non-resident could not be prosecuted for

---

[5] It is Defendants' position that Ms. Mishaga is not entitled to a FOID card because she is a non-resident. Doc. 38 at 7 ("Defendant [sic] believes the issue of whether a non-resident of Illinois is entitled to a FOID card is clear – she is not . . . ."). Thus, the proposed alternative remedy of issuing Ms. Mishaga a FOID card is apparently unavailable. Therefore, a declaration that the FOID Act is unconstitutional as applied to Ms. Mishaga would warrant a permanent injunction against Defendants.

*bringing a weapon into the state* without a FOID card under the circumstances Plaintiff sets out

as the basis of her complaint . . . ." (emphasis added)); *id.* at 6 ("WHEREFORE, Defendants

maintain their position that *Plaintiff has always been able, and is able now, to carry a gun into*

*Illinois*, provided she complies with the gun-ownership laws of her state of residence."

(emphasis added)).  How Defendants could characterize Ms. Mishaga's claims in such a way is a

mystery.  Either Defendants are trying to confuse the issues or Defendants have not read Ms.

Mishaga's First Amended Complaint.  In any event, this Court should ignore Defendants'

characterization of Ms. Mishaga's claims and recognize that Ms. Mishaga simply wants to be

able to possess a firearm for self-defense in her friends' Illinois home.

> **B.   The FOID Act Prohibits Ms. Mishaga From Lawfully Possessing A Firearm For Self-Defense While Staying In Her Friends' Illinois Home.**

The FOID Act provides:

> No person may acquire or possess any firearm . . . within this State without
> having in his or her possession a Firearm Owner's Identification Card previously
> issued in his or her name by the Department of State Police under the provisions
> of this Act.

430 ILCS 65/2(a)(1).  Thus, the FOID Act generally prohibits the possession of a firearm in

Illinois, unless that person has been issued a FOID card by the Illinois State Police ("ISP").  430

ILCS 65/2(a); *Mishaga v. Monken*, 753 F. Supp. 2d 750, 753 (C.D. Ill. 2010) ("The [FOID] Act

generally prohibits a person from possessing a weapon in Illinois unless the person has a FOID

Card.").  There are limited exceptions to this prohibition.  *See* 430 ILCS 65/2(b)(1)–(16), (c), and

(d) (listing exceptions).[6]  Accordingly, in order for Ms. Mishaga to be able to lawfully possess a

---

[6] Importantly, the FOID Act contains no self-defense exception.  *See* 430 ILCS 65/0.01, *et seq.*;
*see also District of Columbia v. Heller*, 554 U.S. 570, 630 (2008) ("*Heller*") (refusing to find an
implied self-defense exception, especially when other exceptions were expressly listed).

firearm for self-defense in her friends' Illinois home, she must have a FOID card, or be covered by one of the exceptions.

It is undisputed that Ms. Mishaga is ineligible for a FOID Card because she is not an Illinois resident. Doc. 38 at 7 ("Defendant [sic] believes the issue of whether a non-resident of Illinois is entitled to a FOID card is clear – she is not . . . ."); 430 ILCS 65/4(a)(2)(xiv) (requiring each applicant for a FOID Card to submit evidence that she is "a resident of the State of Illinois"); 430 ILCS 65/4(a-5) (requiring each applicant for a FOID Card over the age of 18 to furnish an Illinois driver's license number or Illinois Identification Card number); Doc. 39 at 13–14 (Ms. Mishaga's applications for a FOID card were denied because she is not an Illinois resident); *see also* 430 ILCS 65/8(q) (The Illinois State Police ("ISP") has the authority to deny or revoke a FOID card to "[a] person who is not a resident of the State of Illinois, except as provided in [430 ILCS 65/4(a-10).]."). Because Ms. Mishaga is ineligible for a FOID Card, she could face felony charges if she were to possess a firearm for self-defense in her friends' Illinois home, unless one of the exceptions applies. 430 ILCS 65/14(c)(3) (possessing a firearm without a FOID card when that person is ineligible for a FOID card is a Class 3 felony).

As noted by this Court, the main issue in this case is whether "Exception 10" applies. Doc. 37 at 3–6. This exception exempts from the FOID card requirement "[n]onresidents who are currently *licensed* or *registered* to possess a firearm in their resident state[.]" 430 ILCS 65/2(b)(10) (all emphasis added). As previously demonstrated, the plain and ordinary meaning of the terms "licensed" and "registered," indicate that, in order for a nonresident to be exempt from the FOID card requirement, that nonresident must have affirmatively applied for and received permission or enrollment to possess a firearm in her resident state. Doc. 39 at 18–19; *see Morissette v. United States*, 342 U.S. 246, 263 (1952) ("[W]here Congress borrows terms of

art in which are accumulated the legal tradition and meaning of centuries of practice, it

presumably knows and adopts the cluster of ideas that were attached to each borrowed word in

the body of learning from which it was taken and the meaning its use will convey to the judicial

mind unless otherwise instructed."); *Buckhannon Bd. and Care Home, Inc. v. W. Va. Dept. of

Health and Human Res.*, 532 U.S. 598, 615 (2001) ("Words that have acquired a specialized

meaning in the legal context must be accorded their legal meaning." (emphasis in original)).

It is undisputed that Ms. Mishaga is not licensed or registered to possess a firearm in her

resident state.[7]  Doc. 39 at 15.  In fact, Ohio law forbids the licensing or the registration of the

right to possess a firearm in a home for self-defense.  Ohio Rev. Code § 9.68(A) ("Except as

specifically provided by the United States Constitution, Ohio Constitution, state law, or federal

law, a person, *without further license*, permission, restriction, delay, or process, may own,

possess, purchase, sell, transfer, transport, store, or keep any firearm, part of a firearm, its

components, and its ammunition.") (emphasis added).  Therefore, Exception 10 does not exempt

Ms. Mishaga from the requirements of the FOID Act and she must have a FOID card in order to

possess a firearm for self-defense while staying ins her friends' Illinois home or risk prosecution

under the FOID Act.  430 ILCS 65/2(a), 65/14(c)(3); *see* Doc. 39 at 16–23.

Defendants eschew the plain and ordinary meanings of the terms "licensed" and

"registered" and, instead, proffer a syllogism.  First, Defendants argue that Ohio generally allows

law-abiding residents to possess firearms.  Doc. 38 at 2.  Second, because Ohio generally allows

law-abiding residents to possess firearms, Defendants surmise that Ohio has granted permission

to those residents, including Ms. Mishaga, to possess firearms.  *Id*. at 2–3.  Third, because Ohio

---

[7] Ohio issues licenses for persons to carry concealed firearms outside the home.  Ohio Rev. Code
§ 2923.125.  It is undisputed that Ms. Mishaga does not have a concealed carry license.  Doc. 39
at 15.

has granted permission to Ms. Mishaga to possess a firearm, Defendants contend she is, therefore, "licensed" to possess a firearm in their resident state. *Id*. Finally, because Ms. Mishaga is "licensed," to possess a firearm in Ohio, Defendants suggest that Exception 10 applies to her. *Id*. at 1–3. In short, Defendants equate "lawfully able" with "licensed." *See* Doc. 38 at 1 (Exception 10 applies to non-residents who are "lawfully able to possess a firearm under his/her state's law."). The flaws in Defendants' purported analysis are numerous.

First, Ms. Mishaga's right to possess a firearm in her Ohio home for self-defense does not emanate from Ohio law; it is a fundamental right that predates the founding of this country:

> *The individual right to keep and bear arms, being a fundamental individual right that predates the United States Constitution and Ohio Constitution, and being a constitutionally protected right in every part of Ohio*, the general assembly finds the need to provide uniform laws throughout the state regulating the ownership, possession, purchase, other acquisition, transport, storage, carrying, sale, or other transfer of firearms, their components, and their ammunition. Except as specifically provided by the United States Constitution, Ohio Constitution, state law, or federal law, a person, without further license, permission, restriction, delay, or process, may own, possess, purchase, sell, transfer, transport, store, or keep any firearm, part of a firearm, its components, and its ammunition.

Ohio Rev Code § 9.68(A) (emphasis added); Ohio Const. Art. I, § 4 ("The people *have the right* to bear arms for their defense and security . . . .") (emphasis added); *Heller*, 554 U.S. at 592 ("[I]t has always been widely understood that the Second Amendment, like the First and Fourth Amendments, codified a pre-existing right. The very text of the Second Amendment implicitly recognizes the pre-existence of the right and declares only that it "shall not be infringed."); *McDonald v. City of Chicago, Ill.*, 561 U.S. 742, 767 (2010) ("The right to keep and bear arms was considered no less fundamental by those who drafted and ratified the Bill of Rights."); *id*. at 818 (Thomas, J., concurring) ("[T]he founding generation generally did not consider many of the rights identified in these amendments as new entitlements, but as inalienable rights of all men, given legal effect by their codification in the Constitution's text."). Because Ms. Mishaga's

11

fundamental right to possess a firearm in her Ohio home for self-defense does not emanate from

Ohio law, Ohio has not granted her permission to exercise that right.  *Cf. Curtin v. Benson*, 222

U.S. 78, 83–87 (1911) (requiring a person to seek permission to exercise an existing property

right would destroy the right).  Therefore, because Ohio has not granted Ms. Mishaga permission

to possess a firearm in her Ohio home, Ohio has not "licensed" Ms. Mishaga.  *See* Black's Law

Dictionary 829 (5th ed. 1979) (defining "license" as "[t]he permission by a competent authority

to do an act which, without permission, would be illegal . . . .").

Second, Defendants' interpretation of Exception 10 would defeat the purpose of the

FOID Act.  In passing the Act, the Illinois General Assembly sought to establish "a system of

identifying persons who are *not qualified* to acquire or possess firearms . . . within the State of

Illinois . . . .  430 ILCS 65/1 (emphasis added).  If Exception 10 were meant to apply to all

nonresidents who were simply "lawfully able" to possess a firearm in their resident state, as

opposed to those who were licensed or registered by their resident state, it would make the FOID

Act unmanageable vis-à-vis nonresidents because the ISP would have no way to verify which

nonresidents were "not qualified" to possess a firearm in Illinois.

Third, Defendants' interpretation of Exception 10 would require that provision to be

rewritten.  Exception 10 provides:  "[n]onresidents who are currently licensed or registered to

possess a firearm in their resident state . . . ."  430 ILCS 65/2(b)(10).  Defendants read this

provision as exempting nonresidents who are "lawfully able" to possess firearms in their resident

state.  *See* Doc 38 at 1.  Yet, Exception 10 does not say "lawfully able;" it mandates that non-

residents be "licensed or registered."  Granted, "[s]tatutes should be construed to avoid

constitutional questions, but this interpretative canon is not a license . . . to rewrite language

enacted by the legislature."  *United States v. Albertini*, 472 U.S. 675, 680 (1985); *United States*

*v. Locke*, 471 U.S. 84, 96 (1985) ("We cannot press statutory construction 'to the point of disingenuous evasion' even to avoid a constitutional question." (quoting *Moore Ice Cream Co. v. Rose*, 289 U.S. 373, 379 (1933))).  Because only the Illinois General Assembly may rewrite Exception 10, this Court should reject Defendants' creative interpretation.  *See 62 Cases, More or Less, Each Containing Six Jars of Jam v. United States*, 340 U.S. 593, 596 (1951) ("Congress expresses its purpose by words.  It is for us to ascertain—neither to add nor to subtract, neither to delete nor to distort."); *King v. First Capital Financial Services Corp.*, 828 N.E.2d 1155, 1169–70 (Ill. 2005) (Under no circumstances, may a court "supply omissions, remedy defects, annex new provisions, substitute different provisions, add exceptions, limitations, or conditions, or otherwise change the law so as to depart from the plain meaning of language employed in the statute." (quotation omitted)).

Finally, Defendants' interpretation of Exception 10 cannot be squared with the language used in Exception 13.  Under Defendants' interpretation, Exception 10 would read as follows: "nonresidents ~~who are currently~~ whose state of residence does not require them to be licensed or registered to possess a firearm in their resident state . . . ."  (strikethrough indicates deleted words, underline indicates added words).  Yet, if the General Assembly intended Exception 10 to apply to nonresidents whose state of residence does not require them to be licensed or registered, it knew how to express that intent.  For example, Exception 13 provides:

> *Nonresident hunters whose state of residence does not require them to be licensed or registered to possess a firearm* and only during hunting season, with valid hunting licenses, while accompanied by, and using a firearm owned by, a person who possesses a valid Firearm Owner's Identification Card and while in an area within a commercial club licensed under the Wildlife Code where hunting is permitted and controlled, but in no instance upon sites owned or managed by the Department of Natural Resources.

430 ILCS 65/2(b)(13) (emphasis added) (footnote omitted).  Thus, Exception 13 generally

exempts "[n]onresident hunters whose state of residence does not require them to be licensed or

registered to possess a firearm."  Importantly, because the General Assembly used the language

"whose state of residence does not require them to be licensed or registered to possess a firearm"

in Exception 13, but not Exception 10, the General Assembly obviously intended the two

exceptions to be interpreted differently.  *See Nat'l Fed'n of Indep. Bus. v. Sebelius*, 132 S. Ct.

2566, 2583 (2012) ("Where Congress uses certain language in one part of a statute and different

language in another, it is generally presumed that Congress acts intentionally."); *Jama v.*

*Immigration and Customs Enforcement*, 543 U.S. 335, 341 (2005) ("We do not lightly assume

that Congress has omitted from its adopted text requirements that it nonetheless intends to apply,

and our reluctance is even greater when Congress has shown elsewhere . . . that it knows how to

make such a requirement manifest."); *Relf v. Shatayeva*, 998 N.E.2d 18, 27 (Ill. 2013) ("Where

the legislature has employed certain language in one part of a statute and different language in

another, we may assume different meanings were intended.").  Thus, because the General

Assembly chose not to use the language "whose state of residence does not require them to be

licensed or registered to possess a firearm" in Exception 10, it did not intend for that exception to

apply to nonresidents who are simply "lawfully able" to possess a firearm in their resident state.

Instead, the General Assembly really meant what it said in Exception 10, *i.e.*, only

"[n]onresidents who are currently licensed or registered to possess a firearm in their resident

state" are exempt from the FOID Card requirement.  430 ILCS 65/2(b)(10); *see Barnhart v.*

*Sigmon Coal Co.*, 534 U.S. 438, 461–62 (2002) ("We have stated time and again that courts must

presume that a legislature says in a statute what it means and means in a statute what it says

there."  (quotation omitted)).

In a last ditch effort to avoid liability, Defendants invoke the rule of lenity.  Doc. 38 at 3.

This is an odd argument for state officials to make regarding the interpretation of state statutes,

especially considering that the rule of lenity is usually asserted by criminal defendants.  *See, e.g.,*

*United States v. Hopson*, 18 F.3d 465, 469 (7th Cir. 1994) (rejecting criminal defendants'

attempt to invoke the rule of lenity).  In fact, Defendants have not cited a single case for the

proposition that the rule applies in civil cases seeking declaratory and injunctive relief.

In any event, the rule of lenity does not apply:

> [U]nless there is a "grievous ambiguity or uncertainty in the language and
> structure of the Act," *Huddleston v. United States*, 415 U.S. 814, 831 (1974), such
> that even after a court has "'seize[d] every thing from which aid can be derived,'"
> it is still "left with an ambiguous statute."  *United States v. Bass*, 404 U.S. 336,
> 347 (1971) (quoting *United States v. Fisher*, 2 Cranch 358, 386 (1805)).

*Chapman v. United States*, 500 U.S. 453, 463 (1991) (parallel citations omitted).  As

demonstrated earlier (Doc. 39 at 18–19) and reiterated above, there is no ambiguity in Exception

10, and certainly not a "grievous ambiguity."  Instead, the only ambiguity is in the eyes of

Defendants.  Therefore, the rule of lenity does not apply, and surely does not magically make the

FOID Act constitutional as applied to Ms. Mishaga.  *See* Doc. 39 at 29–35 (Demonstrating that

the FOID Act, as applied to Ms. Mishaga, violates the Second Amendment (as applied to the

States through the Due Process Clause of the Fourteenth Amendment) and violates both the

Privileges and Immunities Clause of Article IV and the Privileges or Immunities Clause of the

Fourteenth Amendment).[8]

---

[8] The parties seemingly agree that Ms. Mishaga may not risk criminal prosecution under either
the Unlawful Use of Weapons ("UUW") statute, 720 ILCS 5/24-1 or the Aggravated Unlawful
Use of Weapons ("AUUW") statute, 720 ILCS 24-1.6.  *See* Doc. 38 at 3–5; Doc. 39 at 21 n.9.
That Ms. Mishaga may not risk criminal prosecution under the UUW and AUUW statutes does
not lessen the risk of prosecution she faces under the FOID Act.  430 ILCS 65/14(c)(3); Doc. 39
at 21 n.9.  The parties also seemingly agree that that this Court's questions should not be
certified to the Illinois Supreme Court. Doc. 38 at 5–6; Doc. 39 at 23 n.10.

## **CONCLUSION**

This Court should strike Defendants' recent filings (Docs. 38 and 40) because they were filed in violation of this Court's Order and the Local Rules.  Whether those documents are stricken or not, this Court should grant summary judgment in favor of Ms. Mishaga on both of her claims for relief, hold that the FOID Act is unconstitutional as applied to Ms. Mishaga, and permanently enjoin Defendants from enforcing the FOID Act against her.

DATED this November 28, 2014.

Respectfully submitted,

MOUNTAIN STATES LEGAL FOUNDATION

/s/ Steven J. Lechner
Steven J. Lechner
2596 South Lewis Way
Lakewood, Colorado 80227
(303) 292-2021
(303) 292-1980 (facsimile)
lechner@mountainstateslegal.com

Attorney for Plaintiff

## **CERTIFICATE OF COMPLIANCE**

Pursuant to CDIL-LR 7.1(B)(4) and 7.1(D)(5), I hereby certify that the Argument section

of the foregoing Memorandum is proportionately spaced and contains 5,162 words.


/s/ Steven J. Lechner
Steven J. Lechner

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on November 28, 2014, I electronically filed the foregoing using this Court's CM/ECF system, which will sent notification of the filing to all counsel of record.

I certify that all participants in this case are registered CM/ECF users and service will be effectuated on all parties by this Court's CM/ECF system.

/s/ Steven J. Lechner _____
Steven J. Lechner